**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CRYSTAL ROBERTSON, on behalf of herself and her minor child D.R.; | |
| ELIZABETH DAGGETT, on behalf of herself and her minor child H.D.; | |
| JOANN MCCRAY, on behalf of herself and her minor child J.C.; | Case No. |
| VERONICA GUERRERO, on behalf of herself and her minor child A.F., | |
| MARCIA CANNON-CLARK AND DAVID CLARK, on behalf of themselves and their minor child B.R.C; and | CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| THE ARC OF THE UNITED STATES, | |
| Plaintiffs, | |
| v. | |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(Violation of the Individuals with Disabilities in Education Act, Americans with Disabilities Act, Section 504 the Rehabilitation Act, and the District of Columbia Human Rights Act)

**INTRODUCTION**

1.      Every day, the District of Columbia and its Office of the State Superintendent of Education ("OSSE") inexcusably fail to meet their basic obligation to ensure students with disabilities have safe, reliable, and appropriate transportation to and from school. Plaintiffs bring

1

this class action to remedy the District of Columbia's ("DC" or "the District") systemic failures, which violate federal and DC law.

2.      Under the Individuals with Disabilities Education Act (IDEA), District students with disabilities are entitled to a free appropriate public education (FAPE). The services and accommodations required to ensure FAPE to each student are set forth in students' individualized education programs (IEPs). In the District, over 4,000 students have IEPs that entitle them to safe, reliable, and appropriate transportation to and from school. OSSE is the District agency responsible for providing this transportation.

3.      OSSE is failing to implement students' special education transportation as mandated by their IEPs to such an extent that it is depriving them of a FAPE, denying them equal opportunity to participate in and benefit from their education, and unnecessarily segregating them.

4.      Transportation to and from school is critical to ensuring students with disabilities can access their education. Students with disabilities are often placed at schools far from their homes and they cannot use public transportation because it is inaccessible to them due to their disabilities. Without access to transportation, students lose critical instructional time that they are entitled to under state and federal law and are being denied a service they are entitled to as outlined in their IEPs.

5.      The District is failing to transport students with disabilities to school on time every morning. Buses regularly arrive hours late to pick up students or never arrive at all, often with no notice to families. This leaves students hopelessly waiting for the bus to arrive with no way of knowing if or when they will make it to school on any given day. When the buses eventually arrive and transport the students to school, the students are tardy and miss critical specialized instruction

and related services. And, when the District fails to provide a bus at all, students are forced to miss days or weeks of school.

6.    The District is also failing to transport students with disabilities home from school in a safe, reliable, and appropriate manner. OSSE regularly strands students at school, leaving the students' families and teachers responsible for transporting them home. OSSE picks up some students before the end of the school day, requiring them to miss instructional time in order to get a ride home. Other students spend extensive time on the bus and arrive home hours past their scheduled drop off time every day. Due to OSSE's failures, students are often confined to school buses for hours, where they are unable to access food, medication, or toilets. As a result, medically fragile students return home dehydrated, agitated, and soaked in urine.

7.    Snapshots of OSSE's publicly reported data demonstrate the breadth of the problem.  In just the first five months of the current 2023-2024 school year, there were over 1,000 delays and cancellations.  From January 30, 2023 – March 15, 2023, there were more than 1,500 route delays and cancellations. In the week just before the filing of this Complaint, there were over 100 routes delayed. Each disrupted route means children with disabilities miss out on instructional time, therapies they need, and socialization with peers.

8.    The District has been here before. Until 2012, the District was under a court order and intense court supervision in *Petties v. District of Columbia*, No. 95-CV-0148 (PLF) (D.D.C. May 5, 2010), a case alleging the same transportation failures Plaintiffs experience today. When the District was released from court supervision in 2012, it boasted a student on-time arrival rate of over 94%; it maintained sufficient staffing to meet the student population is serves; and it was using state-of-the-art technology and best practices to run its system. OSSE is failing to meet all of those same metrics today, just twelve years later.

3

9.      As a result of OSSE's failures, families[1] must make last-minute disruptive and costly adjustments to their schedules. OSSE does not have any mechanism to reliably and systematically track its buses and fails to meet the schedule it sets for its own buses, which prevents families from being able to plan for disrupted services. In the afternoons, if the bus is late, OSSE does not notify families and cannot tell them where their child is, leaving students' whereabouts unknown.

10.     OSSE also fails to ensure that transportation is safe for the students it serves. It regularly fails to provide accommodations, specialized equipment, and necessary personnel. Students who require supports or accommodations on the bus, such as wheelchair accessibility, safety equipment, nurses, or dedicated aides, are often unable to ride the bus because of OSSE's inability to provide these supports or accommodations.

11.     The experiences of the class representatives illustrate the dire situation students and their families face because of OSSE's repeated and inexcusable failures.

12.     D.R. is an 11-year-old child with autism. His bus regularly picks him up and drops him off late, causing him to miss school. On one occasion, OSSE took him to the wrong address at the end of the day, causing him to be left at his deceased mother's home instead of his then-current residence, where he had resided for several years. His family had to split up and search possible locations around the city where they thought he might arrive. Luckily, they found him. On another occasion, the bus delivered D.R. to the wrong school—and neither DCPS nor his

---

[1] "Parent" is defined by the Individuals with Disabilities in Education Act to include biological and adoptive parents, foster parents, guardians, and other individuals who are acting in the place of a biological or adoptive parent. 34 C.F.R § 300.30(a). Throughout this Complaint, Plaintiffs use parent and family interchangeably.

parents knew where he was for over three hours. A different OSSE bus eventually delivered him to the right school, but OSSE never told DCPS or his guardian where he had been.

13.   H.D. is a 13-year-old child with a rare chromosomal disorder which causes global developmental delays, ADHD, and epilepsy. H.D. relies on OSSE transportation to arrive on time and with the proper safety harness to transport him to school due to his epilepsy, but OSSE regularly is late or does not have the harness anchor, meaning H.D. either misses school or needs to be transported by his parents. In the afternoons, H.D. is regularly dropped off at home hours after his scheduled time, and he endures long bus rides where he cannot access food, water, or the bathroom. In the summer months, H.D. arrives home hot and sweaty when his bus's air conditioning does not work. H.D. has arrived home numerous times with a soiled diaper, which does not happen on days when he has a normal length bus ride home.

14.   J.C. is a 12-year-old child with autism. J.C.'s school bus is unreliable and, at times, has failed to arrive at all for weeks on end. When he does ride the bus, he is often on the bus for hours. As an example, OSSE failed to provide transportation to J.C. for almost all of the 2023 extended school year (ESY), and in order to get J.C. to school each day, J.C.'s teacher volunteered to drive him. J.C. needs ESY services to ensure he does not regress and OSSE's failures put his educational and developmental progress at risk.

15.   A.F. is a 14-year-old child with autism and seizures. OSSE not only picks up and drops off A.F. late on a regular basis—when a bus shows up at all—but also repeatedly fails to provide a dedicated aide and child safety harness for him to ride the bus safely. On those days, his mother is forced to choose between figuring out how to take him to school herself or having A.F. miss vital education and related services. Because his bus is so late in the afternoon, his after-school home therapy providers have discontinued his services. This has resulted in him having

significantly more aggressive behaviors at home and at school and slowing or stopping progress on his IEP goals, such as eating and using the bathroom independently.

16.     B.R.C. is an 8-year-old child with a brain tumor that causes hydrocephalus, global developmental delays, epilepsy, and cortical visual impairment. She requires assistance in all activities of daily living and needs timely medication to control her seizures. She is non-speaking, uses a wheelchair, and requires a nurse attendant on the bus. OSSE has repeatedly failed to provide B.R.C. with timely transportation to school, a nurse to attend to her needs on transportation, or a bus that can safely transport her wheelchair. As a result, she has missed critical specialized instruction, related services, and socialization with her peers. OSSE also continues to return her home late at the end of the day and jeopardizes the timeliness and effectiveness of her medication. OSSE's failures put B.R.C.'s education and health at risk.

17.     The individual Plaintiffs have exhausted their administrative remedies. All individual Plaintiffs filed due process complaints pursuant to 34 CFR § 300.508 and DC Code § 38–771.07 alleging OSSE's failure to provide appropriate transportation services violates their child's, and all similarly situated students', right to a FAPE and their rights under the ADA, Section 504 and the DCHRA. In each case, Hearing Officers have dismissed the individual Plaintiff's systemic claims and non-IDEA disability discrimination claims, finding that such relief is unavailable in the administrative forum. Additionally, three class representatives have received determinations that OSSE violated their individual rights under the IDEA and were awarded reimbursement and/or compensatory education. Two class representatives are awaiting full resolution of their individual claims. Despite three separate administrative findings that OSSE's failure to provide safe, reliable, and appropriate transportation is denying students FAPE, OSSE refuses to revise any of its policies and procedures. As a result, students with disabilities continue

to be deprived of FAPE, denied an equal opportunity to participate in and benefit from their education, and unnecessarily segregated from their peers.

18.     This transportation crisis leaves students and families without any option but to seek redress before this court. Despite their efforts to resolve this issue through due process, they and other similarly situated families remain without access to appropriate transportation services and without any indication that OSSE will take action to remedy the situation.

19.     As detailed below, OSSE's policies and practices are causing immediate, severe, and irreparable harm to Plaintiffs and similarly situated students. As a result of OSSE's failure to provide safe, reliable, and appropriate transportation, students with disabilities, including Plaintiffs and members of the putative class, are missing critical education and related services, which deprives them of FAPE in violation of the IDEA.

20.     Additionally, OSSE's failure to provide transportation to these students is depriving them of an equal opportunity to participate in and benefit from their education in violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the DC Human Rights Act ("DCHRA"). Unjustifiable transportation disruptions for students with disabilities that result in them missing classroom instruction and, sometimes, stranded at home for entire school days, violate the ADA's prohibition on unnecessary segregation.

21.     Plaintiffs, on behalf of themselves, and others similarly situated, bring this class action for declaratory and injunctive relief to enforce the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, its federal and local regulations, 34 C.F.R. § 300, *et seq.*, 5 D.C.M.R. § 3000, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), its federal regulations, 34 C.F.R. § 104, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12132, and the D.C. Human Rights Act, D.C. Code § 2-1401 *et. seq.*

**JURISDICTION AND VENUE**

22.    This action is brought under the IDEA, 20 U.S.C. § 1400, *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the ADA, 42 U.S.C. § 12101, *et seq.*

23.    The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 20 U.S.C. § 1415(i)(2).

24.    This action is also brought under the DC Human Rights Act (DCHRA), DC Code § 2-1401.01, *et seq.* This Court has jurisdiction over the DCHRA claims pursuant to 28 U.S.C. § 1367(a).

25.    Venue is proper under 28 U.S.C. § 1391.

**PARTIES**

**<u>Plaintiffs</u>**

26.    Plaintiff Crystal Robertson is the legal guardian of D.R. and at all relevant times both have been residents of the District of Columbia. Ms. Robertson and her family are members of The Arc. D.R. is a student with a disability as defined under the IDEA and is entitled to transportation as a related service pursuant to his IEP. D.R. is a qualified individual with a disability under Section 504, the ADA, and the DCHRA. Ms. Robertson has exhausted her administrative remedies under 34 C.F.R. § 300.516. Ms. Robertson brings this claim individually and on behalf of her minor nephew D.R. and on behalf of all others similarly situated.

