# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CRYSTAL ROBERTSON,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:24-cv-00656-PLF** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Table of Contents**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

I.    Transportation Services for Students with Disabilities ....................................... 2

II.   Plaintiffs' Allegations ......................................................................................... 3

III.  Procedural History............................................................................................... 6

LEGAL STANDARD.................................................................................................... 7

ARGUMENT ................................................................................................................. 8

IV.   Plaintiffs Do Not Meet the Rule 23(a) Prerequisites for a Class Action............ 8

    A.    Plaintiffs Have Not Met Their Burden To Show Numerosity. ...................... 8

    B.    Plaintiffs Cannot Establish Commonality Because They Have Not Identified Any
       Common Questions Pertinent to Any of Their Claims. ............................... 13

    C.    Plaintiffs Cannot Establish Typicality Because They Have Already Received Relief for
       Their Alleged Injuries. ................................................................................ 21

    D.    Plaintiffs Cannot Adequately Serve as Class Representatives Because They Have No
       Incentive To Seek Additional Services They Do Not Need......................... 24

V.    Certification Is Improper Under Rule 23(b)(2) Because Plaintiffs Have Not Established That
    Injunctive Relief Can Address Their Alleged Injuries. ....................................... 25

    A.    Plaintiffs' Requested Injunction Is Fatally Vague. ..................................... 25

    B.    An Injunction Would Require Individually Tailored Relief......................... 27

VI.   Plaintiffs' Claims for Compensatory Education Do Not Satisfy Rule 23(b)(3)................... 29

CONCLUSION................................................................................................................ 37

**Table of Authorities**

Page(s)

Cases

*Alvarez v. Keystone Plus Construction Corp.*,
 303 F.R.D. 152 (D.D.C. 2014) ............................................................................... 22

*Am. Pipe & Const. Co. v. Utah*,
 414 U.S. 538 (1974) .............................................................................................. 9

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................... 24, 31, 34

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) .............................................................................................. 8

*Andersen by Andersen v. District of Columbia*,
 877 F.2d 1018 (D.C. Cir. 1989) ........................................................................... 36

*Andrews v. Plains All Am. Pipeline, L.P.*,
 2017 WL 10543402 (C.D. Cal. Feb. 28, 2017) ................................................... 27

*Arias v. Marriott Int'l, Inc.*,
 324 F.R.D. 307 (D.D.C. 2018) ............................................................................. 22

*Ass'n for Disabled Americans v. Amoco Oil Co.*,
 211 F.R.D. 457 (S.D. Fla. 2002)........................................................................... 19

*Atwell v. Gabow*,
 248 F.R.D. 588 (D. Colo. 2008) ........................................................................... 27

*Baby Neal ex rel. Kanter v. Casey*,
 43 F.3d 48 (3rd Cir. 1994)..................................................................................... 19

*Branham v. Gov't of the District of Columbia*,
 427 F.3d 7 (D.C. Cir. 2005)..................................................................... 15, 28, 33

*Califano v. Yamasaki*,
 442 U.S. 682 (1979) .......................................................................................... 7, 29

*Catalan ex rel. E.C. v. District of Columbia*,
 478 F. Supp. 2d 73 (D.D.C. 2007)..................................................................... 14, 29

*C.G.B. v. Wolf*,
 464 F. Supp. 3d 174 (D.D.C. 2020)...................................................................... 28

*Chester Upland Sch. Dist. v. Pennsylvania*,
 2012 WL 1473969 (E.D. Pa. Apr. 25, 2012)........................................................ 21

*Coleman ex rel. Bunn v. District of Columbia*,
 306 F.R.D. 68 (D.D.C. 2015) .............................................................. 12, 19, 31, 32

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ............................................................................................ 33, 34

*Cox v. Jenkins*,
 878 F.2d 414 (D.C. Cir. 1989)........................................................................... 24, 36

*Daskalea v. Wash. Humane Soc.*,
 275 F.R.D. 346 (D.D.C. 2011) ............................................................................ 31, 32

*Davis v. Astrue*,
 250 F.R.D. 476 (N.D. Cal. 2008) ......................................................................... 29

*Derrick v. Glen Mills Schools*,
 2024 WL 2134340 (E.D. Pa. May 13, 2024).......................................................... 37

*D.L. v. District of Columbia*,
 713 F.3d 120 (D.C. Cir. 2013).....................................................................Passim

*D.L. v. District of Columbia*,
 860 F.3d 713 (D.C. Cir. 2017) ..................................................... 17, 24, 25

*Doe v. Arizona Dep't of Ed.*,
 111 F.3d 678 (9th Cir. 1997)........................................................................ 36

*Feinman v. FBI*,
 269 F.R.D. 44 (D.D.C. 2010) ..................................................................... 7

*Garcia v. Johanns*,
 444 F.3d 625 (D.C. Cir. 2006).................................................................... 8

*Gen. Tel. Co. of the Sw. v. Falcon*,
 457 U.S. 147 (1982) ................................................................................. 7

*Hinton v. District of Columbia*,
 567 F. Supp. 3d 30 (D.D.C. 2021)............................................................. 11

*Hoyte v. District of Columbia*,
 325 F.R.D. 485 (D.D.C. 2017) ..................................................... 7, 10, 33

*In re Navy Chaplaincy*,
 306 F.R.D. 33 (D.D.C. 2014) ................................................................... 28

*In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No.*,
 725 F.3d 244 (D.C. Cir. 2013)................................................................... 31

*In re Vitamins Antitrust Litig.*,
 209 F.R.D. 251 (D.D.C. 2002) ................................................................. 31

*In re White*,
 64 F.4th 302 (D.C. Cir. 2023).................................................... 8, 9, 13, 22

*Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*,
 389 U.S. 64 (1967) ................................................................................. 26

*Jamie S. v. Milwaukee Public Sch.*,
 668 F.3d 481 (7th Cir. 2012) ..................................................... 15, 17, 28, 32

*J.D. v. Azar*,
 925 F.3d 1291 (D.C. Cir. 2019)............................................................... 25

*J.N. v. Oregon Dep't of Educ.*,
 2021 WL 408093 (D. Or. Feb. 5, 2021) ...................................................... 21

*J.R. v. Oxnard School District*,
 2019 WL 4438243 (C.D. Cal. July 30, 2019)............................................... 21

*Johnson v. District of Columbia*,
 248 F.R.D. 46 (D.D.C. 2008) ................................................................... 31

*Kenneth R. v. Hassan*,
 293 F.R.D. 254 (D.N.H. 2013) ................................................................. 20

*Kutasi v. Las Virgenes Unified School Dist.*,
 494 F.3d 1162 (9th Cir. 2007).................................................................. 36

*K.W. v. District of Columbia*,
 385 F. Supp. 3d 29 (D.D.C. 2019)........................................................ 24, 27

*Lane v. Kitzhaber*,
 283 F.R.D. 587 (D. Or. 2012) ................................................................... 19

*Littlewolf v. Hodel*,
   681 F. Supp. 929 (D.D.C. 1988) ................................................................... 21

*M.A. ex rel E.S. v. N*ewark Pub. Schs., ,
   No. 01-3389, 2009 WL 4799291 (D.N.J. Dec. 7, 2009) ................................ 33, 37

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ........................................................................ 25

*McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*,
   488 F.3d 868 (10th Cir. 2007) ...................................................................... 36

*Middleton v. District of Columbia*,
   312 F. Supp. 3d 113 (D.D.C. 2018) .............................................................. 9

*Monreal v. Potter*,
   367 F.3d 1224 (10th Cir. 2004) .................................................................... 26

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ........................................................................ 9

*Ostrof v. State Farm Mut. Auto Ins. Co.*,
   200 F.R.D. 521 (D. Md. 2001) ..................................................................... 34

*Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*,
   934 F.3d 13 (1st Cir. 2019) .................................................................... Passim

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................................ 19

*Perez v. Sturgis Pub. Sch.*,
   3 F.4th 236 (6th Cir. 2021) ........................................................................... 35

*Premier Health Ctr., P.C. v. United Health Group.*,
   292 F.R.D. 204 (D.N.J. 2013) ...................................................................... 34

*Schmidt v. Lessard*,
   414 U.S. 473 (1974) ..................................................................................... 26

*S.E.C. v. Wash. Inv. Network*,
   475 F.3d 392 (D.C. Cir. 2007) ................................................................ 26, 27

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ..................................................................................... 7

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
   543 F.3d 597 (10th Cir. 2008) ............................................................ 25, 26, 27

*Soseeah v. Sentry Ins.*,
   808 F.3d 800 (10th Cir. 2015) ...................................................................... 28

*Steward v. Janek*,
   315 F.R.D. 472 (W.D. Tex. 2016) ............................................................... 21

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ......................................................................... 22

*Teamsters v. United States*,
   431 U.S. 324 (1977) ..................................................................................... 13

*Thorpe v. District of Columbia*,
   303 F.R.D. 120 (D.D.C. 2014) .................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ..................................................................................... 30

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... Passim

*Wilson v. District of Columbia*,
  770 F. Supp. 270 (D.D.C. 2011) ............................................................................ 32

Statutes

20 U.S.C. § 1400(d)(1)(A) ......................................................................................... 28
20 U.S.C. § 1415(i) .............................................................................................. 24, 34
20 U.S.C. § 1415(l) ................................................................................................... 35

Rules

Federal Rule of Civil Procedure 23 ................................................................... Passim
Federal Rule of Civil Procedure 65 ......................................................... 25, 26, 27

## INTRODUCTION

Plaintiffs D.R., H.D., J.C., A.F., B.R.C., and the Arc of the United States seek class certification in this action alleging that the District does not provide adequate transportation and transportation-related services in violation of the Individuals with Disabilities Education Act (IDEA), the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the D.C. Human Rights Act (DCHRA). Plaintiffs cannot meet their burden to show that class certification is warranted under Federal Rule of Civil Procedure 23.