27.    Plaintiff Elizabeth Daggett is the parent of H.D., and at all relevant times both have been residents of the District of Columbia. Ms. Daggett and her family are members of The Arc. H.D. is a student with a disability as defined under the IDEA and is entitled to transportation as a related service pursuant to his IEP. H.D. is a qualified individual with a disability under Section 504, the ADA, and the DC Human Rights Act. Ms. Daggett has exhausted her administrative

remedies under 34 C.F.R. § 300.516. Ms. Daggett brings this claim individually and on behalf of her minor son H.D. and on behalf of all others similarly situated.

28.    Plaintiff Joann McCray is the parent of J.C. and at all relevant times both have been residents of the District of Columbia. Ms. McCray and her family are members of The Arc. J.C. is a student with a disability as defined under the IDEA and is entitled to transportation as a related service pursuant to his IEP. J.C. is a qualified individual with a disability under Section 504, the ADA, and the DCHRA. Ms. McCray has exhausted her administrative remedies under 34 C.F.R. § 300.516. Ms. McCray brings this claim individually and on behalf of her minor son J.C. and on behalf of all others similarly situated.

29.    Plaintiff Veronica Guerrero is the parent of A.F., and at all relevant times both have been residents of the District of Columbia. Ms. Guerrero and her family are members of The Arc. A.F. is a student with a disability as defined under the IDEA and is entitled to transportation as a related service pursuant to his IEP. A.F. is a qualified individual with a disability under Section 504, the ADA, and the DCHRA. Ms. Guerrero has exhausted her administrative remedies under 34 C.F.R. § 300.516 or is entitled to vicarious exhaustion under the putative class action. Ms. Guerrero brings this claim individually and on behalf of her minor son A.F. and on behalf of all others similarly situated.

30.    Plaintiffs David Clark and Marcia Cannon-Clark are the parents of B.R.C., and at all relevant times, all have been residents of the District of Columbia. Mr. Clark and Ms. Cannon-Clark and their family are members of The Arc. B.R.C. is a student with a disability as defined under the IDEA and is entitled to transportation as a related service pursuant to her IEP. B.R.C. is a qualified individual with a disability under Section 504, the ADA, and the DCHRA. Mr. Clark and Ms. Cannon-Clark have exhausted their administrative remedies under 34 C.F.R. § 300.516

or are entitled to vicarious exhaustion under the putative class action. Mr. Clark and Ms. Cannon-Clark bring this claim individually and on behalf of their minor daughter B.R.C. and on behalf of all others similarly situated.

31.     Plaintiff The Arc of the United States ("The Arc") is a national non-profit organization located in Washington, D.C. with the mission of promoting and protecting the human rights of people with intellectual and developmental disabilities ("IDD") and actively supporting their full inclusion and participation in the community throughout their lifetimes. Ensuring that students with IDD receive FAPE that "includes fair evaluation, ambitious goals, challenging objectives, the right to progress, individualized supports and services, high quality instruction, and access to the general education curriculum in age-appropriate inclusive settings" is central to The Arc's mission.[2] The Arc's position statement on education states: "All children and youth with intellectual and developmental disabilities must receive a free appropriate public education (FAPE) that includes fair evaluation, ambitious goals, challenging objectives, the right to progress, individualized supports and services, high quality instruction, and access to the general education curriculum in age-appropriate inclusive settings." The position statement notes that one critical aspect of ensuring FAPE is to "assure safe school transportation for all students with disabilities….schools must assure the sufficient allocation of transportation resources such that transportation is not used to justify early departures, late arrivals, or excessive travel times."[3] The Arc has nearly 600 member chapters across the country, including The Arc of the District of Columbia ("The Arc D.C."), which serves individuals with IDD and their families throughout the District. The Arc has over 1,400 members in Washington, D.C. and The Arc D.C. has

---

[2] *The Arc Position Statements: Education* (March 4, 2024), https://thearc.org/position-statements/education/.
[3] *Id.*

approximately 1,000 individual members. The Arc has members, including Plaintiffs Robertson, Daggett, McCray, Guerrero, and Marcia and David Clark, who have been discriminated against and denied a FAPE by OSSE because of its failure to provide appropriate transportation to students with disabilities and who have standing to bring the claims asserted here in their own right.

### Defendant

32.     Defendant District of Columbia, through its agency the Office of the State Superintendent for Education ("OSSE"), is responsible for providing transportation for special education students. OSSE is the State Educational Agency ("SEA"), and, among other functions, provides transportation through the OSSE Department of Transportation ("OSSE DOT"). OSSE receives federal funds under the IDEA and must therefore comply with the requirements of the IDEA and Section 504 of the Rehabilitation Act. 20 U.S.C. § 1412(a); 34 C.F.R. § 300.2. The District of Columbia, including its agencies, is responsible for complying with the Americans with Disabilities Act and District of Columbia Human Rights Act. 42 U.S.C. § 12131 *et seq.*; DC Code § 1401.01 *et seq.*

### STATUTORY FRAMEWORK

33.     The IDEA was enacted to ensure that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In enacting the IDEA, Congress found that "[d]isability is a natural part of the human experience and in no way diminishes the right of individuals to participate in or contribute to society. Improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1).

11

34. The IDEA and its implementing regulations require that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive . . . ."  20 U.S.C. § 1412(a)(1)(A)*; see also* 20 U.S.C. § 1400(d)(1)(A). In the District, this obligation extends to all students with disabilities ages three to twenty-two. 5-E D.C.M.R. § 3002.1(a). In order to provide FAPE, the provision of special education and related services must be made in conformity with each student's IEP. 20 U.S.C. § 1401(9)(D).

35. Transportation is a related service under the IDEA and is required when it would assist a child with a disability to benefit from special education. *See* 34 C.F.R. §§ 300.34(a). Transportation includes travel to and from schools and between schools, travel in and around school buildings, and specialized equipment (such as special or adapted buses, lifts, and ramps), if required to provide special transportation for a child with a disability. *See* 34 C.F.R. §§ 300.34(c)(16).

36. OSSE, as the SEA, may provide special education services directly when it determines that it "has one or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of these children." 34 C.F.R. § 300.227(a)(1)(iv). The SEA can provide these direct services "in the manner and at the locations… as the SEA considers appropriate." 34 C.F.R. § 300.227(b). "If the SEA provides FAPE to children with disabilities, or provides direct services to these children, the agency must comply with any additional requirements of §§ 300.201 and 300.202 and §§ 300.206 through 300.226 as if the agency were an LEA." 34 C.F.R. §300.175.

37. OSSE operates a regional system of special education transportation for special education students in the District. *See Petties v. District of Columbia*, Civil Action No. 95-0148 (D.D.C. May 5, 2010). Under District law, OSSE receives all the funding for transportation of

disabled students in the District and is charged with the responsibility for providing that transportation. DC Code § 38-2907.

38.     Section 504 and Title II of the ADA prohibit public entities, including public schools, from discriminating against students on the basis of their disabilities. 29 U.S.C. § 794; 42 U.S.C. § 12132 et seq; *see also* 28 C.F.R. § 35.130(b)(1); 34 C.F.R. § 104.4(b)(1). They require public schools to modify their policies, practices, and procedures as needed to avoid discrimination, including the stigma that accompanies unnecessary segregation, and to provide students with disabilities equal educational opportunities. *Id.*

39.     Under Title II of the ADA, students with disabilities must be provided with opportunities to participate in school services, programs, and activities that are equal to those provided to students without disabilities. 28 C.F.R. § 35.130(b)(1)(ii), (iii).

40.     Further, educational services may not be provided and educational programs may not be administered in a way that results in, aids, or perpetuates discrimination against children with disabilities. *See* 28 C.F.R. § 35.130(b)(1)(v), (b)(3); 34 C.F.R. § 104.4(b)(1)(v), (b)(4).

41.     Both Section 504 and Title II of the ADA require students with disabilities to be provided with aids, benefits, and services to students with disabilities in the most integrated setting appropriate to the student's needs, which is defined as a setting that enables individuals with disabilities to interact with persons without disabilities to the fullest extent possible. 34 C.F.R. § 104.4(b)(2); 28 C.F.R. § 35.130(d); 28 C.F.R. pt. 35, App. A, p. 450.

42.     The Supreme Court has held that Title II of the ADA prohibits the needless isolation or segregation of persons with disabilities. *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999) (holding that "unjustified institutional isolation of persons with disabilities is a form of discrimination"). As the Supreme Court found, separating individuals with disabilities from their peers without

disabilities "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id*. at 600-601.

43.    The DCHRA prohibits discrimination on the basis of disability. DC Code §2–1402.41(1). Specifically, DC Code § 2–1402.41(1) makes it unlawful to deny access to, or use of, any services to any qualified person, wholly or partially, for a discriminatory reason based upon their actual or perceived disability.

## STATEMENT OF FACTS

**A.    Transportation to School Provides Students with Disabilities Access to Education**

44.    Part of OSSE's mission is to provide "safe, reliable, and efficient transportation services that positively support learning opportunities for eligible students from the District of Columbia."[4]

45.    OSSE provides transportation to approximately 4,100 students with disabilities. Students using OSSE transportation live across all Wards, with the majority of students (53%) living in Wards 7 and 8.

46.    OSSE currently owns 647 buses and 20 vans. There are approximately 570 bus routes, including some routes that are run by private contractors. There are at least three children on each of OSSE's routes.

47.    OSSE is funded to do this work pursuant to local and intra-district funds. OSSE was approved for approximately $117 million in funding for the 2024 fiscal year.

---

[4] Government of the District of Columbia, *FY2024 Approved Budget and Financial Plan*, Agency Budget Chapters – Part 2, D-95 (July 14, 2023), https://cfo.dc.gov/page/annual-operating-budget-and-capital-plan.

48.     In D.C., students with disabilities require transportation for many reasons, including because they are unable to independently travel to school, because their special education placement is not their neighborhood school, or because their special education placement is a non-public school, many of which are outside of the District.

49.     Non-public schools are private schools that provide intensive full time special education services to students who the District has determined cannot be served in their traditional public school because it lacks the appropriate services. For students who placed there through the special education process, OSSE pays the tuition for these students utilizing local and federal funds. Out of the almost 4,100 students that OSSE serves, approximately 491 students use OSSE transportation for non-public schools in DC, Maryland, and Virginia.

50.     Students with disabilities may also be placed at public schools within the District that are not their neighborhood schools or the closest charter school location, because the District has determined that their neighborhood schools cannot provide the services that they need to receive FAPE. These students also require OSSE transportation to get to and from school.

51.     Students with disabilities may also require transportation because, due to their disabilities, they cannot get to school by walking or taking public transportation. Some students with disabilities require individualized accommodations on OSSE transportation, such as specialized equipment, behavioral aides, or nurses.

52.     IEP teams comprised of educators and administrators from the student's Local Education Agency (LEA) and the student's family determine if a student requires special education transportation, and what accommodations they may need on that transportation.

53.     Once the IEP team determines that a student requires transportation, the LEA submits a Transportation Request Form to OSSE to initiate transportation services. OSSE then is responsible for providing transportation for the student in accordance with the IDEA.

54.     OSSE runs the Parent Resource Center, which serves as the primary communication link between families and schools about special education transportation services in the District.

55.     For at least the past year, OSSE has been posting "Daily DOT Updates" on its website.[5] The page is intended to provide the public with updated information on morning and afternoon bus routes. The page provides information on which bus routes are late, down, or not able to be serviced due to staffing shortages. It provides information on whether the bus left the terminal on time, but it does not provide information about whether the bus is on time after that point.

56.     OSSE has a reimbursement process for parents who have to transport their children to and from school when OSSE fails to provide the transportation on their student's IEP.