First, Plaintiffs have not satisfied any of the four elements necessary for certification under Rule 23(a): numerosity, commonality, typicality, and adequacy. Plaintiffs fail to show numerosity for two independent reasons: If Plaintiffs are unsuccessful in their claims, the class would include zero members; and, in any event, they offer only inferences, rather than evidence, of numerous absent class members. Plaintiffs fail to show commonality because they do not identify any question under any of their claims that is common across the entire class. Plaintiffs fail to show typicality because, unlike absent class members, they have already received relief for their alleged transportation-related harms through IDEA administrative proceedings. And Plaintiffs fail to show adequacy because they have no incentive to seek services they are already receiving, and because three of them have already been awarded the prospective relief that an injunction from this Court would provide.

Second, Plaintiffs cannot show that certification would be proper under Rule 23(b)(2). Plaintiffs' Motion describes a "broad" injunction requiring the District to comply with the law that is impermissibly vague. The proposed order submitted with Plaintiffs' Motion for Preliminary Injunction, on the other hand, envisions an injunction with numerous, more specific subparts targeting relief at some but not all putative class members. Because that injunction

would not affect all class members at once, Rule 23(b)(2) does not authorize certification of Plaintiffs' proposed class.

Finally, Plaintiffs cannot establish that certification is warranted under Rule 23(b)(3) for their compensatory education claims. Compensatory education claims require a fact-intensive, child-specific inquiry in which common questions play no role. And because disposing of class members' compensatory education claims would require the Court to fashion a complex remedial scheme for making determinations of class membership, liability, and appropriate compensatory education awards, Plaintiffs' putative class action is not superior to other available methods of adjudicating such claims—such as the administrative due process proceedings mandated by the IDEA.

For all of these reasons, no class should be certified.

## FACTUAL BACKGROUND

### I.    <u>Transportation Services for Students with Disabilities</u>

The Office of the State Superintendent of Education (OSSE) provides transportation to school children in the District of Columbia as required by their individualized education programs (IEPs). Def.'s Opp'n to Pls.' Mot. for Preliminary Inj. (Def.'s PI Opp'n), Ex. D, OSSE Transportation Policy [31-3]. OSSE does not transport non-disabled students, *id.*, Ex. A, Decl. of Raphael Park (Park Decl.) [31-2] ¶ 8, except generally, by providing free unlimited use of public transportation for all District residents, ages 5 to 21, who are enrolled in school, *see* District Dep't of Trans., "Kids Ride Free Program," https://ddot.dc.gov/page/kids-ride-free-program. Presently, OSSE transports more than 4,000 students directly from their homes to their schools and back on a daily basis. Park Decl. ¶ 16. About 20 percent of those students require specialized supports, such as wheelchair lifts or dedicated aides. *Id.* ¶ 18. OSSE employs a team

of more than 1,000 drivers and attendants, using a fleet of around 650 OSSE-owned vehicles, to transport most students. *Id.* ¶ 12. Recently, all services have spread across about 550 routes, which are run each morning and again in the afternoon. *Id.* ¶ 18. During School Year 2022-23, the District struggled and, at times, failed to provide consistent transportation to many students but has since made significant changes, resulting in performance improvements. Def.'s PI Opp'n, [31] at 13–18; Decl. of Melinda Woods, [4-30] ¶ 9; Decl. of Elizabeth C. Mitchell, [4-33] ¶ 17; Decl. of Stephanie Maltz, [4-35] ¶ 12.[1]

## II.    **Plaintiffs' Allegations**

The named individual Plaintiffs are parents suing on behalf of their children, students with IEPs providing for transportation services through OSSE. Compl. [1] ¶¶ 65, 84, 103, 125, 144. The remaining Plaintiff, The Arc of the United States (The Arc), is a national non-profit. *Id.* ¶ 31.

Plaintiffs seek to certify a class around OSSE's alleged failure to provide "safe, reliable, and appropriate transportation," which, according to Plaintiffs, constitutes a denial of a free appropriate public education (FAPE), and more broadly, a denial of equal opportunity to participate in and benefit from their education. *Id.* ¶ 17. Plaintiffs allege numerous issues including: untimely buses, Guerrero Decl. [4-9] ¶ 12; McCray Decl. [4-18] ¶ 29; Cannon-Clark Decl. [4-14] ¶ 13; excessive travel times, McCray Decl. ¶ 31; broken heating and cooling systems on buses, Cannon-Clark Decl. ¶ 20; incorrect pick-up and drop-off locations, Robertson Decl. [4-22] ¶¶ 23, 28; missing safety harnesses and other equipment, Daggett Decl. [4-3] ¶ 25; Guerrero Decl. ¶ 13, absent dedicated aides and nurses, Guerrero Decl. ¶ 38; Cannon-Clark Decl. ¶ 14; and inadequate training of staff, Daggett Decl. ¶ 44; Guerrero Decl. ¶¶ 39–40.

---

[1]    All pinpoint citations are to ECF pagination, where available.

Each named Plaintiff filed an administrative due process complaint regarding their transportation and transportation-related services, and each received a hearing officer determination (HOD) finding a denial of FAPE related to late drop-offs.  *See* [4-24] (Robertson HOD); [4-6] (Daggett HOD); [4-20] (McCray HOD); [24-1] (Guerrero HOD); [24-2] (Cannon-Clark HOD).  The findings varied in their details among the five Plaintiff children.  The number of times the bus was late varied; the frequency of lateness in the morning and afternoon varied; and the amount of time by which the bus was late varied.  *Id.*  The way that each student was affected by the delays also varied—some students, for example, missed after-school services as a result while others did not.  *Id.*

Those differences affected both the liability determinations and the remedies afforded.  A hearing officer found, for example, that one of these five students was *not* denied a FAPE with respect to morning drop-offs in School Year 2023–24 (*i.e.*, there was no violation shown for that conduct for that period of time).  *See* McCray HOD at 15 ("This Hearing Officer agrees with OSSE that it has implemented the Student's IEP during the 2023–24 school year, from late August 2023 through October 2023, insofar as the route from the Student's home to school was concerned.").  Plaintiffs have not shown or suggested this decision was wrong.  *See* Def.'s PI Opp'n at 29.  And, although three of the five plaintiffs were awarded some form of prospective relief, the hearing officer in that same decision (for Plaintiff J.C.) did not award such relief.  *See* McCray HOD at 18–19; *see also* Guerrero HOD at 12 (no prospective relief).

Each of the five named Plaintiffs' child received an award of compensatory education, but these awards differed both in form of services and hours awarded.  Specifically:

- For D.R., 240 hours of one-on-one academic tutoring plus 6 hours of speech-language services, from providers chosen by Plaintiff, Robertson HOD at 11;

- For H.D., $585 per week for up to six weeks of camp at a summer camp of Plaintiff's choice, plus up to $125 per week for transportation to camp, Daggett HOD at 13;

- For A.F., 108 hours of independent ABA therapy and 22 hours of independent occupational therapy services at a payment rate prescribed by OSSE, Guerrero HOD at 12;

- For B.R.C., 111 hours of one-on-one services by independent special education teacher ("who is experienced with medically fragile children and who can collaborate with Student's existing teachers and related service providers and work with Student over a 2-year period if needed") chosen by Plaintiff, Cannon-Clark HOD at 8, 13; and

- For J.C., 127.5 hours of one-on-one tutoring by a special education teacher, McCray HOD at 18.

In sum, three of five students received some form of tutoring, but the hour amounts and provider specifications varied; one student received two different forms of therapy; and one received compensation for summer camp.

The hearing officers' decisions made clear that each of these awards was carefully tailored to the individual student's needs and experience. *E.g.*, Daggett HOD at 12 ("The determination by the undersigned has been specifically tailored to address Student's unique needs as a matter of equity . . . ."). Four of these awards were based on testimony presented from experts—Robertson HOD at 11; McCray HOD at 4, 18; Guerrero HOD at 12; Cannon-Clark HOD at 8—including one in which the hearing officer disagreed with the expert's recommendation and reduced the hours awarded, Guerrero HOD at 12.

5

III.  **Procedural History**

Plaintiffs filed this lawsuit on March 7, 2024, on behalf of themselves and all others similarly situated, against the District of Columbia, alleging violations of the IDEA (Count 1), the ADA (Count 2), Section 504 (Section 504) (Count 3), and the DCHRA (Count 4).  Compl. ¶¶ 219–260.