57.     Students with disabilities and their families rely on OSSE transportation to ensure that they can get to and from school safely and on time. When transportation does not arrive, or arrives late, it can cause significant disruptions, including missed school days and significantly late arrivals to school. When students arrive to school late, the interruption to their daily routine can create a ripple effect, making them unavailable for learning because they need time to regulate their emotions and behavior, and to catch up on what they missed due to their late arrival.

---

[5] *Daily DOT Updates*, Office of the State Superintendent of Education, https://osse.dc.gov/page/daily-dot-updates (lasted visited March 6, 2024).

58.     Missing some or all of the school day seriously undermines the goal of the IDEA to ensure that students with disabilities can make appropriate educational progress. School absences can negatively impact student learning at all age groups,[6] and students who miss school are at risk of falling behind and not meeting their individual goals for improvement.[7]  According to the District, missing just 10% of the school year (18 days per year) in early grades can leave many students struggling throughout elementary school.[8] By sixth grade, missing 18 days a year is strongly linked to dropping out of high school. Missing just two days a month can put students at risk of academic failure.[9] These negative impacts of missing school, which affect all students, are heightened for students with disabilities.

59.     Accordingly, student attendance is a priority for the District and for OSSE, which convenes the Every Day Counts! Task Force, a partnership of diverse District of Columbia agencies and stakeholders that collectively advance and coordinate strategies to increase student attendance and reduce truancy. The task force is chaired by the Office of the Deputy Mayor for Education, and agencies and organizations from the education, health, child welfare, public safety, and justice sectors are represented. However, by failing to provide adequate and reliable transportation to students with disabilities, the District has increased absences for students with disabilities.

---

[6] See e.g., Michael A. Gottfried, *The Achievement Effects of Tardy Classmates: Evidence in Urban Elementary Schools*, 25 SCH. EFFECTIVENESS AND SCH. IMPROVEMENT 1, 3 (2014) ("[S]tudents with greater tardiness perform worse on both chronic reading and math tests."); *DCPS at a Glance: Attendance*, DC Public Schools, https://dcps.dc.gov/attendance (last visited March 6, 2024) ("Your child is less likely to succeed if he or she is chronically absent.").
[7] See e.g., Mariajosé Romero & Young-Sun Lee, *A National Portrait of Chronic Absenteeism in the Early Grades*, NAT'L CTR. FOR CHILD. IN POVERTY (Oct. 2007), https://academiccommons.columbia.edu/doi/10.7916/D89C7650.
[8] Student Attendance:  Every Day Counts!, https://attendance.dc.gov/ (last visited March 6, 2024).
[9] *Id.*

60.     When OSSE DOT fails to transport students with disabilities, parents and families are left with few options, none of which are acceptable. Cancelled and delayed transportation places unexpected, serious burdens on families, who must organize childcare or facilitate and pay for private transportation at the last minute. Parents must make tough choices when they are required to self-transport their child to school. It often means missing work, paying their own funds for for-hire vehicles or gas and mileage, and re-arranging schedules of their other children. This burden is especially high for low-income families, which make up a significant percentage of those OSSE serves.

61.     District students without disabilities do not face the same barriers to access their education. Instead, they can take public transportation for free, walk, bike, drive, or take transportation provided by the District via D.C. School Connect and the Department of For Hire vehicles, which provides transportation along routes the District has determined are dangerous.

**B.      OSSE's Failure to Provide Transportation to Individual Plaintiffs & Members of The Arc Deprives them of FAPE, Denies them Equal Access to their Education, and Unnecessarily Segregates Them from Peers in Violation of the IDEA, ADA, Section 504 of the Rehabilitation Act, and the DC Human Rights Act.**

62.     When District students with disabilities do not receive appropriate transportation and arrive late or miss school entirely, they are deprived of their required specialized instruction, essential therapy services, instruction in activities of daily living, and critical social skill building.

63.     As a result of OSSE's transportation failures, students with disabilities are not making meaningful progress towards their educational, independent living, or social-emotional goals and are deprived of FAPE in violation of the IDEA. These failures also deprive Plaintiffs and similarly situated students of access to public education that is equal to that afforded to their peers and subjects them to unnecessary segregation in violation of the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

### 1. OSSE DOT's Failure to Provide Transportation to D.R.

64.     Plaintiff Crystal Robertson is the legal guardian of her nephew, D.R. who is an 11-year-old District resident and student at Ludlow-Taylor Elementary School.

65.     D.R., who is autistic, is a student with a disability under the IDEA. At all times relevant to this complaint, D.R. has had an IEP entitling him to special education transportation through OSSE DOT. He is an individual with a disability who is otherwise qualified to participate in the District's public education program under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

66.     Because of his disability, D.R. relies on having a consistent schedule. D.R. becomes anxious when he is not following a routine and expected events do not occur. If his schedule is not in order, D.R. will panic, pace back and forth, and repeat words. Once D.R. becomes dysregulated due to disruptions in his schedule, it can take up to three hours for him to calm down.

67.     OSSE DOT has failed to provide D.R. with safe, reliable, and appropriate transportation since 2020. From 2020 until October of 2023, OSSE DOT consistently picked up D.R. late in the morning or did not pick him up at all and dropped him off at home past the scheduled drop-off time. On the days that D.R. was not picked up or was picked up hours late, he missed critical special education and related services and socialization with his school community. As a result of OSSE's ongoing failures, D.R. has been late to school numerous times and missed entire school days.

68.     OSSE has failed D.R. D.R. arrived late to school approximately 84 times out of 149 days in the 2022-2023 school year and 15 times in the first two months of the 2023-2024 school year. When D.R. is late to school, he misses breakfast with his non-disabled peers and morning classes with his peers.

69.     OSSE also failed to provide reliable transportation home for D.R. in the 2022-23 school year and through October of 2023 in the 2023-24 school year until he was put on private transportation. On multiple occasions, OSSE failed to send a bus to pick D.R. up at school, stranding him until Ms. Robertson could go pick him up or arrange other transportation. When the bus did provide transportation home D.R. was dropped off late 92 out of 140 days.

70.     OSSE DOT has repeatedly failed to provide transportation to D.R. at least in part because its system incorrectly listed D.R.'s address despite the fact that he had not changed addresses. At the start of the 2022-23 school year until about September 20, 2022, OSSE DOT did not send a bus to pick up D.R. in the morning or drop him off at home in the afternoon because it had the wrong address in its system. At the start of the 2023-2024 school year. D.R.'s bus once again did not come and pick him up until after Labor Day because it was routed to the wrong address.

71.     On the first day of school in August 2022, OSSE DOT's bus dropped D.R. off at the wrong school. Because OSSE does not have a modern routing or tracking system - something that is standard in other school districts – D.R. was missing for approximately four hours before he was brought to Ludlow-Taylor Elementary School. No one from OSSE ever called Ms. Robertson about this incident and she never received any paperwork or incident notification about it. She still does not know exactly where D.R. was for those four hours.

72.     Once, OSSE dropped D.R. off at his deceased mother's home instead of at his home with Ms. Robertson. Ms. Robertson's mother found him. He was upset because he could not understand why he could not see his mother and it took a significant time for him to deescalate.

73.     OSSE's failures have, and continue to, deprive D.R. of a FAPE. D.R. requires as much regularity in daily schedule as can be provided. However, because of the inconsistency in

bus service, D.R. is often agitated and upset, and he can take a long time to calm down. When D.R. is agitated by the irregularities in his schedule due to OSSE DOT, he is not available and focused for learning.

74.     OSSE has not communicated, and continues to fail to communicate, reliable information so that Ms. Robertson can find out when D.R.'s bus will arrive. When OSSE cancels D.R.'s afternoon route, OSSE does not notify Ms. Robertson; instead, she finds out from staff at D.R.'s school. Ms. Robertson calls the Parent Resource Center but is unable to get information or resolution.

75.     When D.R.'s bus is late or does not arrive, Ms. Robertson is forced to transport D.R. to school to school herself or have D.R. miss school entirely. When she takes D.R. to school, she is late to work. Sometimes, Ms. Robertson relies on other family members or her adult son to take D.R. to school. Other times Ms. Robertson pays to take an Uber or Lyft with D.R. to and from school because D.R. cannot ride independently.

76.     Ms. Robertson has incurred fees from rideshares and costs from the times she drove D.R. to and from school.

77.     Ms. Robertson filed a Due Process Complaint with OSSE's Office of Dispute Resolution on October 17, 2023.  A hearing was held on January 26, 2024, and Plaintiff received a determination February 1, 2024.

78.     The Hearing Officer found that OSSE violated the IDEA by failing to implement D.R.'s IEP, failing to provide him with transportation, and denying him a FAPE. The Hearing Officer ordered compensatory education. The Hearing Officer also ordered OSSE to provide consistent, reliable, and appropriate transportation to D.R.

79.     The Hearing Officer dismissed Ms. Robertson's systemic claims arising under the IDEA and all claims arising under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA, and their related requests for relief on the grounds that Hearing Officer lacked jurisdiction to hear these claims. Ms. Robertson is aggrieved by the determination of the Hearing Officer.

80.     In or around October 2023, OSSE DOT began sending a private van to pick-up D.R. Although this has temporarily provided D.R. with more reliable transportation, because of Ms. Robertson's previous experiences with OSSE transportation, she remains concerned that OSSE could re-route him at any moment and that their transportation issues could begin again. She also remains worried that OSSE will fail to route D.R. correctly during transitions like the beginning of the school year and D.R. will again miss the first days of school.

81.     D.R. remains at risk of FAPE deprivation, segregation, and unequal access to public education as his non-disabled peers unless and until OSSE revises their policies, procedures, and practices to ensure reliable and appropriate transportation.

**2.  OSSE's Failure to Provide Transportation to H.D.**

82.     Plaintiff Elizabeth Daggett is the parent of H.D., who is a 13-year-old District resident and student at St. Coletta of Greater Washington, also known as St. Coletta Special Education Public Charter School ("St. Coletta"), an 11-month "year-round" educational program. It is an approximately thirty-minute drive from H.D.'s house to St. Coletta in normal traffic.

83.     H.D. has a rare chromosomal disorder, Christianson Syndrome, which causes global developmental delays, ADHD, and epilepsy. He is non-speaking and has difficulties and/or delays in activities of daily living such as eating, drinking, and toileting. He wears a diaper at all

times. Christianson syndrome also prevents H.D. from feeling physical sensations such as hunger or thirst, so he has to be monitored for dehydration and be told when to eat and drink.

84.    H.D. is a student with a disability under the IDEA and has at all times relevant to this complaint had an IEP that entitles him to special education transportation through OSSE. He is an individual with a disability who is otherwise qualified to participate in the District's public education program under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

85.    Ms. Daggett has had consistent and ongoing issues with the transportation provided by OSSE since H.D. entered the District of Columbia Public School system in 2013.

86.    Due to H.D.'s disabilities, he has seizures and requires a child safety harness to ensure he remains upright and in his seat when being transported on the bus. The harness requires a specific anchor and is not compatible with public transportation or rideshare vehicles. OSSE has failed to provide the anchor for H.D. multiple times. When they do provide it, OSSE has repeatedly failed to ensure H.D.'s safety harness is working properly and deployed correctly. On multiple occasions, H.D. could not be transported by OSSE DOT to or from school because the bus did not have the proper anchor for his safety harness.

87.     At least two to three times a week, H.D. comes home with the safety harness improperly secured. On two occasions in January and February 2024, H.D.'s safety harness was incorrectly applied and the straps were tied around his neck. Such inexcusable misconduct by OSSE staff poses an unacceptable risk to his health and safety.