On March 14, 2024, Plaintiffs moved for a preliminary injunction ordering, among other things, that the District:  (1) "fully implement all students' IEPs, including but not limited to, transportation"; (2) maintain "safe, reliable, and appropriate" transportation services for all students; (3) ensure sufficient staffing and an adequate bus fleet; (4) develop policies and procedures for all OSSE staff to promote best practices for dealing with students with disabilities; (5) adopt a GPS system that can track all buses; (6) implement a parent communication system to provide real-time updates regarding students' transportation; (7) create policies and procedures to track complaints pertaining to transportation; (8) implement "other policies and procedures to address the issues raised in this Complaint to ensure that Plaintiffs and the plaintiff class receive equal access to their education and are not unnecessarily segregated"; (9) report to the Court monthly as to compliance with the Order; (10) hire a transportation expert to review all transportation-related policies and procedures; and (11) report to a special master appointed by the Court.  *See* Pls.' Mot. for Prelim. Inj. [4]; Pls.' Mem.; Pls.' Proposed Order for Prelim. Inj. [4-2].

On May 3, 2024, Plaintiffs filed for class certification, seeking certification of the following class:

> All students with disabilities aged 3-22 who, from March 7, 2022, until judgment is issued in this case, require transportation from the District of Columbia to attend school and have experienced and will continue to experience Defendant's failure to provide safe, reliable, and appropriate transportation.

Mem. in Support of Pls.' Mot. for Class Cert. (Pls.' Mem.) [29-1] at 12.  Additionally,

Plaintiffs ask this Court to appoint Plaintiffs as class representatives and appoint

Plaintiffs' counsel as class counsel.  *Id.* at 37.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for class certification.  Fed.

R. Civ. P. 23.  A class action is "an exception to the usual rule that litigation is conducted by and

on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  Thus, a class "may

only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites [for

class certification] have been satisfied."  *Feinman v. FBI*, 269 F.R.D. 44, 49–50 (D.D.C. 2010)

(quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  The plaintiff bears the

burden of persuasion to show each and every requirement of Rule 23 has been met, generally by

a preponderance of the evidence.  *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C.

2017).

First, the plaintiff must meet all four requirements of Rule 23(a) by showing that:  (1) the

proposed class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Second, if the plaintiff can meet all the requirements of Rule 23(a), she must then show

certification is warranted under one of the three subparts of Rule 23(b).  *Shady Grove Orthopedic

Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Garcia v. Johanns*, 444 F.3d 625,

631 n.6 (D.C. Cir. 2006).  As relevant here, Pls.' Mem. at 28–32, Rule 23(b)(2) permits

certification of a class seeking declaratory or injunctive relief only upon a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits certification of a class seeking individualized monetary relief only upon a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Wal-Mart*, 564 U.S. at 362.

Although analytically distinct from the issue of class certification, courts may consider the underlying merits on a motion for class certification "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## ARGUMENT

### IV.    Plaintiffs Do Not Meet the Rule 23(a) Prerequisites for a Class Action.

The requirements of Rule 23 are "carefully calibrated" and "provide[ ] strong protection against circular or indeterminate class definitions." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023). For the reasons discussed below, Plaintiffs' proposed class definition does not meet the requirements of Rule 23.

#### A.    Plaintiffs Have Not Met Their Burden To Show Numerosity.

Plaintiffs have not established numerosity. Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "That numerosity must exist throughout the litigation." *White*, 64 F.4th at 314. If a class "could be defined to have zero members if the plaintiffs lose[, it] is not numerous at all." *Id.* Here, Plaintiffs' proposed class definition is limited to qualifying students who "have experienced and

8

will continue to experience Defendant's [alleged] failure to provide safe, reliable, and appropriate transportation." Pls.' Mem. at 11. The very issues Plaintiffs must prove to prevail on the merits are: (1) whether the District indeed fails to provide them and similarly situated students with "safe, reliable, and appropriate transportation" as provided in their IEPs; and, if so, (2) whether any such failure (a) constitutes a denial of FAPE in violation of the IDEA or (b) discriminates against Plaintiffs in violation of the ADA, Rehabilitation Act, and DCHRA. *See* Def.'s PI Opp'n [31] at 13, 22. If they fail to prove these elements, a class previously certified under Plaintiffs' proposed definition would lose its entire membership. Such a class definition cannot meet the numerosity requirement. *See White*, 64 F.4th at 314; *cf. Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("Defining the class in terms of success on the merits is a problem because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." (internal quotation omitted)); *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974) (1966 amendments to Rule 23 "were designed, in part, specifically … to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments").

To be sure, "safe, reliable, and appropriate transportation" is not a standard imposed by the IDEA or any other source of law. But the District agrees that transportation that is materially unsafe, unreliable, and inappropriate would constitute a denial of a FAPE in violation of the IDEA. *See* Pls.' Mem. on Mot. for Prelim. Inj. [4-1] at 21 (only a "material failure to implement a student's IEP constitutes a denial of FAPE") (quoting *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 144 (D.D.C. 2018)). Therefore, Plaintiffs' class definition is either circular, because membership in the class would depend on a final resolution of the merits, or impermissibly vague, because it would include students whose transportation has not been

materially unsafe, unreliable, and inappropriate and thus are not entitled to relief under the IDEA.

Definitional problems aside, Plaintiffs have not offered proof of a class so numerous that joinder of all members would be impracticable. Plaintiffs contend that the putative class "numbers well over forty members," principally on the basis that "over 4,000 disabled students' IEPs require" transportation services. Pls'. Mem. at 13. Like Plaintiffs' class definition, that rationale for numerosity assumes the truth of Plaintiffs' allegations. That 4,000 students require transportation services is not evidence of anything other than the complexity of OSSE DOT's operations. Plaintiffs implicitly ask the Court to infer that, because Plaintiffs have had issues with their transportation to and from school, many more disabled students must have had the same problem. But they must provide evidence to prove that inference by a preponderance of the evidence. *Hoyte*, 325 F.R.D. at 491. They have not done so.

Rather than evidence, Plaintiffs' Motion offers "factors." Pls.' Mem. at 13. The first is that "[t]here is an unknown number of future class members" since "IEP determinations are made on an as-needed basis." *Id.* That "factor" does not support numerosity even under Plaintiffs' circular class definition, which is based not on whether a student's IEP includes transportation services, but on whether a student whose IEP includes transportation services "ha[s] experienced and will continue to experience" transportation difficulties. Pls.' Mem. at 11. Plaintiffs propose no method for identifying potential future class members, let alone for filtering out those whose transportation issues do not meet the materiality threshold. In any event, the possibility of future class members cannot support numerosity where, as here, the existence of numerous *current* class members has not been shown. *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 56 (D.D.C. 2021) ("non-numerical factors affecting the impracticability of joinder"

10

may support class certification "*if* plaintiff demonstrated a sufficiently numerous class")
(emphasis added).

Plaintiffs' second "factor" is that "[m]any members of the putative class lack the
financial resources to bring these claims individually." Pls'. Mem. at 13. That contention rests
entirely on statistics showing that minors, as a group, and individuals with disabilities, as a
separate group, each are "more likely to be in poverty" than the general population of the District
of Columbia. *Id.* While the District does not doubt those unfortunate statistics, they say nothing
at all about how many disabled students whose IEPs include transportation services have
experienced and will continue to experience transportation issues. Moreover, none of the five
declarations from non-plaintiff parents of disabled students submitted in support of Plaintiffs'
Motion for Preliminary Injunction states that a lack of financial resources has prevented the
parent from bringing her claims individually. *See generally* Decl. of Melinda Woods [4-30];
Decl. of Elizabeth C. Mitchell [4-33]; Decl. of Stephanie Maltz [4-35]; Decl. of Jamie Davis
Smith [4-38]; Decl. of Miryam Koumba [4-41]. At least one of those declarants *has* pursued her
claims individually. [4-38] ¶ 18. Plaintiffs cannot sustain their burden to prove numerosity by
speculating about the possibility of indigent class members. *See Wal-Mart*, 564 U.S. at 351 ("A
party seeking class certification . . . must be prepared to prove that there are *in fact* sufficiently
numerous parties") (emphasis in original)).

Ultimately, Plaintiffs' only evidence of numerosity is the five declarations of non-
plaintiff parents mentioned above. Yet, those declarations indicate that most, if not all, of the
declarants do not fall within Plaintiffs' proposed class. Three of the five declarants state that
their transportation services substantially improved before or during the current school year. [4-
30] ¶ 9 ("In the 2023-24 school year, K.J. has had more consistent transportation because OSSE

11

changed his service from a bus to a new route in an SUV."); [4-33] ¶ 17 ("many of J.M.'s issues with his old bus route have subsided since J.M. started at [a new school] in January 2024"); [4-35] ¶ 12 ("we finally got a consistent car and driver in September 2023"). The other two declarants suggest as much. [4-35] ¶ 5 (alleging late bus rate of ~20% for 2022-23 school year), ¶¶ 9–10 (alleging bus was late 6 mornings and 10 afternoons during 2023-24 school year, suggesting late bus rate of ~6.7%);[2] [4-41] ¶ 6 (identifying only one instance in which bus was late for morning pickup since August 2023).[3] As such, Plaintiffs fail to show that any of the five declarants "will continue to experience" transportation difficulties as required to be included in Plaintiffs' proposed class.