88.    H.D. is regularly picked up and dropped off late by OSSE DOT. In the 2022-2023 school year, Ms. Daggett or her husband had to drive H.D. to or from school 14 times. In the 2023-2024 school year, Ms. Daggett and her husband have continued to have to drive H.D. when the bus is late. In the summer of 2023, the bus arrived significantly late to pick H.D. up for school on

at least three occasions. On July 18, 2023, the bus arrived an hour and fifteen minutes late. On July 19, 2023, the bus was 40 minutes late. On July 24, 2023, the bus was 50 minutes late without any notice from OSSE DOT that H.D.'s route was delayed.

89.     H.D. is also regularly dropped off at his home between 4:00 PM and 5:00 PM, which is one to two hours *after* H.D. is scheduled to be dropped off at home and an hour to an hour and half after the end of the school day. On days when H.D. has a half-day, he arrives home thirty minutes to over an hour late from his scheduled drop-off time.

90.     H.D.'s scheduled drop-off time in the afternoon is unattainable unless he is picked up early from school by OSSE DOT. His current scheduled drop-off time is 3:09 PM, but the bell time at St. Coletta's is 3:00 PM. From January 2023 to August 2023, H.D.'s scheduled drop-off time to his home was 3:10 PM. The family lives a 30-minute drive from the school, and it could be longer with traffic. H.D.'s bus schedule required him to be picked up earlier than bell time. In fact, during the 2022-2023 school year, his bus frequently departed St. Coletta's before the end of the school day, causing H.D. to miss school.

91.     As a result of OSSE's inconsistent service and failure to provide reliable transportation, H.D.'s education, as well as his routine, is negatively impacted. H.D. sometimes misses instructional time or related services when the bus is late or cancelled and his parents are unable to transport him. Delayed arrivals to school deprive H.D. of instructional time, peer interaction, and social development, all of which are critical to H.D.'s physical and behavioral well-being.

92.     Given H.D.'s serious disabilities, delayed arrivals and late drop-offs cause H.D. to be agitated and anxious. Because H.D. is restricted in his movements while he is in his safety harness, long bus rides without food and drink cause H.D. to be agitated when he arrives to school

and/or arrives home. No one on the bus is adequately monitoring H.D. actively for dehydration or giving him water. H.D. arrives home with a soiled diaper, uncomfortable, and in significant distress. On at least one occasion, H.D.'s diaper was so full it seeped through to his jacket. It can take up to an hour to calm H.D. down from his heightened state.

93.     On the days Ms. Daggett or her husband transport H.D., he is still often late to school because they do not know the bus is late until it does not arrive.

94.     Ms. Daggett receives little to no communication from OSSE about the extent of the bussing delays. Ms. Daggett is supposed to receive text message updates about when H.D.'s bus will arrive, but this information is routinely unreliable. On numerous occasions, Ms. Daggett will receive a notice that H.D.'s bus will arrive late, but then it will arrive on time; other times, she will receive a notice that the bus is on time, but it arrives substantially late. When Ms. Daggett calls the Parent Resource Center, she has had to wait on hold for 45 minutes or longer to speak to an OSSE representative. When she does speak to an OSSE representative, they often have difficulty locating the bus and providing an estimated time of pick-up or drop-off for H.D.

95.     Ms. Daggett regularly checks the OSSE daily tracker daily to see if there is information about H.D.'s bus but the provided information is often inaccurate. This website does not reflect whether the bus is on time to a student's home or to school. This inconsistent and incorrect information makes it impossible to plan a reliable schedule.

96.     As a result of OSSE's inconsistent service and failure to provide reliable transportation, H.D.'s family is negatively impacted. Because H.D.'s family only owns one car and has children who attend schools different than H.D., Ms. Daggett is forced to decide which one of her children will be late to school when they have to drive H.D. to school. Ms. Daggett and her husband have had to miss work due to having to take H.D. to school on days when OSSE DOT

fails to provide the requisite transportation. They also incur costs when transporting H.D. to and from school.

97.   Ms. Daggett filed a Due Process Complaint with OSSE's Office of Dispute Resolution on September 20, 2023.  A hearing was held on November 30, 2023 and Plaintiff received a determination on December 11, 2023.

98.   The Hearing Officer found that OSSE violated the IDEA by failing to implement H.D.'s IEP, failing to provide him with transportation, and denying him a FAPE, finding that OSSE's failure to provide timely and appropriate transportation is "quite frankly shocking."

99.   The Hearing Officer ordered compensatory education and reimbursement of the expenses Ms. Daggett incurred to transport H.D. to school. The Hearing Officer also ordered OSSE to comply with H.D.'s IEP and improve its transportation. As of the date of filing this Complaint, Ms. Daggett has not received any reimbursement from OSSE for these costs.

100.   The Hearing Officer dismissed Ms. Daggett's systemic claims arising under the IDEA and all claims arising under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA because the Hearing Officer lacked jurisdiction to hear these claims and denied Ms. Daggett a range of policy changes designed to improve transportation, because this relief was unavailable at the administrative hearing.

101.   Despite this order, OSSE continues to fail to provide reliable and appropriate transportation to H.D.  H.D. continues to be picked up late in the morning and arrive home late in the afternoon. Ms. Daggett still does not receive reliable and consistent communication about H.D.'s transportation. H.D. remains at risk of FAPE deprivation, unnecessary segregation, and unequal access to public education as his non-disabled peers unless and until OSSE revises their policies, procedures, and practices to ensure reliable and appropriate transportation.

### 3.  OSSE DOT's Failure to Provide Transportation to J.C.

102.    Plaintiff Joann McCray is the parent of J.C., who is 12 years old and a student at The Children's Guild District of Columbia Public Charter School.

103.    J.C. has autism and is identified as a student with a disability under the IDEA. At all times relevant to this complaint, J.C. has had an IEP entitling him to special education transportation through OSSE. He is an individual with a disability who is otherwise qualified to participate in the District's public education program under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

104.    As a child with autism, J.C. requires regular schedules and advanced notice of any changes to prevent behavioral tantrums. When J.C. is unaware of schedule changes, he becomes agitated and harms himself or others by hitting or pinching. He requires multiple verbal prompts to calm down and it can take up to thirty minutes to reorient him. Unplanned changes in his routine detract from J.C.'s learning and limit his ability to actively participate in his education.

105.    J.C. wants to attend school, but his routine is significantly disrupted by OSSE's failure to provide reliable and timely transportation.

106.    Ms. McCray has encountered consistent issues with the transportation provided by OSSE since J.C. entered the District of Columbia Public School system in 2015. The disruptions to J.C.'s education have worsened every time J.C. transferred to a new school because OSSE went days without coming to J.C.'s home to pick him up for that new school.

107.    For example, when J.C. started at Hardy Middle School, from the first day of school on August 29, 2022 until the second week of September, the bus did not come to pick up J.C. When J.C. transferred to The Children's Guild District of Columbia Public Charter School in December 2022, J.C.'s bus did not come to pick him up until the second week of January 2023.

108.    As part of his IEP, J.C. is eligible for services during the Extended School Year. Yet, OSSE completely failed to provide transportation for J.C. during the 2023 Extended School Year for four out of the five weeks. Ms. McCray was forced to arrange transportation to and from school with J.C.'s teacher at the Children's Guild, in order for J.C. to access his education.

109.    Even after J.C.'s transportation resumed, the bus repeatedly drops J.C. off late to school. For example, during Spring 2023, J.C.'s bus dropped him off late to school 88 times. In Fall 2023, J.C.'s bus dropped him off late to school 28 times—over 58% of the time.

110.    OSSE buses also regularly pick up J.C. outside of the scheduled time. On numerous occasions, J.C.'s bus has arrived early and, instead of waiting until the scheduled pickup time, it has departed without waiting for him.

111.    When J.C.'s transportation is late or doesn't show up, Ms. McCray either needed to find a way to self-transport him or have J.C. miss school entirely.

112.    OSSE also regularly dropped J.C. off at home in the afternoon outside of the scheduled time. J.C. arrived home late over thirty times between August 2023 and October 2023. Between September and October 2023, J.C. arrived home late every day he rode the bus. His afternoon rides were excessively long; within the same time frame, he was on the bus for over an hour twelve times even though according to OSSE's schedule the ride should only take about 30 minutes.

113.    J.C. has been pulled from class early in order to receive his afternoon transportation services, meaning that he missed valuable instruction time. For example, from August to September 2023, J.C. was pulled from school before the 3:15 PM bell time.

114.    Ms. McCray took many steps to try and resolve J.C.'s transportation. She called the Parent Resource Center, various directors at OSSE, Mayor Muriel Bowser's office, and the District

of Columbia City Council to try and resolve the problem. When Ms. McCray contacted the Parent Resource Center, they could not provide information about why the bus was not coming at is assigned times.

115.    As a result of OSSE's failures, Ms. McCray is forced to transport J.C. herself. At various times, she relied on J.C.'s godfather, ordered rideshare, which costs up to $80/day round trip to take J.C. to school and pick him up in the afternoon, or made arrangements with J.C.'s teachers. OSSE's disruptions to J.C.'s routine were so profound that Ms. McCray purchased a vehicle in April 2023 just so that she could transport J.C. to school when needed.

116.    As of the date of filing this Complaint, Ms. McCray has not received any reimbursement from OSSE for these costs.

117.    J.C.'s education is significantly impacted because of OSSE's failure to pick him up on time. When J.C. is late to The Children's Guild, he at least misses breakfast and the morning circle at school. During this time, J.C. misses vital time to interact with his peers and teachers, a skill that has been identified in his IEP in need of development. As a result of the disruptions to his routine, J.C. has had several breakdowns in the morning. J.C.'s report cards demonstrate that he earns Bs and As in his afternoon classes but Cs in his morning classes due to his late arrivals.

118.    The unpredictability of OSSE's transportation for J.C. has made it harder for Ms. McCray to attend classes to further her own education or maintain a job. Ms. McCray is subject to the whims of OSSE; that makes it difficult for her to plan her day and provide stability and income for her family.

119.    Ms. McCray filed a Due Process Complaint with OSSE's Office of Dispute Resolution on November 2, 2023.  A hearing was held on December 20, 2023, and Plaintiff received a determination on January 10, 2024.

120.    The Hearing Officer found that OSSE violated the IDEA by failing to implement J.C.'s IEP, failing to provide him with transportation, and denying him a FAPE.

121.    The Hearing Officer ordered compensatory education and reimbursement of the expenses Ms. McCray incurred to transport J.C. to school. However, the Hearing Officer did not order prospective relief requiring OSSE to comply with J.C.'s IEP.

122.    The Hearing Officer dismissed Ms. McCray's systemic claims arising under the IDEA and all claims arising under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA because the Hearing Officer lacked jurisdiction to hear these claims and because relief on those claims was unavailable.

123.    OSSE continues to fail to provide reliable and appropriate transportation to J.C. J.C. continues to arrive late to school in the morning and arrive home late in the afternoon. J.C. remains at risk of FAPE deprivation, unnecessary segregation, and unequal access to public education as his non-disabled peers unless and until OSSE revises its policies, procedures, and practices to ensure reliable and appropriate transportation.