Even if Plaintiffs had made that showing as to *every* declarant, that would make 10 class members (including Plaintiffs), not 40. *See* Pls.' Mem. at 12 ("Numerosity of a class is generally satisfied 'when the proposed class has at least forty members.'") (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015)). Yet, Plaintiffs would fail to demonstrate numerosity even if they could identify 40 putative class members. The Supreme Court explained that the number 40 was "significant" where the "40 anecdotes [the plaintiffs proffered] represented roughly one account for every eight members of the class." *Wal-Mart*, 564 U.S. at 358 (discussing *Teamsters v. United States,* 431 U.S. 324, 338 (1977)). Here, 40

---

[2]     Based on Kennedy Krieger School-Fairmount's 2023-24 school calendar, available at https://tinyurl.com/3ecx6s52, there had been approximately 119 school days in the 2023-24 school year when the declaration was signed on March 6, 2024, *see* [4-35]. Assuming two bus trips each school day (morning and afternoon), the declarant's child rode the bus approximately 238 times during that period, providing the denominator for the calculation. Using the 16 total instances in which the bus was alleged to be late (morning and afternoon) as the numerator, [4-35] ¶¶ 9–10, yields an estimated late bus rate for the current school year of 6.7%.

[3]     Paragraph 5 of the Maltz Declaration refers to "the 2023–24 school year," but based on the surrounding paragraphs, the District understands paragraph 5 to be referring to the 2022–23 school year. *See* [4-35] ¶¶ 4–9.

putative class members would represent less than 1% of the more than 4,000 disabled students who receive transportation services from OSSE DOT. *See* Park Decl. ¶16. Plaintiffs and their declarants represent less than 0.25% of such students.

Accordingly, Plaintiffs fail to demonstrate the existence of numerous putative class members by a preponderance of the evidence, and their Motion should be denied.

**B.      Plaintiffs Cannot Establish Commonality Because They Have Not Identified Any Common Questions Pertinent to Any of Their Claims.**

Commonality requires that Plaintiffs show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the commonality requirement to be satisfied, class members' claims must depend on "a common contention … [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Rule 23 does not allow for … a 30,000 foot view of commonality." *White*, 64 F.4th at 314. Plaintiffs have failed to identify any common questions as to any of the claims in this case.

**1.      Plaintiffs Have Not Identified Any Common Question as to Their IDEA Claim.**

Commonality is a high hurdle in this case, and one that Plaintiffs cannot clear. "[H]olding that the District has violated the IDEA as to each class member is not enough to establish Rule 23(a) commonality." *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (*D.L. I*) (internal citation omitted). Rather, Plaintiffs must show—by "significant proof," *Wal-Mart*, 564 U.S. at 353—"a common harm suffered as a result of a policy or practice that affects each class member," *D.L. I*, 713 F.3d at 128 (reversing grant of class certification where plaintiffs "identified no single or uniform policy or practice that bridges all their [IDEA] claims"); *accord Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13, 29 (1st Cir. 2019) (In IDEA class actions, "plaintiffs can satisfy Rule 23(a)'s commonality

13

requirement by identifying a uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation.").  Because Plaintiffs' IDEA claims are based on many different harms untethered to any District policy or practice, they fail to satisfy Rule 23(a)'s commonality requirement.

The IDEA measures liability according to an individualized standard—a student's IEP. *Catalan ex rel. E.C. v. District of Columbia*, 478 F. Supp. 2d 73, 75 (D.D.C. 2007).  Rather than a common harm, Plaintiffs allege a smorgasbord of deviations from those individualized standards, ranging from late buses, *e.g.*, McCray Decl. ¶¶ 13, 21; Robertson Decl., [4-22] ¶¶ 16, 22, to excessive travel times, Guerrero Decl. ¶ 35, to missing safety harnesses and other equipment, Daggett Decl., [4-3] ¶ 25; Guerrero Decl. ¶ 13, to absent dedicated aides and nurses, Guerrero Decl. ¶ 38; Cannon-Clark Decl. ¶ 14, to inadequate training, Daggett Decl. ¶ 44; Guerrero Decl. ¶¶ 39–40.[4]  "[W]hat common 'true or false' question can be answered for each of these [ ] different claims of harm that would assist [this Court] in determining the District's liability as to each group?"  *D.L. I*, 713 F.3d at 127 (cleaned up).  After all, proof of a material deviation as to one type of transportation service (*e.g.*, on-time buses) does not establish (or even suggest) a material deviation as to another (*e.g.*, dedicated aides).

Even where the same type of transportation service is at issue, proof of a material deviation as to one student is not proof of a material deviation as to another student.  One bus route's material tardiness, for example, cannot be imputed to another bus route.  Put differently, "the bus arrives late"—while a "common contention" among Plaintiffs—cannot be proven or

---

[4]     Plaintiffs also allege a number of purported shortcomings that, even if proven, would not constitute IDEA violations.  Def.'s PI Opp'n [31] at 49-50 (addressing Plaintiffs' allegations concerning communications with parents and processing of complaints and reimbursement requests).

14

disproven "in one stroke" for all five Plaintiffs, let alone for the class as a whole.  *See D.L. I*, 713

F.3d at 127 (noting that other circuit courts "have hewed faithfully to *Wal-Mart* 's 'one stroke'

requirement.").  Ultimately, the only "common" question Plaintiffs can present is whether the

District has complied with each putative class member's transportation-related IEP provisions.

But that question "must be answered separately for each child based on individualized questions

of fact and law, and the answers are unique to each child's particular situation."[5]  *Jamie S. v.*

*Milwaukee Public Sch.*, 668 F.3d 481, 498 (7th Cir. 2012); *see also Branham v. Gov't of the*

*District of Columbia*, 427 F.3d 7, 11 (D.C. Cir. 2005) ("[D]etermining what constitutes a FAPE

will always require a fact-intensive and child-specific inquiry.").

      Plaintiffs also fail to tie their differing harms to a "single or uniform policy or practice,"

as required by *D.L. I*.  713 F.3d at 128.  Plaintiffs argue that their harms stem "from the same

deficient and poorly implemented policy" and make repeated references to unspecified "policies

and practices," Pls.' Mem. at 17, but nowhere in their Motion, Complaint, or Motion for

Preliminary Injunction do they identify a particular policy or practice that is allegedly causing

their alleged transportation issues.  Merely showing that all of OSSE DOT's past and current

policies and practices have led to inconsistent results does not suffice to prove commonality.  *See*

*Wal-Mart*, 564 U.S. at 357.

      Nor does showing common inadequate results.  In *Parent/Pro. Advoc. League*, for

example, the plaintiffs sought to answer the common question of whether the defendant city

---

[5]     Contrary to Plaintiffs' contention, their claims are not "susceptible to common proof."
Pls.' Mem. at 18.  Plaintiffs' list of supposedly "common" proof is nothing more than a list of
categories of materials that might bear on whether one student or another was denied a FAPE.
Tellingly, it includes "copies of students' IEPs," which would specify the transportation services
they require.  *Id.* at 19.  There is no reason to think that a review of the categories of materials in
Plaintiffs' list would prove or disprove the same IDEA violation for all students in one stroke.

"discriminates against the class … by failing to provide [a particular service] in neighborhood schools instead of placing them in inferior Public Day School . . . ." 934 F.3d at 29. In support of their contention that a common policy or practice existed, the plaintiffs offered the report of an expert who had reviewed numerous individual cases. *Id*. at 30. The expert concluded that the city had made "common (incorrect) assumptions about the class members and offered them a common set of (insufficient) services," that all of the children whose cases he reviewed "could successfully attend" local schools with appropriate support, and that "the quality of education in the Public Day School—for every child there—was markedly inferior to the quality of education the children" would have received in neighborhood schools. *Id*. The First Circuit held this did not show commonality because the "report claim[ed] to find a pattern of legal harm common to the class without identifying a particular driver—'a uniform policy or practice that affects all class members'—of that alleged harm." *Id*. (quoting *D.L. I*. 713 F.3d at 128). There, as here, "[a]bsent such a common driver, answering the plaintiffs' suggested question … require[d] individualized determinations which defeat commonality." *Id*. at 31.

Nor could the District's transportation of disabled students, writ large, constitute a "common driver." That much is clear from *D.L. I*. There, the district court certified a class of plaintiffs alleging that the District had failed to comply with each distinct step of the four-step Child Find process required by the IDEA. 713 F.3d at 122. The D.C. Circuit reversed. *Id*. at 126. Because the plaintiffs' alleged harms involved "different policies and practices at different stages of the District's Child Find and FAPE process," *id.* at 127, "the district court did not find there was any particular policy or practice that linked all claims but only that there were systemic deficiencies," *id.* at 129. The Circuit concluded that "defining the class by reference to the District's pattern and practice of failing to provide FAPEs speaks to broadly because it

constitutes only an allegation that the class members 'have all suffered a violation of the same provision of law,' which . . . is insufficient to establish commonality given that the same provision of law 'can be violated in many different ways,'" *id.* at 126 (quoting *Wal-Mart*, 564 U.S. at 350).