### 4. OSSE DOT's Failure to Provide Transportation to A.F.

124.    Plaintiff Veronica Guerrero is the parent of A.F., who is a 14-year-old student at St. Colleta of Greater Washington

125.    A.F. is diagnosed with autism and a seizure disorder, and A.F. is identified as a student with a disability. At all times relevant to this complaint, A.F. has had an IEP entitling him to special education transportation through OSSE. He is an individual with a disability who is otherwise qualified to participate in the District's public education program under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

126.    A.F.'s IEP requires that OSSE provide a vehicle equipped with a ramp lift and specialized seatbelt, that A.F. be transported in an adaptive stroller and a harness to and from school to ensure he remains seated, and that A.F. have a trained, dedicated aide to sit next to him throughout the entire duration on the bus to provide support, ensure safe transportation, and positively support A.F.'s transition to and from the bus. A.F.'s IEP specifies that he should not ride the bus for longer than one hour, with five minutes of additional wait time/hand to hand transfer.

127.    Plaintiff Veronica Guerrero has encountered consistent issues with the transportation provided by OSSE DOT since A.F. entered the District of Columbia Public School system in 2012.

128.    OSSE does not reliably provide the necessary transportation equipment to implement A.F.'s IEP. On several occasions, OSSE DOT failed to transport A.F. because the bus did not have the safety harness required for A.F. to safely ride to school.

129.    OSSE does not reliably provide a dedicated aide as outlined in A.F.'s IEP. Without an aide, A.F.'s physical safety is at risk because the aide is supposed to ensure he remains seated and strapped into his safety harness, help him manage his significant anxiety about riding the bus, and manage A.F. should he have a seizure when riding to or from school.

130.     OSSE does not have an appropriate emergency plan or accommodations to manage A.F.'s seizures on the bus. There have been at least two instances where A.F. has had a seizure on the bus and bus personnel did not respond appropriately. At the start of the 2022-2023 school year, A.F. had a seizure while riding on the bus. When Ms. Guerrero learned of the incident, she contacted A.F.'s doctors and neurologist who informed the school that A.F. could not be in the bus for lengthy periods of time due to his seizure disorder. Fearing for A.F.'s safety, Ms. Guerrero also

requested a nurse to accompany A.F. while riding the bus, which OSSE denied. Ms. Guerrero is unaware of any seizure plan to address A.F.'s diagnosis on the bus other than having the dedicated aide, who is not reliably on the bus to attend to A.F.

131.    A.F.'s special education transportation has either been late or cancelled multiple days. During the 2022-2023 school year, as a result of OSSE failing to arrive or pick up A.F. in a timely manner, A.F. missed eleven days of school and arrived late to school 90 times. On the days A.F. rode the bus home in the afternoon in the 2022-2023 school year, he arrived home late every day. During the fall of the 2023-2024 school year, A.F. missed approximately three days of school, was late to school 20 times, and dropped off late at home 55 times. Although A.F.'s IEP states that A.F. has a ride time limit of one hour, OSSE DOT has frequently dropped A.F. off late at home and caused him to be on the bus for many hours.

132.    After an incident in September of 2022 where the bus attendant yelled at Ms. Guerrero in front of A.F., he became extremely anxious about riding the bus.

133.    The IEP was amended in December of 2022 to add specialized training for the dedicated aide, additional wait time for the bus, and boarding and riding in the specialized stroller. St. Coletta staff eventually told Ms. Guerrero to pause transportation for two weeks while they obtained a specialized stroller for A.F. to help him board the bus. OSSE failed to resume transportation until six weeks later, and for that entire time Ms. Guerrero had to transport A.F. herself.

134.    When transportation finally resumed in January of 2023, OSSE did not send a bus that had a ramp so that A.F. could board with the specialized stroller. Ms. Guerrero had to continue to transport him until a new bus was sent later in January. Even after a new bus was routed, that bus was so late many days that she had to drive him to school for much of the spring of 2023.

135.    A.F.'s education is negatively impacted by OSSE's failure to provide appropriate and reliable transportation. A.F. is negatively impacted and disappointed every time he misses or is late to school. A.F. requires a regular routine due to his disability. When his routing is disrupted, he gets upset and aggressive and has trouble sleeping. The inconsistency of the bus schedule is a significant trigger for A.F.  Due to OSSE failing to drop A.F. home on time, A.F.is no longer able to have critical after-school home therapies because both providers refused to continue services after he regularly arrived late or missed sessions. Without these services, A.F.'s aggression is significantly worse at home and at school and he is making little or no progress on important adaptive goals that he needs at home and school like learning to toilet by himself and feeding himself.

136.    A.F.'s family has been negatively impacted by OSSE's failure to provide appropriate and reliable transportation. Ms. Guerrero constantly worries about A.F.'s safety on the bus due to the poor air conditioning and lack of plan for A.F.'s seizures.

137.    Ms. Guerrero and A.F. live approximately forty-five minutes away from the school by car. It is burdensome for Ms. Guerrero to drive A.F. to and from St. Coletta not only because it is forty-five minutes away, but also because Ms. Guerrero has to bring her daughter to school at District of Columbia International School, which is a 50-minute drive away from St. Coletta's. Ms. Guerrero has incurred costs from driving A.F. to school and has never been reimbursed by OSSE.

138.    OSSE fails to communicate with Ms. Guerrero in her native language. Ms. Guerrero is a native Spanish speaker. OSSE DOT has been aware that A.F. and his family are native Spanish speakers since 2012, when A.F. was first identified as a student eligible for services under the

IDEA. Plaintiff receives communications only in English, including but not limited to, texts and calls about early pick-ups, delays, cancellations, and how to seek reimbursement.

139.   Ms. Guerrero filed a Due Process Complaint with OSSE's Office of Dispute Resolution on December 19, 2023. A hearing was held on March 5, 2024, and the Hearing Officer's Determination is due by March 15, 2024.

140.   The Hearing Officer dismissed Ms. Guerrero's systemic claims arising under the IDEA and all claims arising under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA because that Hearing Officer lacked jurisdiction to hear these claims and because the requested relief was unavailable.

141.   OSSE continues to fail to provide reliable and appropriate transportation to A.F. Ms. Guerreo does not receive reliable and consistent communication about A.F.'s transportation, and A.F. continues to be picked up late in the morning and arrive home late in the afternoon. A.F. remains at risk of FAPE deprivation, unnecessary segregation, and unequal access to public education as his non-disabled peers unless and until OSSE revises their policies, procedures, and practices to ensure reliable and appropriate transportation.

### 5.   OSSE DOT's Failure to Provide Transportation to B.R.C.

142.   Plaintiffs David Clark and Marcia Cannon-Clark are the parents of B.R.C., an eight-year-old student at School Within School at Goding. School Within School is a public school operated by District of Columbia Public Schools.

143.   B.R.C. has a benign brain tumor which causes seizures and has resulted in global developmental delays. She is diagnosed with hydrocephalus, a neurological disorder that causes fluid buildup in her brain. As a result of her condition, B.R.C. had a ventricular shunt installed to help release some of the built-up fluid in her brain. B.R.C. also has epilepsy and cortical visual impairment, meaning she is unable to see beyond nine inches in front of her. B.R.C. is non-

speaking and uses a wheelchair. Given her medical complexities, B.R.C. attends school in-person three days a week and in-home instruction two days a week.

144.    B.R.C. is identified as a student with a disability under the IDEA and has at all times relevant to this complaint had an IEP entitling her to special education transportation through OSSE. B.R.C.'s IEP requires a nurse on the bus to monitor her medical conditions. She is an individual with a disability who is otherwise qualified to participate in the District's public education program under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

145.    Mr. Clark and Ms. Cannon-Clark have encountered consistent issues with the transportation provided by OSSE since B.R.C. has entered the District of Columbia Public School system in 2018.  OSSE provides unreliable transportation to B.R.C., causing her to arrive late to school and home, or alternatively, miss school entirely.

146.    Given B.R.C.'s medical conditions, she cannot ride the bus without a nurse. On multiple occasions, the bus arrives without a nurse onboard to assist B.R.C. without notice to the family. When this occurs, Ms. Cannon-Clark is required to transport B.R.C. to school. The bus has also left the terminal without a nurse and had to come back for B.R.C. after they pick up the nurse and drop other kids on her route off at school. This causes one to two-hour delays to B.R.C.'s pick-up times and make her late to school.

147.    Ms. Cannon-Clark has had to also drive B.R.C. to school when OSSE did not pick B.R.C. up because there were too many students using wheelchairs occupying the bus. When Ms. Cannon-Clark called the Parent Resource Center to know the status of B.R.C.'s bus, she was told there were already three wheelchair users on the bus, and B.R.C. would have to be picked up later. The bus can only safely accommodate a limited number of students who need to ride in their

wheelchairs, but OSSE transports more than that number of children on B.R.C.'s route. This means that if the children ahead of her on the route get on the bus in their wheelchair, she cannot ride.

148.     Although B.R.C. receives Extended School Year services through her IEP, OSSE continued to provide unreliable service during the summer of 2023. When the bus was late, Plaintiffs transported B.R.C. to school, even though it meant they were late to their own jobs.

149.     On at least one afternoon, B.R.C. was stranded at school because a bus did not arrive to take her home. Ms. Cannon-Clark had to pick B.R.C. up from school after the teacher communicated that the bus never arrived to school.

150.     Due to the continuous failure of OSSE to provide the requisite transportation, B.R.C. is frequently late to school. The only reason she is not regularly absent from school is that her parents transport her themselves, which can sometimes happen as much three times per week. Because Ms. Cannon-Clark has been required to drive B.R.C. to and from school, it has become difficult to maintain her full-time job under the unpredictable circumstances created by OSSE.

151.     OSSE's failure to provide reliable transportation interrupts B.R.C.'s medical and therapeutic schedule. In addition to her educational services, B.R.C. is to receive occupational therapy, physical therapy, and speech-language pathology at school. When OSSE fails to transport B.R.C. to school on time, she misses these necessary services.

152.     Late arrivals to school also cause B.R.C. to miss scheduled breakfast time. B.R.C. misses peer interaction during breakfast, and then misses instruction because she needs to eat when she arrives to school late.

153.     B.R.C. becomes upset when the bus does not arrive or arrives late. B.R.C. is accustomed to a consistent routine and becomes frustrated when there are changes to her routine.

154.    Delays in transportation also cause disruptions to B.R.C.'s regularly scheduled medications. B.R.C. receives critical medication to control her seizures and prevent neurological instability two times a day; it must be taken eight hours apart. B.R.C. receives one dose in the morning and one in the afternoon. Without the medication, B.R.C. is subject to increased seizures, neurostorming (dysregulated nervous system), increased agitation, loss of focus, and anxiety. In the afternoon, B.R.C. repeatedly arrives home late, which jeopardizes the timeliness of B.R.C.'s medicine.

155.    When the bus fails to arrive within the scheduled window, Mr. Clark or Ms. Cannon-Clark call the Parent Resource Center and are often put on hold between 10-45 minutes before speaking to a representative. When they reach a representative, OSSE is never able to provide estimated arrival times for their busses and is unable to respond to inquiries regarding tardy and absent busses.

156.    Inconsistent busing services cause Mr. Clark and Ms. Cannon-Clark unnecessary stress. Without a parent communication system and real-time trackers for OSSE busses, Mr. Clark and Ms. Cannon-Clark are unable to know how long it will take B.R.C. to arrive home from school or locate her while on the bus. As a result, Plaintiffs David and Marcia Clark have had to install an AirTag on B.R.C.'s wheelchair so they can know the location of B.R.C. while on the bus, ensure she safely arrives home, and can anticipate her arrival.

157.    Mr. Clark and Ms. Cannon-Clark submitted a reimbursement request to OSSE DOT for transportation costs they incurred during the 2022-23 school year and did not receive reimbursement until five months later.

158.   Mr. Clark and Ms. Cannon-Clark filed a Due Process Complaint with OSSE's Office of Dispute Resolution on December 19, 2023. A hearing is scheduled to take place on March 19, 2024, and the Hearing Officer Determination is expected within the statutory deadlines.