Like the plaintiffs in *D.L. I*, *id.* at 124, Plaintiffs argue that the common question presented by their class claims is whether class members received a FAPE, Pls.' Mem. at 17. Like the plaintiffs in *D.L. I*, 713 F.3d at 1129, Plaintiffs attribute their variable harms to unspecified "systemic deficiencies." Pls.' Mem. at 31. And like the plaintiffs in *D.L. I*, Plaintiffs fail to identify "a single or uniform policy or practice that bridges all their claims." 713 F.3d at 127. Because Plaintiffs' claims are "based on multiple, disparate failures to comply" with varying IEP provisions "rather than a truly systemic policy or practice," *id.* at 128, *D.L. I* forecloses a finding of commonality here.[6] *See also Jamie S.*, 668 F.3d at 498 ("There is no such thing as a 'systemic' failure to find and refer individual disabled children for IEP evaluation— except perhaps if there was 'significant proof' that [the school district] operated under child-find *policies* that violated the IDEA.").

Even if "systemic" transportation-related deficiencies, unrelated to any policy or practice, could support a finding of commonality (and they cannot), Plaintiffs still would fail to satisfy this factor because they have not proven that systemic deficiencies exist and are causing their alleged

---

[6]     In a second decision in *D.L. v. District of Columbia*, the D.C. Circuit found commonality within the four subclasses certified by the district court because they were "tied to separate phases of the Child Find process" and therefore were "each defined by reference to a 'uniform policy or practice'" and "cast around 'common harms.'" 860 F.3d 713, 724 (D.C. Cir. 2017) (*D.L. II*) (quoting *D.L. I*). Here, Plaintiffs seek certification of a single class defined without reference to a uniform policy or practice and cast around numerous different harms. This case therefore "concern[s] a much broader class, more like the original class [the Circuit] rejected [in *D.L. I*] than the subclasses now at issue." *Id.* at 725.

injuries.  This is the lesson of *Wal-Mart*.  564 U.S. at 352.  There, the plaintiffs alleged that Wal-Mart engaged in a pattern or practice of discrimination against female employees in pay and promotion decisions.  *Id.* at 344–45.  The Supreme Court explained that "proof of commonality necessarily overlaps with [the plaintiffs'] merits contention that Wal-Mart engages in a *pattern or practice* of discrimination."  *Id.* at 352 (emphasis in original).  Because the employment decisions the plaintiffs challenged were made by thousands of local managers exercising their own discretion, a class action would produce a common answer to the plaintiffs' claims only if the plaintiffs provided "significant proof" that Wal-Mart "operated under a general policy of discrimination."  *Id.* at 355.  Finding such proof "entirely absent," the Court held that the plaintiffs failed to show commonality.  *Id.*

For the reasons stated in the District's Opposition to Plaintiffs' Motion for Preliminary Injunction, [31] at 21–39, Plaintiffs have not offered significant proof of any of their claims, let alone of their systemic claims, *id.* at 45–51.  In short, Plaintiffs have alleged various isolated incidents in which they were not provided with required supports or which might suggest other purported deficiencies but do not amount to a material violations of the IDEA.  *Id.* at 49.  Other alleged harms, such as deficient communications or complaint processing, would not violate the IDEA even if proven.  *Id.* at 49–50.  And, even if Plaintiffs' claims were narrowed to those concerning late morning pick-ups or afternoon drop-offs, Plaintiffs fail to connect the delays to any policy or practice of OSSE DOT.  *Id.* at 50–51.

### 2.    Plaintiffs Have Not Identified Any Common Question as to Their ADA, Rehabilitation Act, or DCHRA Claims.

Plaintiffs' proffered "common questions" as to their ADA, Rehabilitation Act, and DCHRA claims (discrimination claims) only demonstrate the absence of commonality.  Plaintiffs fashion true or false questions that merely ask whether each legal conclusion underlying each of

their discrimination theories has been met. Pls.' Mem. at 17–18. None of those questions incorporate or reflect the facts of this case in any way. *Id.* Because Plaintiffs' purportedly common questions ask only whether Plaintiffs "have all suffered a violation of the same provision of law" rather than "the same injury," *Wal-Mart*, 564 U.S. at 350, Plaintiffs have not proven commonality as to their discrimination claims.

*Lane v. Kitzhaber*, a disability discrimination case from the District of Oregon that Plaintiffs highlight, fails to persuade given its reliance on the district court's erroneous initial class certification order in *D.L.* 283 F.R.D. 587, 597 (D. Or. 2012). *Lane* explicitly relies on the district court's findings—rejected by the D.C. Circuit in *D.L. I*, 713 F.3d at 124–26—that the denial of a FAPE constituted a common harm and that "systemic failures," without an identifiable and uniform policy or practice, supplied the "glue" binding together claims involving different tangible harms, *Lane*, 283 F.R.D. at 597. *Lane* is not mandatory authority, and even if it were, it would not be good law in this circuit.[7]

Other cases cited by Plaintiffs are readily distinguished. *See* Pls.' Mem. at 16–20. In *Thorpe v. District of Columbia*, the court found commonality because the plaintiffs alleged that their rights under the ADA and Rehabilitation Act were being violated in the same way—by the denial of a "discrete set" of "transition services" from nursing facilities to community-based

---

[7]     Pre-*Wal-Mart* cases cited by Plaintiffs do not reflect current law, as Plaintiffs' own parentheticals illustrate. Pls.' Mem. at 15 (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3rd Cir. 1994) ("[i]njunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2)'"); *Ass'n for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 463 (S.D. Fla. 2002) ("Plaintiffs' allegations of common discriminatory practices of ADA noncompliance, as a matter of law, satisfy the requirement that the representative plaintiffs share at least one question of fact or law with the grievances of the putative class.") (citations omitted)). Other cases Plaintiffs cite are distinguishable, among other reasons, because they do not involve IDEA or disability discrimination claims. *See Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014); *Coleman*, 306 F.R.D. at 82.

care.[8]  303 F.R.D. 120, 146, 152 (D.D.C. 2014).  In fact, the *Thorpe* court rejected a proposed common question, similar to those proposed here, that was really "nothing more than an allegation that class members have all suffered a violation of the same provision of law," *id*. at 147 n.59, namely, "[w]hether Defendant segregates Plaintiffs in nursing facilities in order to receive long-term care services, rather than providing those services in more integrated, community-based settings," *id*. (quoting pleading).  Here, Plaintiffs suggest litigation to resolve the questions of whether "Defendant's policies and practices are failing to ensure that students with disabilities receive safe, reliable, and appropriate transportation," or "denying students with disabilities transportation they are entitled to under their IEPs," or "denying students with disabilities FAPE in violation of the IDEA," or denying class members a variety of "opportunities."  Pls.' Mem. at 17–18.  These are nothing more than questions as to the existence of a class of persons who have suffered the same violation of law.

A readily identifiable common question of fact or law distinguishes several other cases Plaintiffs cite.  *See J.N. v. Oregon Dep't of Educ*., No. 6:19-cv-00096-AA, 2021 WL 408093 (D. Or. Feb. 5, 2021) (common question of whether defendants failed to prevent misuse of shortened school days and whether such failure constituted disability discrimination); *J.R. v. Oxnard Sch. Dist.*, LA CV17-04304 JAK, 2019 WL 4438243 (C.D. Cal. July 30, 2019) (common question of whether school district's failure to provide instruction to incarcerated students violated discrimination statutes); *Chester Upland Sch. Dist. v. Pennsylvania*, No. 12-132, 2012 WL 1473969, at *3–4 (E.D. Pa. Apr. 25, 2012) (common questions of whether school closures or

---

[8]     Like *Thorpe*, *Kenneth R. v. Hassan* dealt with the denial of "a discrete set of community-based services."  293 F.R.D. 254, 268 (D.N.H. 2013).  By contrast, Plaintiffs here allege that the denial of numerous different transportation-*related* services violates the ADA, Rehabilitation Act, and DCHRA in multiple ways, giving rise to varied questions of law and fact.

reduction of funding would result in denial of FAPE under IDEA or services required by
Rehabilitation Act); *Steward v. Janek*, 315 F.R.D. 472, 481 (W.D. Tex. 2016) (identifying
"several common questions of law" requiring construction of specific statutory and regulatory
provision).

In sum, Plaintiffs fail to allege common harms susceptible of common proof.  They fail to
tie their disparate harms to a uniform policy or practice.  They fail to prove that systemic
deficiencies exist and that such deficiencies are causing their disparate harms.  Ultimately,
resolution of this case will require numerous fact-intensive, individualized inquiries in light of
the differing types of disabilities and differing needs for transportation services for each class
member.  Plaintiffs have not carried their burden to prove commonality by a preponderance of
the evidence.

**C.      Plaintiffs Cannot Establish Typicality Because They Have Already Received
        Relief for Their Alleged Injuries.**

Additionally, Plaintiffs cannot establish typicality as required under Rule 23(a)(3).  The
central purpose of the typicality requirement is to ensure that class members and the named
plaintiffs have claims "sufficiently similar so that the representatives' acts are also acts on behalf
of, and safeguard the interests of, the class."  *Littlewolf v. Hodel*, 681 F. Supp. 929, 935 (D.D.C.
1988), *aff'd sub nom.*, *Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989); *see also Stewart v.
Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) ("The typicality inquiry centers on whether the
interest of the named plaintiffs align with the interests of the absent members.").  Typicality is
not met unless each named plaintiff can point to the "same course of events" and "make[] similar
legal arguments to prove the defendant's liability."  *Alvarez v. Keystone Plus Construction
Corp.*, 303 F.R.D. 152, 161 (D.D.C. 2014) (citation and internal quotation marks omitted); *see,
e.g.*, *Arias v. Marriott Int'l, Inc.*, 324 F.R.D. 307, 312 (D.D.C. 2018) (typicality not met in

21

putative class action alleging unlawful working conditions where circumstances of named plaintiff's claims "concern[ed] [the p]laintiff alone and involve details specific to her" employment and termination).