159.   The Hearing Officer dismissed Ms. Cannon-Clark's and Mr. Clark's systemic claims arising under the IDEA and all claims arising under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA because that Hearing Officer lacked jurisdiction to hear these claims and because the relief was unavailable.

160.   OSSE continues to fail to provide reliable and appropriate transportation to B.R.C. Mr. Clark and Ms. Cannon-Clark do not receive reliable and consistent communication about B.R.C.'s transportation, and B.R.C continues to be picked up late in the morning and arrive home late in the afternoon, and the transportation does not provide the accommodations B.R.C. requires. B.R.C. remains at risk of FAPE deprivation, unnecessary segregation, and unequal access to public education as her non-disabled peers unless and until OSSE revises their policies, procedures, and practices to ensure reliable and appropriate transportation.

**C.      OSSE's Polices & Practices Fail to Provide Safe, Reliable, and Appropriate, Transportation**

161.   OSSE is systematically failing to provide safe, reliable, and appropriate transportation to District students with disabilities, thereby denying FAPE and equal opportunity to students with disabilities and unnecessarily segregating them in violation of the IDEA, ADA, Section 504 of the Rehabilitation Act, and the DCHRA.

162.   The Individual Plaintiffs' experiences are emblematic of how OSSE's policies and practices fail to faithfully implement students' IEPs and ensure that they receive safe, reliable, and

appropriate transportation to and from school. OSSE's failure to provide consistent, reliable, and safe transportation services is also well-documented in the news.[10]

163.    OSSE's Daily DOT Updates webpage shows that each day there are a significant number of bus routes that are late or cancelled.[11] Each late or cancelled route means students with disabilities are unlawfully being denied an equal opportunity to access to their education.

---

[10] *See* Sam P.K. Collins, *D.C. Parents Demand Clarity from OSSE on Continuing Bus Delays*, The Washington Informer (Mar. 14, 2023), https://www.washingtoninformer.com/d-c-parents-demand-clarity-from-osse-on-continuing-bus-delays/; Delia Goncalves, *'We deserve better' DC parents say unreliable bus service harms students with special needs*, WUSA (Mar. 1, 2023, 6:50 PM ET), https://www.wusa9.com/article/news/local/dc/dc-parents-say-unreliable-bus-service-harms-students-with-special-needs/65-b549b105-3272-4bd4-aa67-9eebdaf0dde5; Mariel Carbone, *DC parents say school bus delays, cancelations persist weeks into new year*, DC News Now (Feb. 15, 2023, 10:25 PM ET), https://www.dcnewsnow.com/news/local-news/washington-dc/dc-parents-say-school-bus-delays-cancelations-persist-weeks-into-new-year/; Theresa Vargas, *D.C. is failing disabled students who rely on buses to get to school*, The Washington Post (Feb. 8, 2023, 5:15 PM ET), https://www.washingtonpost.com/dc-md-va/2023/02/08/disabled-students-buses-dc/; John Henry, *Weeks later, DC's school bus delays persist*, WUSA (Jan. 30, 2023, 9:05 PM ET), https://www.wusa9.com/article/news/education/dc-school-bus-delays-students-special-needs/65-fdbcf559-82ce-407c-9978-b856fd2fc00c#:~:text=Office%20of%20the%20State%20Superintendent,late%20or%20delayed%2C%20on%20average.; Sam P.K. Collins, *Bus Service Changes Highlight Woes of Special-Needs Students*, The Washington Informer (Jan. 25, 2023), https://www.washingtoninformer.com/bus-service-cuts-highlight-woes-of-special-needs-students/; Martin Austermuhle, *Students With Disabilities Face Barrage Of School Bus Delays In D.C.*, DCist (Jan. 20, 2023, 2:46 PM), https://dcist.com/story/23/01/20/students-with-disabilities-face-barrage-of-school-bus-delays-in-dc/; Sam Ford, *Bus assigned to take special needs DC student to school regularly late; mother fed up*, WJLA (Sept. 19, 2022, 6:05 PM ET), https://wjla.com/news/local/bus-assigned-dc-georgetown-take-special-needs-student-jdon-school-late-mother-uber-lyfr-driver-shortage-staff-hardy-middle-dmv; Sam Ford, *DC mom spends $80/day to take son from Southeast to special ed classes in Georgetown*, WJLA (Sept. 1, 2022, 8:12 PM ET), https://wjla.com/news/crisis-in-the-classroom/joann-mccray-dc-mom-spends-80day-to-take-her-son-jdon-chisley-from-southeast-to-special-ed-classes-in-georgetown-office-of-the-state-superintendent-of-education; Bob Barnard, *Investigation after DC mom unable to locate son with autism after school amid bus driver shortages*, Fox 5 DC (Jan. 10, 2023), https://www.fox5dc.com/news/investigation-after-dc-mom-unable-to-locate-son-with-autism-after-school-amid-bus-driver-shortages.

[11] OSSE DOT tracks daily bus delays and cancellations and posts these updates on its website, Daily DOT Updates, https://osse.dc.gov/page/daily-dot-updates, and on its Twitter feed, https://twitter.com/OSSEDC.

164.    OSSE's own measure of whether transportation is on time is also deceptive and does not disclose whether a student is actually on time for school. OSSE determines that a bus is "on-time" if it left the terminal at its scheduled time, regardless of whether it transports its students to school on time. OSSE reports buses as "late" only when they leave the terminal after their appointed time.

165.    In fact, OSSE does not track whether students arrive to school on time or arrive home on time at the end of day in a systematic way. Based on the experiences of Plaintiffs, there are many days in which the bus left the terminal on time, but the bus – and the students on it - still arrived at school late.

166.    Even using OSSE's suspect characterization of "on time," OSSE's own reports show that buses are regularly late.  Based on OSSE's data tracking daily bus delays and cancellations over a period of approximately 110 days, there were approximately 3,200 instances of recorded bus route disruptions in the morning or in the afternoon. Over 400 routes had at least one delay in multiple weeks within a school year, nearly 450 routes had delays on multiple days, and 300 routes had issues over consecutive days. Furthermore, over 150 routes had issues across multiple weeks in both the 2022–2023 and 2023–2024 school years, showing the persistence of the problem.

167.    In the week just before filing this Complaint, OSSE reported that over 100 routes were late or cancelled. On Friday, March 1, 2024, 40 routes were reported impacted; 23 on February 29; 17 on February 28, 6 on February 27, and 29 on February 26. Upon information and belief, each impacted route equates to three or more students with disabilities who arrive late and miss out on their education.

168.    OSSE does not follow standard industry practice or professional guidelines that would allow it to implement students' IEPs and provide safe, reliable, and appropriate transportation. OSSE's deficient policies and practices include, but are not limited to, failing to use a routing system that can properly plan transportation routes that deliver students to and from school on time such that they can attend the full school day; failing to utilize GPS and GPS data; failing to maintain sufficient staffing levels, including drivers, attendants, dedicated aides, nurses, and terminal staff; failing to train staff, including drivers, attendants, dedicated aides, and nurses; failing to provide required accommodations and equipment on its vehicles; failing to have an appropriately sized fleet that is adequately maintained; failing to follow best practices regarding private transportation services; and failing to use best practices for parent communication.

1.    OSSE's Routing Systems Are Not Facilitating On-Time Transportation

169.    OSSE does not maintain a bus routing system that can plan school bus routes that provide safe, reliable, and appropriate transportation to students with disabilities.

170.    The routing system routinely sets pick-up and drop-off times for students that make it unrealistic or impossible for students to arrive at school within an appropriate window before the start of the school day, remain at school for the full school day, and arrive home at their scheduled time.

171.    Some students in DC are scheduled to be picked up before the end of the school day to be transported home, which means they miss out on critical educational hours.

172.    Some students are scheduled to be picked up from their homes just minutes before the start of the school day, meaning they miss morning breakfast, socialization times with their peers, and sometimes the first part of their academics.

173.    Some students regularly arrive right at "bell time" or the start of school, even though OSSE's stated policy is to have students arrive ten to thirty minutes before the start of school, so they can get to their classrooms, eat breakfast, use the restroom, and otherwise settle in before the academic day begins. When their bus arrives at bell time, the students arrive in their classrooms after the start of the day.

174.    Some students are scheduled to be picked up at their home hours early for school, meaning that they are on the bus for exceedingly long periods of time, which has a negative impact on their mental and sometimes physical health, and impacts their ability to be available to learn when they do arrive at school.

175.    The routing system also does not accurately account for routine traffic disruptions or delays, so buses often arrive to students' stops late, sometimes by hours.

176.    There is also no coordinated system for OSSE DOT to receive information about student needs from IEP teams and to provide that information to the transportation providers. After a student is identified as needing transportation services, there is a delay before that student can be routed and receive transportation. If a student has a change in address, change in school, or change in needed accommodations or services, there is a delay before those changes are put into effect. The transportation planning process is prone to error, as students' needs, addresses, and other pertinent details are not shared between systems, resulting in delays or missed transportation services. These delays result in students with disabilities not receiving transportation per their IEP.

177.    There is no real-time, automated, tracking system to locate buses or tracking whether buses are on-time. OSSE relies on handwritten "trip tickets" collected at the end of each week to track school bus times and whether and if students were provided with on-time and appropriate transportation. These trip tickets are scanned in by the bus staff. If they are missing in

the system, there is no method to collect them and all data about the student's ride that day are simply missing from the student's records. OSSE staff must then analyze each individual trip ticket to determine if a student has been on time or not. A single student may generate over a thousand pages of records in just one school year. It is impossible for OSSE staff to use this data in a meaningful way to make real time adjustments to bus routes as is possible in modern transportation systems.

178.    OSSE does not have a sufficient, appropriate fleet of vehicles to serve its population of students.  OSSE uses contracted, private transportation services for more than 400 students, which is not in line with best practices for student safety. Students are also often provided vehicles that are inappropriate for their needs.

179.    Attempts to address the routing system have failed. For example, at the start of the 2022-2023 school year, OSSE adopted a new school bus routing system. According to OSSE, that new routing system failed to provide reliable transportation for students.

180.    On January 9, 2023, OSSE again changed the school bus routing system, reverting to the routing system that had been used in prior school years, supposedly to respond to the problems under the newly adopted system. However, this change also resulted in massive disruptions to school bussing for special education students. During that week in January 2023, at least 12 routes were not serviced at all. On January 17, 106 morning routes were affected, and students experienced up to 90 minutes delays and cancelations for morning services. On January 26, 77 morning routes were impacted, including two routes that were not serviced at all. On the same day, two afternoon routes were cancelled, and thirteen afternoon routes were significantly delayed. From the week of January 16 through the week of February 13, 2023, the daily average number of late morning routes ranged from 53 to 99.

181.    These routing errors routinely deprive students with disabilities of FAPE, deny them an equal opportunity to access their education, and unnecessarily segregate them in violation of the IDEA, ADA, Section 504, and the DCHRA. Until they are fixed, all students with disabilities who are entitled to transportation as a related service remain at-risk of missing their specialized instruction and related services, being deprived of a FAPE, being deprived of equal access to public education, and being unnecessarily segregated from their school communities.

2.    Bus Driver and Attendant Staffing & Training Is Insufficient

182.    OSSE does not have sufficient driver staffing to provide safe, reliable, and appropriate transportation to students with disabilities. The lack of sufficient drivers results in late routes, doubled or tripled routes, meaning that the bus runs multiple routes in the same day, or cancelled routes.