If Plaintiffs' class definition is adopted, the class will consist of disabled students who "have experienced and will continue to experience" unsatisfactory transportation services. Pls.' Mem. at 11. Anyone who is not experiencing or will not continue to experience unsatisfactory transportation services would thus fall outside of that definition. Plaintiffs' proffered evidence makes clear that all five of them are atypical of the putative class. *See White*, 64 F.4th at 314 ("Typicality … should be a hard hill to climb if the named plaintiffs might not be members of the class come final judgment.").

All five Plaintiffs fail to meet the definition of the putative class because they cannot show that they "will continue to experience" unsatisfactory transportation services. Each Plaintiff has already received a hearing officer determination that awarded them relief for their transportation-related harms. Each Plaintiff was awarded compensatory education, making their claims at the very least atypical of putative class members' compensatory education claims. *See* Section VI *infra*. In addition, three Plaintiffs were awarded prospective relief in the form of an order that "OSSE shall provide consistent, reliable and appropriate transportation to and from Public School pursuant to [each] Student's IEP and, to the extent practicable, notify Student's family of any changes to Student's transportation, including changes to route, delays and cancellations." Robertson HOD at 11; Daggett HOD at 13; Cannon-Clark HOD at 12–13. That order matches the relief requested in each Plaintiffs' Due Process Complaint nearly verbatim, *see* Def.'s PI Opp'n [31] at 24, and is substantively indistinguishable from the relief Plaintiffs request in this action, *see* Compl. ¶ 263 (requesting "injunction ordering Defendant to provide

Plaintiffs and the plaintiff class with safe, reliable, and appropriate transportation services and fully implement all students' IEP-mandated transportation services.").  In light of the prospective relief already awarded them, Plaintiffs D.R., H.D., and B.R.C. have not shown that they will "continue to experience" transportation issues and therefore fall outside of their own proposed definition of the class.[9]

Plaintiffs J.C. and A.F. are also atypical of the putative class.  Although they did not receive the verbatim-relief-requested that Plaintiffs D.R., H.D., and B.R.C. received, Plaintiffs J.C. and A.F. still received favorable HODs that awarded them compensatory relief.  Nor have they offered anything other than conclusory allegations that their transportation-related harms persist.  *E.g.*, Compl. ¶¶ 123, 141 ("OSSE continues to fail to provide reliable and appropriate transportation to" J.C. and A.F.).[10]  Indeed, Plaintiff J.C.'s HOD found that OSSE DOT had adequately implemented J.C.'s IEP with respect to his morning bus route for the current school year.  McCray HOD at 15.  Because claims that have already been adjudicated and remedied are atypical of the putative class, Plaintiffs fail to establish typicality.

Put another way, Plaintiffs are atypical because they have exhausted their administrative remedies and putative class members (presumably) have not.  The IDEA requires that a parent or government exhaust administrative procedures before bringing suit directly under the IDEA, *see* 20 U.S.C. § 1415(i)(2), or before filing suit under other federal laws "seeking relief that is also available under" the IDEA, *id*. § 1415(l).  *See also* Def.'s PI Opp'n [31] at 23.  Four of the five

---

[9]    Plaintiffs D.R. and H.D. offer only conclusory allegations that they "remain[ ] at risk of FAPE deprivation" to argue for their inclusion in the putative class.  Compl. ¶¶ 81, 101.  Plaintiff B.R.C. received his HOD after the Complaint was filed.  *See* Pls.' Notice [24].

[10]    Plaintiff A.F. is also atypical because his claims include allegations that his IEP provision limiting his time on the bus to one hour has not been complied with.  Compl. ¶ 131.  That IEP provision is not shared with any other Plaintiff, let alone with every member of the putative class.

non-plaintiff declarations submitted in support of Plaintiffs' Motion for Preliminary Injunction do not allege that they have sought relief through an administrative due process hearing. *See generally* [4-30]; [4-33]; [4-35]; [4-41]. Given the variations among Plaintiffs' and putative class members' claims discussed in Argument Section I.C. above, the Court should require that putative class members' claims be exhausted as required by the IDEA. *See Parent/Pro. Advoc. League*, 934 F.3d at 32 (requiring "that only the class representative need exhaust . . . would render the exhaustion requirement nearly meaningless"). Among other things, exhaustion would "ensure[] that there will be a complete factual record for the court to review." *K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 41 (D.D.C. 2019) (quoting *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989)).

### D.  Plaintiffs Cannot Adequately Serve as Class Representatives Because They Have No Incentive To Seek Additional Services They Do Not Need.

For similar reasons, Plaintiffs cannot establish the fourth and final requirement under Rule 23(a), adequacy, for which they must show that they are able to "'fairly and adequately protect the interests of the class.'" *D.L.*, 860 F.3d at 726 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). This requires that they: (1) "must not have antagonistic or conflicting interests with the unnamed members of the class," and (2) "must appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019). Though not dispositive, the moot claims of named plaintiffs "can raise 'adequacy concerns.'" *Id.* (quoting *D. L.*, 860 F.3d at 726).

As described above, Plaintiffs have all received relief in accordance with their identified transportation-related needs. Argument Section I.C. *supra*. Plaintiffs now seek an injunction on behalf of a class that would require the District to provide additional transportation-related

services based on other students' needs.  Plaintiffs have no incentive to seek such services when they themselves do not need them.

**V.     Certification Is Improper Under Rule 23(b)(2) Because Plaintiffs Have Not Established That Injunctive Relief Can Address Their Alleged Injuries.**

Rule 23(b)(2) requires that a plaintiff seeking class-wide injunctive relief show that the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This requires two separate showings.  First, the plaintiff must show that the class is "sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule [of] Civil Procedure 65(d)—namely, the requirement that [the injunction] 'state its terms specifically; and describe in reasonable detail … the act or acts restrained or required.'"  *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (Gorsuch, J.) (quoting Fed. R. Civ. P. 65(d)(1)); *see also Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (injunctive relief sought under Rule 23(b)(2) "must be specific").  Second, the plaintiff must show that "relief specifically tailored to each class member would [not] be necessary to correct the allegedly wrongful conduct of the defendant."  *Shook*, 543 F.3d at 604 (quoting 5 Moore's Fed. Practice § 23.43(2)(b) at 23–195 (3d 2000)).  That is because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart*, 564 U.S. at 360.  Plaintiffs here have failed to make both showings.

**A.     Plaintiffs' Requested Injunction Is Fatally Vague.**

First, Plaintiffs' requested relief fails to meet the requirements of Rule 65(d), which provides that any injunction issued by a court must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or

other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). As the Supreme Court has emphasized, "the specificity provisions of Rule 65(d) are no mere technical requirements," but rather are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74–76 (1967)). The rule both promotes "basic fairness" by requiring "explicit notice of precisely what conduct is outlawed," and facilitates judicial review by ensuring an appellate court will "know precisely what it is reviewing." *Id.* at 476–77. For instance, "injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65." *Shook*, 543 F.3d at 604 (quoting *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004)); *accord S.E.C. v. Wash. Inv. Network*, 475 F.3d 392, 407 (D.C. Cir. 2007) (rejecting injunction against "future violations of" specified statutory provisions as "insufficiently specific").

In attempting to reach all aspects of the District's transportation of disabled students at once, Plaintiffs have advanced numerous disparate claims relating to different transportation-related services, leaving them with only the "common" question of whether the District has materially deviated from the transportation-related provisions in each putative class member's IEP. *See* Argument Section I.B *supra*. That question's high level of generality could only yield a similarly general—and impermissibly vague—injunction ordering the District to comply with the IDEA. Unsurprisingly, that is precisely the injunction Plaintiffs' Motion describes. Pls.' Mem. at 30 ("Plaintiffs are also seeking an injunction ordering Defendant to comply with the requirements of [the IDEA, ADA, Rehabilitation Act, and DCHRA]."). Indeed, Plaintiffs insist they are seeking "*broad* injunctive and declaratory relief. . . ." *Id.* at 31 (emphasis added). And

they are not wrong.  The proposed order submitted with Plaintiffs' Motion for Preliminary Injunction would require the District to "[f]ully implement" not only the transportation-related provisions of class members' IEPs, but *every* provision of their IEPs.  Prop. Order [4-2] at 2. Such an injunction is too vague to provide clear guidance to District officials faced with the threat of sanctions for contempt and thus runs headlong into Rule 65's most basic requirements. *See Wash. Inv. Network*, 475 F.3d at 407; *Andrews v. Plains All Am. Pipeline, L.P.*, Civil Action No. 15-4113, 2017 WL 10543402, at * 3 (C.D. Cal. Feb. 28, 2017) (denying class certification under Rule 23(b)(2) where proposed injunction requiring defendant oil pipeline companies "to abide by existing pipeline safety regulations" was "superfluous and vague" in violation of Rule 65); *Atwell v. Gabow*, 248 F.R.D. 588, 596 (D. Colo. 2008) (denying class certification where proposed injunction prohibited defendants "from 'violating' federal antidiscrimination laws and from engaging in 'unlawful' or discriminatory practices").