183.    According to OSSE's own assessment for the 2021-2022 and 2022-2023 school year, OSSE had 15% fewer drivers on staff than it needed to operate transportation routes. In 2022-2023, OSSE required 554 bus drivers, which includes the needed number of drivers plus a 10% "bench" of drivers who can substitute in as needed. OSSE only had 468.

184.    As of February 2024, OSSE states that it requires 600 drivers, and has 525, which is a shortfall of 75 drivers. It is unclear if OSSE's stated need of 600 drivers includes a sufficient bench of back up-drivers, and the driver shortfall may be even greater.

185.    In August 2023, State Superintendent of Education Christina Grant stated that OSSE knew "the shortage of bus drivers in the District will cause service delays for some families during the 2023-24 school year."[12]

---

[12] *See* Theresa Vargas, *For Disabled D.C. Students, an Uncertain Wait on School Buses Remains*, The Washington Post (Aug. 31, 2023) (https://www.washingtonpost.com/dc-md-va/2023/08/30/school-bus-disabled-students-dc/).

186.    Yet, OSSE has not sufficiently increased its hiring of bus drivers nor contracted with drivers or private transportation services to fill these gaps.

187.    OSSE requires that each bus has an attendant to appropriately serve students with disabilities on the bus. OSSE also serves students with behavioral needs, intellectual disabilities, and other disabilities who require a dedicated attendant or aide.

188.    OSSE does not have sufficient bus attendants or nurses to provide safe, reliable, and appropriate transportation to students with disabilities. When the attendant or nurse is not present students needing those services cannot ride the bus to school and may be late or miss school all together.

189.    According to OSSE's own assessment for the 2021-2022 and 2022-2023 school years, OSSE had a 30% and 26% shortfall of required bus attendants respectively.  In the 2022-2023 school year, OSSE required 641 attendants, which includes the needed number of attendants plus a 10% "bench" of attendants who can substitute in as needed. OSSE only had 474 attendants.

190.    As of February 2024, OSSE states that it requires 666 attendants and has only 576, which is a shortfall of 90 attendants. It is unclear if OSSE's stated need of 666 attendants for 2023-24 includes a sufficient bench of attendants and dedicated aides, and the attendant shortfall may be even greater.

191.    OSSE also does not have sufficient nurses or aides to provide safe, reliable, and appropriate transportation to students with disabilities.

192.    OSSE staffs nurses through a sole contract provider and has long had problems staffing sufficient nurses to meet the needs of students with disabilities who ride the bus. According to OSSE's own data, the contractor employed only 50 nurses during the 2022-2023 school year.

193.    Yet, OSSE has not sufficiently increased its hiring of attendants or nurses nor contracted with attendants or nurses to fill these gaps.

194.    OSSE does not adequately train its drivers and attendants to provide safe, reliable, and appropriate transportation to students with disabilities.

195.    For example, staff do not adequately know how to use safety equipment required by students. Staff do not have sufficient training to manage behavioral challenges on the buses, including responding to students who are anxious or reluctant to board the bus.

196.    As a result of OSSE's failure to maintain sufficient, well-trained staff, including a bench of substitute drivers, nurses, and attendants, students are routinely unable to get to and from school and are denied a FAPE, are deprived of equal access to their education, and are unnecessarily segregated from their school communities. All students with disabilities who are entitled to transportation as a related service remain at-risk of missing their specialized instruction and related services, being deprived of a FAPE, being deprived of equal access to public education, and being unnecessarily segregated from their school communities because there are not enough bus drivers, nurses, or attendants to meet their need.

### 3.  Buses Do Not Have Required Accommodations and Equipment

197.    Children with disabilities are entitled to receive accommodations and equipment that are tailored to the unique, individualized needs of the child. For example, OSSE serves students who need child safety restraint systems, including harnesses and hardware to secure them, students who require ramp access on and off the bus, and students in wheelchairs who require buses with anchor points to secure their wheelchairs.

198.   OSSE does not provide appropriate accommodations and equipment children with disabilities need in order to ride the bus safely. When this equipment is not available, students cannot ride the bus to school, and may be late or miss school all together.

199.   As a result of OSSE's failure to provide equipment and accommodations, students are routinely unable to get to and from school and are denied a FAPE. All students with disabilities who are entitled to transportation as a related service remain at-risk of missing their specialized instruction and related services, being deprived of a FAPE, being deprived of equal access to public education, and being unnecessarily segregated from their school communities because the buses do not have the equipment or other accommodations they require.

4.   Parent Communication

200.   OSSE DOT does not have a parent communication system and transportation tracking system to give parents meaningful information about the status of the buses, such as if the bus is late to their home, whether the child arrived at school on time, and whether the bus is on time in the afternoon.

201.   The Parent Resource Center, which "serves as the primary communication link between families and schools [] about transportation services,"[13] has a lack of "quality customer service" that is not "prompt[]" nor "adequately addressing" parent concerns.[14] Parents report long delays to even reach a representative, and when they do, the representative is often unable to tell them where the bus is or how long any delay might be.

202.   OSSE does not have GPS tracking or other real-time tracking of student transportation that parents can access to determine where their child's bus or vehicle is.

---

[13] Office of the State Superintendent of Education, *For Parents: Transportation for Students with Disabilities*, D.C. Gov't, https://osse.dc.gov/node/719832 (last visited March 6, 2024).
[14] *Id.*

203.    As a result of OSSE's actions and inactions, parents and students face uncertainty about when – or whether – their legally-mandated transportation will show up. Parents are unable to track their student's bus through GPS and are forced to rely on inconsistent information provided by OSSE to know if and when their bus will show up. This is highly disruptive for students and parents alike, impacting students' availability for learning and depriving students of their education. All students with disabilities who are entitled to transportation as a related service remain at-risk of missing their specialized instruction and related services, being deprived of a FAPE, being deprived of equal access to public education, and being unnecessarily segregated from their school communities because of OSSE's ineffective parent communication system.

5.    OSSE DOT's Purported "Work Arounds" Are Insufficient

204.    OSSE DOT's efforts to mitigate these harms are insufficient and are not a substitute for meeting its obligation to provide transportation to eligible students.

205.    Rather than fixing the constant transportation failures, OSSE has offered to reimburse parents for their transportation expenditures.

206.    Many families do not have sufficient funds to pay for transportation up-front and cannot afford to wait for reimbursement.

207.    The transportation reimbursement process is burdensome, requiring complicated forms and certifications, and it is also slow, taking many months to actually process and reimburse families. According to OSSE DOT, the fastest a reimbursement can happen is 60 days. The actual wait time to receive reimbursement is often much longer than 60 days.

208.    Even with parent reimbursement, many parents are unable to transport their children to school at all because of their other obligations, because they don't have a car, because private transportation is not sufficient to accommodate students' disabilities, or a host of other

reasons. For example, taking a ride-share such as Lyft or Uber is not possible for students who need specialized equipment in order to ride safely. For young children, a parent must accompany them in a Lyft or Uber to school, then pay for transportation for themselves back home, and then do that same process in reverse just hours later, traveling all the way to the child's school to transport them back home.

209.    In practice, requiring families to self-transport and then seek reimbursement often means a child simply is denied the ability to attend school. All students with disabilities who are entitled to transportation as a related service remain at-risk of missing their specialized instruction and related services, being deprived of a FAPE, being deprived of equal access to public education, and being unnecessarily segregated from their school communities because OSSE denies them access to free transportation services.

210.    OSSE has also not taken steps to assess students' missed services and need for a missed services plan or compensatory education, despite knowledge that its failures have caused students to miss multiple days and even weeks of school. OSSE does not have a policy on missed services plan or compensatory education for services missed due to OSSE's transportation failures.

## **CLASS ACTION ALLEGATIONS**

211.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, named Plaintiffs Robertson, Daggett, McCray, Guerrero, Cannon-Clark, and Clark, bring this action on behalf of themselves and all others similarly situated. The plaintiff class consists of all students with disabilities aged 3-22 who, from March 7, 2022 until judgment is issued in this case, require transportation from the District of Columbia to attend school and have experienced and will continue to experience Defendant's failure to provide safe, reliable, and effective transportation.

212.    The requirements of Rules 23(a)(1)-(4), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure are met as to the class for the following reasons:

213.    The class is so numerous that joinder of all members of the class is impracticable. There are currently 4,093 students eligible for special education transportation from Defendant. In addition, there is an unknown number of future class members, as IEP determinations are made on an as-needed basis and students can become eligible for special education transportation at any time.

214.    There are questions of law and fact common to the class, including (a) whether Defendant, in failing to provide safe, reliable, and appropriate school transportation to Plaintiffs, is violating the IDEA by failing to implement Plaintiffs' IEPs or otherwise denying Plaintiffs' FAPE and (b) whether Defendant, in failing to provide safe, reliable, and appropriate school transportation to Plaintiffs, is violating the ADA, Section 504 of the Rehabilitation Act, and the DCHRA by depriving Plaintiffs and class members of an equal opportunity to participate in and benefit from their education  and unnecessarily segregating them.

215.    The claims of the named Plaintiffs are typical of the claims of the class.  Due to Defendant's policies, practices, procedures, acts, and omissions in failing to provide safe, reliable, and appropriate transportation to students with disabilities, Plaintiffs are subjected to a deprivation of FAPE, denied an equal opportunity to participate in and benefit from their education, and unnecessarily segregated.

216.    The named Plaintiffs will fairly and adequately represent and protect the interests of the class. They have no interests that are antagonistic to the class and seek relief that will benefit all members of the class. They are represented by counsel with significant experience with this type of litigation.

217.    Defendant has acted and continues to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

218.    The common facts and questions of law shared by the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

20 U.S.C. § 1400 *et seq.*

219.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

220.    The IDEA and its implementing regulations require that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A); *see also* 20 U.S.C. § 1400(d)(1)(A); 5-E D.C.M.R. § 3002.1(a).

221.    In order to provide FAPE, the provision of special education and related services, including transportation, must be made in conformity with each student's IEP. 20 U.S.C. § 1401(9)(D).

222.    Plaintiffs Robertson, Daggett, McCray, Guerrero, Cannon-Clark, and Clark, and putative class members are parents of students with disabilities eligible for special education services under the IDEA and are entitled to transportation as a related service pursuant to their IEPs. Plaintiff The Arc's members include Plaintiffs Robertson, Daggett, McCray, Guerrero, Cannon-Clark, and Clark, and other members of the putative Plaintiff class.

223.    Defendant District of Columbia, via OSSE, is responsible for implementing transportation services on District students' IEPs.

224.    As set forth above, OSSE is systemically failing to implement the IEPs and provide appropriate transportation for Plaintiffs, members of The Arc, and putative class members, and as a result is denying these students FAPE.

225.    As set forth above, OSSE is failing to have in effect policies and procedures to ensure that students with disabilities who are entitled to transportation as a related service are receiving those transportation services and as a result is denying these students FAPE.

226.    OSSE's actions violate 20 U.S.C. § 1412(a)(1)(A) and the implementing regulations.

227.    As a result of Defendant's actions, Plaintiffs, members of The Arc, and putative class members are suffering or will suffer irreparable harm. In the absence of injunctive relief, Defendant will deny or continue to deny Plaintiffs, members of The Arc, and putative class members FAPE.

228.    Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### TITLE II OF THE AMERICANS WITH DISABILITIES ACT

### 42 U.S.C. § 12131 *et seq.*

229.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

230.    Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, guarantees individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of public entities. 42 U.S.C. § 12132.