### B.    An Injunction Would Require Individually Tailored Relief.

Plaintiffs also fail to show that a class-wide injunction would remedy their alleged disparate injuries without "relief specifically tailored to each class member."  *Shook*, 543 F.3d at 604.  Plaintiffs have made their theory of injury clear:  they believe they have not been receiving "transportation services in conformity with [their] IEPs."  Pls.' Mem. at 8.  No injunction, therefore, could remedy their injuries without accounting for each student's individual needs.[11]

---

[11]    An injunction prescribing a uniform process for assessing students' transportation-related issues does not offer an escape hatch.  Certification under Rule 23(b)(2) requires that "[t]he injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'"  *Jamie S.*, 668 F.3d at 499 (quoting Fed. R. Civ. P. 23(b)(2)); *see also Soseeah v. Sentry Ins.*, 808 F.3d 800, 811 n.5 (10th Cir. 2015); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020).  "[I]t is not enough for class plaintiffs to 'superficially structure[] their case around a claim for class-wide injunctive and declaratory relief … if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are

*See Branham*, 427 F.3d at 11 (IDEA relief "must be tailored to meet the child's specific needs"); *id.* at 12 (explaining the IDEA requires tailored relief because the Act "guarantees disabled students 'special education and related services *designed to meet their unique needs*'") (quoting 20 U.S.C. § 1400(d)(1)(A) (emphasis added in *Branham*)).

The specific operational commands in Plaintiffs' proposed order, Prop. Order at 2–3, betray the individualized nature of the relief Plaintiffs seek. The proposed command concerning "one-to-one aides" and "nurses," Prop. Order at 2, might benefit Plaintiffs A.F. and B.R.C., Guerrero Decl. ¶ 38; Cannon-Clark Decl. ¶ 14, but it would do nothing for Plaintiffs D.R., H.D., and J.C., who do not require an aide or nurse on the bus.[12] The proposed command concerning air conditioning might benefit Plaintiffs A.F. and H.D., *supra*, but it would not affect the three Plaintiffs who take no issue with the air conditioning on their buses. The proposed command concerning "specialized transportation safety equipment," Prop. Order at 2, might benefit Plaintiffs A.F. and H.D., Guerrero Decl. ¶¶ 13, 16; Daggett Decl. ¶ 44, but it would not benefit the three Plaintiffs who do not require such equipment. Because Plaintiffs' proposed order demonstrates that, at best, "each individual class member would be entitled to a *different* injunction," *Wal-Mart*, 564 U.S. at 360, certification under Rule 26(b)(2) is improper.

Plaintiffs argue that although the District "may have to perform an individualized inquiry to determine how best to individually accommodate class members . . . this [C]ourt need not do the same . . . ." Pls.' Mem. at 31. But the specific operational commands Plaintiffs propose could not be included in any injunction unless the Court found they were necessary to remedy an

---

made; this kind of relief would be class-wide in name only, and it would certainly not be final.'" *In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (quoting *Jamie S.*, 668 F.3d at 498–99).

[12]    Only one of the five (original) non-plaintiff declarants appears to require a dedicated aide or nurse while on the bus, and that declarant does not allege any deficiency with respect to the aide provided. [4-41] at ¶ 5.

IDEA violation.  *See Califano*, 442 U.S. at 702 ("the scope of injunctive relief is dictated by the extent of the violation established").  Most of those commands have nothing to do with the IDEA violations found by the hearing officers below.[13]  Plaintiffs' proposed injunction thus asks the Court to find IDEA violations, which requires finding that students were denied a FAPE as a result of a material deviation from the relevant provision(s) of the students' IEPs.  *Catalan ex rel. E.C.*, 478 F. Supp. 2d at 75.  That is an individualized inquiry.

Plaintiffs' citation to *Davis v. Astrue* is instructive.  Pls.' Mem. at 31-32 (citing 250 F.R.D. 476 (N.D. Cal. 2008)).  *Davis* involved a facial challenge to Social Security Administration policies and procedures governing how the agency made a certain type of benefits eligibility determination.  *Id.* at 487.  The plaintiff was "not asserting that the individual application of the policies is in violation."  *Id.* at 487.  Plaintiffs are asserting just that in this action (albeit with respect to some unspecified policy).

"[T]he relief sought [under Rule 23(b)(2)] must perforce affect the entire class at once . . . ."  *Wal-Mart*, 564 U.S. at 360.  Because Plaintiffs' specific operational commands would not affect the entire class at once, and because any injunction attempting to affect the putative class at once would be impermissibly vague under Rule 65, Plaintiffs fail to satisfy the requirements of Rule 23(b)(2).

## VI.  <u>Plaintiffs' Claims for Compensatory Education Do Not Satisfy Rule 23(b)(3).</u>

Plaintiffs seek hybrid certification under Rule 23(b)(3) to receive compensatory education on a class-wide basis.  Pls.' Mem. at 32.  Class certification under Rule 23(b)(3) is

---

[13]    One of the five Plaintiffs' HODs found that the District denied him a FAPE "in failing to provide [him] a dedicated aide . . . ."  Guerrero HOD at 11.  The other four HODs found IDEA violations only with respect to late buses.  *See generally* Robertson HOD; Daggett HOD; McCray HOD; Cannon-Clark HOD.

proper only if a court finds both "that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Although not exhaustive, the rule sets out the following four "matters pertinent to these findings": "(A) the class members' interests in individually controlling the prosecution or defense of separate actions"; "(B) the extent and nature of any litigation concerning the controversy already begun by or against class members"; "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "(D) the likely difficulties in managing a class action." *Id.* Plaintiffs have failed to make the required showing either that common issues predominate or that a class action is the superior method of adjudication.

### A.  Common Issues Do Not Predominate.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," which requires "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). Predominance requires Plaintiffs to "show that they can prove, through common evidence, that all members were in fact injured by" the policy in question. *In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013). That is, Plaintiffs must "establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Johnson v. District of Columbia*, 248 F.R.D. 46, 56 (D.D.C. 2008) (citation omitted).

"[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002) (citation omitted). Predominance, however, is "more stringent," and "far more demanding," than the commonality requirement of Rule 23(a). *Amchem Products*, 521 U.S. at 609, 624. Where there is a need for individualized determinations as to liability, plaintiffs generally cannot meet the predominance requirement. *See Daskalea v. Wash. Humane Soc.*, 275 F.R.D. 346, 369 (D.D.C. 2011) (denying class certification under Rule 23(b)(3) in finding that "liability determinations will necessarily be individualized").

Plaintiffs argue that they have satisfied the predominance test by challenging a "generalized practice," or, that "all members of the putative class are subject to Defendant's failure to comply with, and to establish policies and practices implementing, the requirements of the IDEA, ADA, Section 504, and the DCHRA ...." Pls.' Mem. at 33 (citing *Coleman*, 306 F.R.D. at 87). Plaintiffs' reliance on *Coleman* is inapt. *Id.* The generalized practice identified in *Coleman* involved a District of Columbia statute "governing the procedure for collecting delinquent property taxes." *Coleman*, 306 F.R.D. at 72. The court certified the class, in part, because the "admitted practice [is] codified in the D.C. Code ... [and] [t]his legal provision affected all class members in the same way." *Id.* at 85. Here, Plaintiffs repeatedly point to an alleged policy or generalized practice, but as noted above, do not identify, let alone provide evidence of, a specific policy or practice.

Moreover, even if Plaintiffs could show that all class members were subject to the same unidentified policy or practice, that would not suffice to show liability. To make out a denial of FAPE, Plaintiffs must show that any failures—late drop-offs, missing devices or aides, days

without air conditioning—amounted to *material* failures.  As discussed in Plaintiffs' own Motion

for Preliminary Injunction, proof of materiality requires consideration of "the proportion of

services mandated to those actually provided, and the goal and import (as articulated in the IEP)

of the specific service that was withheld."  Pls.' Mem. Supp. Mot. for Preliminary Inj. at 31

(quoting *Wilson v. District of Columbia*, 770 F. Supp. 270, 275 (D.D.C. 2011)).  That, in turn,

requires consideration *in every instance* of how many services have been "actually provided," for

example, how many times a bus was late, and by how much.  *See id.*; McCray HOD at 15

(finding no denial of FAPE for portion of School Year 2023–24 considered, despite six late drop-

offs during period).  Thus, Plaintiffs' proposed class questions do not predominate.  *E.g.*,

*Daskelea*, 275 F.R.D. at 369.