231.   Title II mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

232.   In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)–(iii).

233.   Plaintiffs B.R.C., A.F., J.C., D.R., and H.D are District residents with disabilities who are enrolled in a local education agency in the District of Columbia. Plaintiffs and each member of the Plaintiff class is an "individual with a disability" within the meaning of the ADA. Their disabilities substantially limit one or more major life activities, including but not limited to, learning, reading, concentrating, thinking, and communicating. 42 U.S.C. § 12102.

234.   As school-age children who live in the District, individual Plaintiffs and each member of the Plaintiff class is qualified to participate in OSSE's educational programs and services. See 42 U.S.C. § 12131(2).

235.   Plaintiff The Arc is a non-profit organization with members who are District residents with disabilities enrolled in a local education agency in the District of Columbia and, therefore, are otherwise qualified individuals with disabilities under Title II of the ADA. Its members include Plaintiffs B.R.C., A.F., J.C., D.R., and H.D.

236.    Defendant is a public entity covered by Title II of the ADA and public education is a program, service, or activity of the District of Columbia.

237.    As set forth above, by failing to provide safe, reliable, and appropriate transportation, Defendant has discriminated against D.R., H.D., J.C., A.F., B.R.C., members of The Arc, and putative class members in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations on the basis of disability by:

a.    Excluding D.R., H.D., J.C., A.F., B.R.C., members of The Arc, and putative class members from participation in, and denying them the benefits of, a full school day, and otherwise discriminating against them, 28 C.F.R. § 35.130(a);

b.    Denying them an educational opportunity that is equal to the opportunity afforded other children, § 35.130(b)(1)(ii);

c.    Denying them educational services that are as effective as the services provided to other children, § 35.130(b)(1)(iii);

d.    Unnecessarily providing them different or separate educational services, § 35.130(b)(1)(iv);

e.    Utilizing methods of administration that have the effect of subjecting them to discrimination on the basis of disability, have the effect of substantially impairing accomplishment of its objectives for students with disabilities, and perpetuate the discrimination of local school districts against these children, § 35.130(b)(3);

f.    Failing to reasonably modify their policies, practices, or procedures as needed to avoid discrimination on the basis of disability, § 35.130(b)(7);

g.    Failing to provide them educational services, programs, and activities in the most integrated setting appropriate to their needs, § 35.130(d); and

h.   Failing to ensure that its schools do not unnecessarily segregate children with disabilities from their peers. *See Olmstead v. L.C.*, 527 U.S. 581 (1999).

238.   Defendant's failure to provide safe, reliable, and appropriate transportation, thereby denying students with disabilities equal access to their education and unnecessarily segregating them, is precisely the type of discrimination and segregation that the ADA was enacted to prevent and prohibit.

239.   As a result of Defendant's actions, Plaintiffs, members of The Arc, and putative class members are suffering or will suffer irreparable harm. In the absence of injunctive relief, Defendant will deny or continue to deny Plaintiffs, members of The Arc, and putative class members equal access to public education and unnecessarily segregate them.

240.   Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

241.   The relief sought by Plaintiffs and the Plaintiff class would not require a fundamental alteration to OSSE's programs, services, or activities.

### THIRD CAUSE OF ACTION

VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

29 U.S.C. § 794 et seq.

242.   Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

243.   Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

244.     Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

245.     No qualified individual with a disability may, on the basis of disability, "be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination from any program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4(a).

246.     D.R., H.D., J.C., A.F., B.R.C., and each member of the Plaintiff class is an "otherwise qualified individual with a disability" within the meaning of Section 504. 29 U.S.C. §§ 794, 705(20). Their disabilities substantially limit one or more major life activities, including but not limited to learning, reading, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). As school-age children who live in the District, individual plaintiffs and each member of the Plaintiff class is qualified to participate in OSSE's educational programs and services. 34 C.F.R. § 104.3(l)(2).

247.     Plaintiff The Arc is a non-profit organization with members who are District residents with disabilities enrolled in a local education agency in the District of Columbia and, therefore, are otherwise qualified individuals with disabilities under Section 504 of the Rehabilitation Act. Its members include D.R., H.D., J.C., A.F., and B.R.C..

248.     Defendant receives federal financial assistance and is a covered entity under Section 504, and public education is a program or activity of the District of Columbia.

249.    Defendant has violated the requirements of Section 504 with respect to Plaintiffs and members of the Plaintiff class as follows:

    a.   Excluding them from participation in public education, denying them the benefits of public education, or otherwise subjecting them to discrimination in violation of 29 U.S.C. § 794(a);

    b.   Affording them an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded those without disabilities. 34 C.F.R. § 104(b)(1)(ii);

    c.   Denying them educational services that are as effective as the services provided to other children, § 104.4(b)(1)(iii);

    d.   Providing them different or separate educational services unnecessarily, § 104.4 (b)(1)(iv);

    e.   Using methods of administration that have the effect of subjecting them to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4); and

    f.   Using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' school districts, in violation of 34 C.F.R. § 104.4(b)(4).

    g.   Failing to offer aids, benefits and services, in the most integrated setting appropriate to the person's needs, in violation of 34 C.F.R. § 104.4.

    h.   Failing to serve them alongside their peers in academic and nonacademic settings to the maximum extent appropriate, § 104.34

250.    Excluding children from the public-school classroom solely because of a disability, including by Defendant's failure to provide special education transportation to and from school, is precisely the type of discrimination and segregation that Section 504 aims to prevent and prohibit.

251.    As a result of Defendant's actions, Plaintiffs, members of The Arc, and putative class members are suffering or will suffer irreparable harm. In the absence of injunctive relief, Defendant will deny or continue to deny Plaintiffs, members of The Arc, and putative class members equal access to public education and unnecessarily segregate them.

252.    Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

253.    The relief sought by Plaintiffs and the Plaintiff class would not require a fundamental alteration to OSSE's programs, services, or activities.

### FOURTH CAUSE OF ACTION

THE D.C. HUMAN RIGHTS ACT
D.C. Code § 2-1401.01 *et seq.*
.

254.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

255.    The DCHRA makes it an "unlawful discriminatory practice . . . for an educational institution" to "deny, restrict, or to abridge or condition the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person otherwise qualified, wholly or partially, for a discriminatory reason, based upon the actual or perceived: . . . disability of any individual." D.C. Code § 2-1402.41.

256.    Plaintiffs may bring a civil action against the District's government agencies, officials, or employees in a court of competent jurisdiction. D.C. Code § 2-1403.03(b).

257.    As set forth above, Plaintiffs D.R., H.D., J.C., A.F., and B.R.C. are persons otherwise qualified to use or access the facilities, services, programs, or benefits of any program or activity of the educational institution operated by Defendant. Plaintiff The Arc is a non-profit organization with members who are District residents with disabilities enrolled in a local education agency in the District of Columbia and, therefore, are otherwise qualified individuals with disabilities under the DCHRA. Its members include D.R., H.D., J.C., A.F., and B.R.C.

258.    For all of the reasons described in Paragraphs 229-254 with regard to the Americans with Disabilities Act and the Rehabilitation Act claims, Defendant's actions and inactions violate the DCHRA.

259.    As a result of Defendant's actions, Plaintiffs, members of The Arc, and putative class members are suffering or will suffer irreparable harm. In the absence of injunctive relief, Defendant will deny or continue to deny Plaintiffs, members of the Arc, and putative class members equal access to public education and unnecessarily segregate them.

260.    Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

**RELIEF**

Plaintiffs, on behalf of themselves and all other persons similarly situated, request that this Court grant the following relief:

261.    Hybrid certification of this action as a class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

262.    A declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Defendant has violated Plaintiffs' rights under the following statutes and regulations:

a. Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq.* by failing to implement transportation services as mandated by students' IEPs and failing to provide a free and appropriate public education to Plaintiffs in accordance with the IDEA and its implementing regulations.

b. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* by depriving Plaintiffs of an equal opportunity to participate in and benefit from their education and unnecessarily segregating them.

c. Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* by depriving Plaintiffs of an equal opportunity to participate in and benefit from their education and unnecessarily segregating them.

d. D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.* by depriving them of an equal opportunity to participate in and benefit from their education and unnecessarily segregating them.

263.    A preliminary and permanent injunction ordering Defendant to provide Plaintiffs and the plaintiff class with safe, reliable, and appropriate transportation services and fully implement all students' IEP-mandated transportation services.

264.    A preliminary and permanent injunction ordering Defendant to revise its policies, practices, and procedures as necessary to provide students with disabilities with safe, reliable, and appropriate transportation services and take other appropriate affirmative actions to ensure that the violations of law complained of above do not continue to be engaged in by Defendant, its agents, successors, employees, attorneys, and those acting at its direction;

265.   A preliminary and permanent injunction ordering Defendant to report to the Court at regular intervals on the implementation of special education transportation for the Plaintiffs and plaintiff class;

266.   A preliminary and permanent injunction appointing an independent monitor or Special Master whose duties shall include, but not be limited to, periodic monitoring and reporting to the Court and Plaintiffs regarding Defendant's compliance with the Court's Order and remedies necessary to bring about full compliance with the Court's Order;

267.   An order enjoining Defendant to provide compensatory education to Plaintiffs and the plaintiff class for whom Defendant failed to provide transportation consistent with students' IEPs;

268.   An order enjoining Defendant to reimburse Plaintiffs and the plaintiff class who have self-transported their children to school;

269.   An order enjoining Defendant to take appropriate affirmative actions to ensure that the violations of federal and District of Columbia law complained of above do not continue to be engaged in by Defendant, its agents, successors, employees, subordinates, attorneys and those acting at its direction;

270.   An order requiring Defendant to reimburse plaintiffs for the funds expended to obtain experts, evaluations, and special education and related services as a result of Defendant's violations of law pursuant to 5 DCMR §3032.3;

271.   An award of reasonable attorneys' fees, expenses, and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b);

272.   Retention of jurisdiction over this action to ensure Defendant's compliance with the mandates of the Court's orders; and

273.    Such other relief as may be deemed proper by the Court.


Dated: March 7, 2024                              Respectfully submitted,


/s/ Kaitlin R. Banner                             /s/ Margaret H. Warner
Kaitlin R. Banner, D.C. Bar No.1000436            Margaret H. Warner, D.C. Bar No. 359009
Margaret F. Hart, D.C. Bar No. 1030528            Eugene I. Goldman, D.C. Bar No. 9399959
Chelsea Sullivan, D.C. Bar No.                    Theodore E. Alexander, D.C. Bar No. 1600692
    90017708*                                     Christopher M. Shoemaker, D.C. Bar No. 90019351*
Washington Lawyers' Committee for                 McDermott Will & Emery LLP
Civil Rights and Urban Affairs                    500 North Capitol Street NW
700 14th Street, NW, Suite 400                    Washington, DC 20001
Washington, DC 20005                              (202) 756-8400
(202) 319-1000                                    mwarner@mwe.com
kaitlin_banner@washlaw.org                        egoldman@mwe.com
margaret_hart@washlaw.org                         talexander@mwe.com
chelsea_sullivan@washlaw.org                      cshoemaker@mwe.com


Katherine Zeisel, DC Bar No. 979552*              Shira Wakschlag, D.C. Bar No. 1025737
Children's Law Center                             Evan Monod, D.C. Bar No. 1764961
501 3rd St, NW, 8th Floor                         The Arc of the United States
Washington, DC 20001                              2000 Pennsylvania Ave. NW
(202) 267-4900                                    Washington, D.C. 20006
Kzeisel@childrenslawcenter.org                    (202) 534-3708
                                                  wakschlag@thearc.org
                                                  monod@thearc.org

                                                  *Counsel for Plaintiffs*


---

* Certification to practice pursuant to Rule 83.2(f) submitted or to be submitted