      Indeed, the only "common" question Plaintiffs plausibly present in seeking compensatory

education is whether the District has complied with each putative class member's transportation-

related IEP provisions—a question that "must be answered separately for each child based on

individualized questions of fact and law, and the answers are unique to each child's particular

situation." *Jamie S.,* 668 F.3d at 498.  Plaintiffs effectively ask the Court to conduct

innumerable inquiries predicated upon each class member's IEP and to make a determination

how much compensatory education each class member might be entitled to.  This is a

fundamentally individualized inquiry not suited to class certification.  *See Branham*, 427 F.3d at

11 (noting that in fashioning compensatory education the hearing officer must conduct a

"qualitative, fact-intensive analysis" of each individual student's circumstances); *M.A. ex rel E.S.

v. Newark Pub. Schs.*, No. 01-3389 (SRC), 2009 WL 4799291, at *17 (D.N.J. Dec. 7, 2009)

(refusing to certify compensatory education claims under (b)(3) and finding that "whether an

award of compensatory education would be warranted and fashioning an appropriate award

would entail individualized inquiries. These issues could not be adjudicated en masse, as neither factual nor legal questions concerning the class members' entitlement to compensatory education would predominate over the individual questions presented.").

Again, the experiences of the five named Plaintiffs show this to be true. Four out of five awards were based on expert testimony—including one instance that was disputed—and the Plaintiffs got differing forms of relief in terms of type and quantity. *See* Factual Background II. Three got tutoring, but from a variety of providers and in different quantities; one got two different forms of therapy; and one got compensation to attend summer camp. *Id*. These are hardly cookie-cutter remedies, suitable to replication at scale. Indeed, it appears that *nothing* about this remedial determination would be common or formulaic.

Because Plaintiffs have failed to meet their burden to show by "substantial proof" that common issues would predominate, the Court should deny certification of their class seeking compensatory education. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Hoyte*, 325 F.R.D. at 492.

**B.** **A Class Action Is Not Superior Because Prospective Class Members Have an Administrative Route to Seek Compensatory Education.**

The purpose of the superiority requirement is to ensure that resolution by class action will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Amchem*, 521 U.S. at 615 (quotation omitted). In assessing superiority, beyond the four factors enumerated by Rule 23(b)(3) itself, "a court may also consider such factors as the availability of alternative remedies that would be superior to a class action, including relief through administrative proceedings." *Ostrof v. State Farm Mut. Auto Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001); *Premier Health Ctr., P.C. v. United Health Group.*,

292 F.R.D. 204, 229 (D.N.J. 2013) (superiority not satisfied by putative class of healthcare providers erroneously charged for overpayments to insurers, reasoning that "the injunctive relief sought in [the] form of reinstatement of benefits can only be granted on an individual basis by assessing the merits of each and every overpayment determination").

The relief Plaintiffs seek from their (b)(3) class is compensatory education.  But class members can, and have, successfully obtained this relief through administrative due process hearings—just as the named Plaintiffs have.  *See generally* Robertson HOD; Daggett HOD; McCray HOD; Guerrero HOD; Cannon-Clark HOD; Def.'s PI Opp'n [31] at 18.  Plaintiff's Motion acknowledges this possibility in an argument heading, Pls.' Mem. at 33, but otherwise ignores it when considering Rule 23(b)(3)'s factors.  Instead, they posit a series of red-herrings about "repetitious litigation" and "possibly inconsistent adjudications," but these wrongly assume that the alternative to class litigation is individual civil suits, *id.* at 33–34.  That is unsupported and implausible, given the existence of the IDEA Due Process Hearing mechanism, *see* Def.'s PI Opp'n at 21–22, and its relative ease, speed, and low cost (including fee-shifting provisions, 20 U.S.C. § 1415(i)(3)(B)) as compared to civil litigation.

Plaintiffs briefly consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" by noting they are not aware of any other similar lawsuits, but they fail to acknowledge the certainty that some unknown number of putative class members have already filed, and completed, claims through Due Process Hearings.  *E.g.*, Decl. of Melinda Smith, [4-38] ¶¶ 19–22 (describing four Due Process complaints filed between September 2022 and May 2023, including settlement with OSSE of most recent complaint).

34

Similarly, with respect to the "desirability" of "concentrating" the litigation in "a particular forum," Plaintiffs suggest it is good for all of the cases to be adjudicated within the District, Pls.' Mem. at 43–35, but of course Due Process Hearings for putative class members would *also* be within the District—and they would come complete with independent decisionmakers deeply experienced in *exactly* this kind of litigation.

Indeed, the text of the IDEA very strongly indicates that the administrative forum is more desirable for adjudication of IDEA claims. *See* 20 U.S.C. § 1415(l) ("[B]efore the filing of a civil action under such laws [other than IDEA] seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."); *id*. (i)(2) (creating cause of action for parties "aggrieved" by a hearing officer's decision). As do numerous circuit court decisions, even when faced with claims that IDEA violations are "systemic." *E.g.*, *Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 242 (6th Cir. 2021) ("Section 1415(l) does not come with a 'futility' exception, and the Supreme Court has instructed us not to create exceptions to statutory exhaustion requirements."); *Parent/Pro. Advoc. League*, 934 F.3d at 32–33 (declining to permit certification of IDEA class for alleged "systemic" violations in which only one member exhausted, without reaching if every putative member might need to exhaust); *Kutasi v. Las Virgenes Unified School Dist.*, 494 F.3d 1162, 1166 (9th Cir. 2007) ("[I]f the injury could be redressed 'to any degree' by the IDEA's administrative procedures—or if the IDEA's ability to remedy an injury is unclear—then exhaustion is required."); *Doe v. Arizona Dep't of Ed.*, 111 F.3d 678, 682 (9th Cir. 1997) (finding exhaustion required for purportedly "systemic" claim because the state's "admitted blunder might be corrected through IDEA hearings"); *McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 875 (10th Cir. 2007) ("The

35

overriding consideration is whether it is clear at the outset that the administrative procedure under the IDEA could not provide Joshua with the FAPE to which he is entitled. Only then could we say that pursuing administrative remedies would be futile or lead to inadequate relief."); *Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir. 1989) (citing *Cox v. Jenkins*, 878 F.2d 414, 415, 420–22 (D.C. Cir. 1989) for proposition that exhaustion is required and an exception for futility is available only where an adverse decision is virtually certain"). There is no suggestion that resorting to the administrative forum would be futile. *See generally* Pls.' Mem. at 32–37.

Finally, Plaintiffs argue there is "no reason to believe that 'difficulties . . . in the management of the class present a barrier to certification," *id*. at 35 (quoting Rule 23), because this litigation will be more manageable than "thousands of separate lawsuits by the class members," *id*. (internal quotation marks omitted). Again, this utterly ignores the availability of Due Process Hearings, and it is far from clear that use of the Rule 23(b)(3) class mechanism will be "more manageable" than use of the existing system. It appears, in effect, that the Court would need to create some sort of duplicate, parallel system, with unknown additional cost attached. This argument also asserts there would be "thousands" of such suits, in some conflict with Plaintiffs' separate argument in the same section that they know of no similar litigation already filed, Pls.' Mem. at 34, and although they *nowhere* support the idea that there are "thousands," or even hundreds, of students who have experienced a material violation of their IEPs.

In sum, a lawsuit whereby Plaintiffs essentially request that the Court conduct "mini-hearings for each aggrieved class member to resolve the issue of whether compensatory education was warranted, and if so how much, would defeat the superiority of the class action as a means of adjudication," and should not be allowed to proceed. *M.A. ex rel E.S.*, 2009 WL

4799291, at \*17; *see also Derrick v. Glen Mills Schools*, No. 19-1541, 2024 WL 2134340, at \*19

(E.D. Pa. May 13, 2024) (refusing to certify a class seeking compensatory education because this

inquiry entails "complex questions which involve consideration of each student's experience and

educational progress . . . Even if Plaintiffs' issue classes satisfied the requirements of Rule 23(a)

and the predominance requirement of Rule 23(b), that would still leave the central issue of

compensatory education to be resolved individually.").  Plaintiffs cannot satisfy the requirements

of Rule 23(b)(3) and their Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: June 7, 2024.                              Respectfully submitted,

                                                  BRIAN L. SCHWALB
                                                  Attorney General for the District of Columbia

                                                  STEPHANIE E. LITOS
                                                  Deputy Attorney General
                                                  Civil Litigation Division

                                                  */s/ Matthew R. Blecher*
                                                  MATTHEW R. BLECHER [1012957]
                                                  Chief, Equity Section, Civil Litigation Division

                                                  */s/ Honey Morton*
                                                  HONEY MORTON [1019878]
                                                  Assistant Chief, Equity Section

                                                  */s/ Gregory Ketcham-Colwill*
                                                  MATEYA B. KELLEY [888219451]
                                                  GREGORY KETCHAM-COLWILL
                                                  [1632660]
                                                  DAVID R. WASSERSTEIN [1736006]
                                                  Assistant Attorneys General
                                                  400 6th Street, NW
                                                  Washington, D.C. 20001
                                                  Phone: (202) 735-7572
                                                  Email: gregory.ketcham-colwill@dc.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CRYSTAL ROBERTSON,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:24-cv-00656-PLF** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## ORDER

Upon consideration of Plaintiffs' Motion for Class Certification (Motion), Defendants' Opposition, and the entire record, it is this _____ day of _____, 2024:

**ORDERED** that Plaintiffs' Motion is **DENIED**.

Date: _____

                                    _____
                                    HON. PAUL L. FRIEDMAN
                                    United States District Judge