UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRYSTAL ROBERTSON, et al.,

    Plaintiffs,

        v.                                        Civil Action No. 24-0656 (PLF)

DISTRICT OF COLUMBIA,

    Defendant.

**<u>STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA</u>**

# TABLE OF CONTENTS

Table of Contents.................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Interest of the United States................................................................................................. 1

Plaintiffs' Factual Allegations ............................................................................................. 2

Statutory and Regulatory Background.................................................................................. 3

     I.     Section 504 of the Rehabilitation Act................................................................. 3

     II.    Title II of the ADA. ........................................................................................... 4

     III.   The IDEA............................................................................................................ 4

Argument .............................................................................................................................. 5

     I.     The Text of the ADA and Rehabilitation Act Requires Proof That a Defendant
           Acted "By Reason" of a Person's Disability and Makes No Mention of a "Bad
           Faith Or Gross Misjudgment" Standard In Any Context, Let Alone the School
           Context................................................................................................................ 5

     II.    Requiring Plaintiffs to Show Bad Faith or Gross Misjudgment Undermines the
           Purpose of the ADA and Rehabilitation Act..................................................... 10

     III.   Congress Rejected *Monahan*'s Premise Years Ago. ........................................ 11

Conclusion .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*A.J.T. ex rel. A.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279,*
   96 F.4th 1058 (8th Cir. 2024) ................................................................................ 9

*Alabama v. North Carolina,*
   560 U.S. 330 (2010) ............................................................................................... 9

*Alexander v. Choate,*
   469 U.S. 287 (1985) ........................................................................................... 3, 10

*Am. Council of the Blind v. Paulson,*
   525 F.3d 1256 (D.C. Cir. 2008) ......................................................................... 4, 10

*B.R. ex rel. Rempson v. District of Columbia,*
   524 F. Supp. 2d 35 (D.D.C. 2007) ......................................................................... 8

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,*
   458 U.S. 176 (1982) ............................................................................................... 4

*C.L. v. Scarsdale Union Free Sch. Dist.,*
   744 F.3d 826 (2d Cir. 2014) ................................................................................... 6

*Clark v. Martinez,*
   543 U.S. 371 (2005) ............................................................................................... 9

*D.A. ex rel. Latasha A. v. Houston Ind. Sch. Dist.,*
   629 F.3d 450 (5th Cir. 2010) ................................................................................. 6

*D.E. v. Cent. Dauphin Sch. Dist.,*
   765 F.3d 260 (3d Cir. 2014) ................................................................................... 6

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1,*
   580 U.S. 386 (2017) ................................................................................ 4-5, 5, 14

*Fry v. Napoleon Comm. Schs.,*
   580 U.S. 154 (2017) .................................................................................. 11, 13, 14

*G.C. v. Owensboro Pub. Schs.,*
   711 F.3d 623 (6th Cir. 2013) ................................................................................. 6

*Helen L. v. DiDario,*
   46 F.3d 325 (3d Cir. 1995) ................................................................................... 10

*Knox County v. M.Q.,*
   62 F.4th 978 (6th Cir. 2023) ............................................................................... 9-10

*Luna Perez v. Sturgis Pub. Schs.,*
   598 U.S. 142 (2023) ............................................................................................. 13

*Lunceford v. D.C. Board of Education,*
   745 F.2d 1577 (D.C. Cir. 1984) ......................................................................... 7, 8

*Mark H. v. Hamamoto,*
 620 F.3d 1090 (9th Cir. 2010) ................................................................ 6, 7

*Massey v. District of Columbia,*
 437 F. Supp. 2d 13 (D.D.C. 2006) .......................................................... 12

*Monahan v. Nebraska,*
 687 F.2d 1164 (8th Cir. 1982) ........................................................... *passim*

*Pierce v. District of Columbia,*
 128 F. Supp. 3d 250 (D.D.C. 2015) ....................................................... 8, 11

*Pierre-Noel v. Bridges Pub. Charter Sch., Civ. A.*
 No. 23-0070, 2024 WL 4018954 (D.C. Cir. Sept. 3, 2024) ..................... 4

*Sch. Bd. of Nassau Cnty. v. Arline,*
 480 U.S. 273 (1987) ................................................................................. 3

*Sellers ex rel. Sellers v. Sch. Bd. of the City of Manassas,*
 141 F.3d 524 (4th Cir. 1998) ................................................................... 6

*Silberman v. Miami Dade Transit,*
 927 F.3d 1123 (11th Cir. 2019) ............................................................... 11

*Smith v. Robinson,*
 468 U.S. 992 (1984) ................................................................................. 11

*Walker v. District of Columbia,*
 157 F. Supp. 2d 11 (D.D.C. 2001) .......................................................... 11

*Walker v. District of Columbia,*
 969 F. Supp. 794 (D.D.C. 1997) ........................................................... 12, 13

**Federal Statutes**

28 U.S.C. § 517 ........................................................................................ 1

29 U.S.C. § 794 ................................................................................... *passim*

29 U.S.C. § 794a ...................................................................................... 1

20 U.S.C. § 1401 ...................................................................................... 4

20 U.S.C. § 1412 ...................................................................................... 4

20 U.S.C. § 1414 ...................................................................................... 5

20 U.S.C. § 1415 .................................................................................. 12, 14

42 U.S.C. § 12133 .................................................................................... 1

42 U.S.C. § 12101 .................................................................................... 4

42 U.S.C. § 12132 ............................................................................... 1, 4, 5

42 U.S.C. § 12134 .................................................................................... 1

**Federal Regulations**

28 C.F.R. Part 41 ..................................................................................... 1

28 C.F.R. § 35.170 ................................................................................... 1

The United States of America respectfully submits this Statement of Interest in accordance with 28 U.S.C. § 517[1] to provide its views regarding the elements of a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Specifically, the United States asserts that requiring children with disabilities who face discrimination in the school setting—unlike any other category of plaintiffs—to show a defendant's "bad faith or gross misjudgment" to establish liability under Title II and Section 504 is contrary to the text, structure, and purpose of those statutes. The United States does not take a position on any other disputed issue in this litigation.

## INTEREST OF THE UNITED STATES

This lawsuit raises important questions about the legal standard required to establish liability for discrimination against students with disabilities under Title II of the ADA and Section 504 of the Rehabilitation Act. Congress charged the United States Department of Justice with issuing regulations to implement Title II, *see* 42 U.S.C. § 12134(a), and with enforcing the statute, *see* 42 U.S.C. § 12133 (incorporating 29 U.S.C. § 794a(a)(2), which in turn incorporates 42 U.S.C. 2000d *et seq.*); 28 C.F.R. § 35.170 *et seq.* The Department of Justice also enforces Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2), and coordinates federal agencies' implementation of Section 504, 28 C.F.R. Part 41. In the school context, the United States Department of Education administratively enforces Title II and Section 504. As a result, the federal government has a substantial interest in supporting the proper interpretation and application of Title II and Section 504.

---

[1]    Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."  28 U.S.C. § 517.

Specifically, the United States submits this Statement of Interest to assist the Court in its analysis of the District of Columbia's (the "District's") Partial Motion to Dismiss, *see* ECF No. 58.

### PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs are a non-profit organization (i.e., The Arc of the United States) and five parents or guardians of students with disabilities who are enrolled in public schools operated by the District of Columbia.    Compl. ¶¶ 26-31.[2]    Plaintiffs allege that the District's Office of the State Superintendent of Education ("Superintendent's Office") is responsible for providing each student with safe, reliable, and appropriate transportation services to attend school. *See id.* ¶¶ 1, 2, 6, 44-45, 57.    Although Plaintiffs rely on transportation provided by the Superintendent's Office, they assert that their transportation often arrives late, if at all, causing "significant disruptions, including missed school days and significantly late arrivals to school." *Id.* ¶ 57.    Such "interruption[s] to their daily routine can create a ripple effect," which results in students with disabilities being "unavailable for learning because they need time to regulate their emotions and behavior, and to catch up on what they missed due to their late arrival." *Id.*    Moreover, Plaintiffs allege that the Superintendent's Office "regularly strands" students with disabilities at school or else picks them up "before the end of the school day, requiring them to miss instructional time in order to get a ride home." *Id.* ¶¶ 6, 61.

The complaint asserts four causes of action.    First, Plaintiffs allege that the District is violating the Individuals with Disabilities Education Act ("IDEA") by failing to ensure they receive transportation services to school, thereby denying them a free appropriate public education. Compl. ¶¶ 219-28.    Second, Plaintiffs allege that the District is discriminating against them under

---

[2]    Plaintiffs also seek to represent a class of similarly situated students, *see* Compl. ¶¶ 211-18, but the Court has not yet ruled on Plaintiffs' class certification motion, *see* ECF No. 29.

Title II of the ADA by denying them an educational opportunity equal to that provided to other children and also by unnecessarily segregating them from students without disabilities. *Id.* ¶¶ 229-41. Third, Plaintiffs allege that the District's unlawful discrimination and segregation similarly violates Section 504 the Rehabilitation Act. *Id.* ¶¶ 242-53. Fourth, and finally, Plaintiffs allege that the District's conduct violates the D.C. Human Rights Act, D.C. Code § 2-1401.01, *et seq. Id.* ¶¶ 254-60. Plaintiffs seek declaratory and injunctive relief as well as reimbursement for certain transportation and education-related expenditures under District of Columbia law. *Id.* ¶¶ 262-72.

## STATUTORY AND REGULATORY BACKGROUND

### I.    Section 504 of the Rehabilitation Act.

Congress enacted Section 504 to "enlist[] all programs receiving federal funds in an effort 'to share with handicapped Americans the opportunities for an education, transportation, housing, health care, and jobs that other Americans take for granted.'" *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 277 (1987) (quoting 123 Cong. Rec. 13515 (1977) (statement of Sen. Humphrey)); *see Alexander v. Choate*, 469 U.S. 287, 295-96 (1985) (noting that Congress viewed the resulting harm from discrimination against individuals with disabilities to be the product of "thoughtlessness and indifference"). Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Generally, to prove a violation of Section 504 against a recipient of federal funds like the Superintendent's Office, *see* Compl. ¶ 32, a plaintiff "must show that (1) they are disabled within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, [and] (3) they were excluded from, denied the benefit of, or subject to discrimination

under a program or activity[.]" *Am. Council of the Blind v. Paulson,* 525 F.3d 1256, 1266 (D.C. Cir. 2008).

## II.     Title II of the ADA.

In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In so doing, Congress found that, "historically, society has tended to isolate and segregate individuals with disabilities" and that "individuals with disabilities continually encounter various forms of discrimination, including . . . segregation." *Id.* §§ 12101(a)(2), (5). For public entities' services, programs, and activities, like the public education provided by the District, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. Courts evaluate claims brought under Title II of the ADA and Section 504 using the same framework. *See Paulson*, 525 F.3d at 1260, n.2.

## III.    The IDEA.

The IDEA ensures that all eligible students with disabilities receive a free appropriate public education, sometimes referred to as a "FAPE." *See* 20 U.S.C. § 1412(a)(1)(A). That education includes specially designed instruction, along with related services to permit students to benefit from it. 20 U.S.C. § 1401(9), (26), (29); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982). The "related services" under the IDEA include transportation services, such as those provided by the District here. 20 U.S.C. § 1401(26)(A); *see also Pierre-Noel v. Bridges Pub. Charter Sch.*, Civ. A. No. 23-0070, 2024 WL 4018954, at *1 (D.C. Cir. Sept. 3, 2024). Each student receives an Individualized Education Program, which is the "centerpiece of the [IDEA's] education delivery system." *Endrew F. v. Douglas Cnty. Sch.*

*Dist. RE-1*, 580 U.S. 386, 391 (2017) (cleaned up; quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Individualized Education Programs must tailor special education supports to a student's unique needs so that they may "advance appropriately toward [achieving] the[ir] annual goals" and be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 391, 399; *see also* 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

## ARGUMENT

Students with disabilities seeking relief from education-related discrimination should not be forced to show defendants' "bad faith or gross misjudgment" to establish liability under Title II of the ADA or Section 504 of the Rehabilitation Act, as the District advocates, *see* Def.'s Partial Mot. to Dismiss (ECF No. 58-1, "Def.'s Br.") at 21. Imposing such a requirement is inconsistent with the text, structure, and purpose of those statutes. Accordingly, the Court should reject the District's heightened standard and treat Plaintiffs' Title II and Section 504 claims like any other outside of the education context.

**I.    The Text of the ADA and Rehabilitation Act Requires Proof That a Defendant Acted "By Reason" of a Person's Disability and Makes No Mention of a "Bad Faith Or Gross Misjudgment" Standard In Any Context, Let Alone the School Context.**

Section 504 states that "[n]o otherwise qualified individual with a disability [shall] solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The words "bad faith" and "gross misjudgment" appear nowhere within the text of either Title II or Section 504. Additionally, neither Title II nor Section

504 sets aside education-related claims brought by children with disabilities as claims that should be treated differently—and more harshly—than any other brought under either statute.

As the District concedes, *see* Def.'s Br. at 23, the D.C. Circuit has never addressed whether children alleging educated-related discrimination under the ADA and the Rehabilitation Act must satisfy a heightened standard of bad faith or gross misjudgment.  Courts in this district have required such a showing for education-related ADA and Rehabilitation Act claims.  *Id.* (citing cases).  That requirement originated more than forty years ago with the Eighth Circuit in *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir. 1982), a decision that pre-dated the ADA.  As discussed below, *Monahan* was incorrectly decided, and it has in any event been superseded by statute.  This Court should therefore reject the atextual standard that *Monahan* announced and that certain other courts of appeals have reflexively adopted.[3]  Rather, in accordance with precedent of the Third and Ninth Circuits, this Court should follow the plain text of Title II and Section 504 and hold that children bringing education-related claims under those statutes need only show that they were denied the benefits of a program or otherwise discriminated against by reason of their disability to prevail.  *See, e.g., D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

In *Monahan*, the court affirmed the dismissal of plaintiffs' Rehabilitation Act claim alleging the improper educational placement of plaintiffs' children with disabilities.  *Id.* at 1169-70.  In particular, the *Monahan* court viewed the Rehabilitation Act claim as "rest[ing] on the same

---

[3]    The Second, Fourth, Fifth, and Sixth Circuits have adopted the Eighth Circuit's interpretation of the Rehabilitation Act and require school-age children claiming discrimination related to their education to establish bad faith or gross misjudgment to show a Section 504 violation.  *See, e.g., Sellers ex rel. Sellers v. Sch. Bd. of the City of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998); *D.A. ex rel. Latasha A. v. Houston Ind. Sch. Dist.*, 629 F.3d 450, 454-55 (5th Cir. 2010); *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014).

procedural theories that plaintiffs ha[d] unsuccessfully argued under the" Education for All Handicapped Children Act ("Education for All Act"), the IDEA's predecessor. *Id.* at 1164. Those claims were about a state law that arguably conflicted with the Education for All Act's mandates and, more generally, about hearings where parents could challenge educational placements allegedly in violation of the Education for All Act. *Id.* at 1167, 1169. Because an amendment to the offending state law had mooted the Education for All Act claim, the court concluded that dismissal without prejudice of the redundant Rehabilitation Act claim was not in error. *Id.* at 1170. In so doing, the court went on to "add a few words for the guidance of the District Court and the parties" if plaintiffs chose to pursue a similar Rehabilitation Act claim in the future. *Id.* In this dictum, the court stated that plaintiffs must show "bad faith or gross misjudgment" before a "violation can be made out" in "the context of education of handicapped children." *Id.* at 1170-71. To justify that heightened standard, the court found it had a "duty to harmonize the Rehabilitation Act" with the Education for All Act because the latter specifically addressed the educational needs of children with disabilities. *Id.* at 1171. Thus, the court reasoned, the heightened standard was necessary to "give each of these statutes the full play intended by Congress" and achieve "what [the court] believe[d] to be a proper balance between the rights of handicapped children, the responsibilities of state education officials, and the competence of courts to make judgments in technical fields." *Id.*

The D.C. Circuit has never adopted *Monahan*'s holding, but it cited the decision in another pre-ADA ruling, *Lunceford v. D.C. Board of Education*, 745 F.2d 1577, 1580 (D.C. Cir. 1984), for a different proposition—that the Rehabilitation Act requires more than a mere showing that the school failed to provide a free appropriate public education. *Id.* (quoting *Monahan*, 687 F.2d at 1170). In *Lunceford*, a District ward challenged his discharge from a private residential

treatment facility under the Education for All Act and obtained a district court injunction against the facility. *Id.* at 1578. The D.C. Circuit reversed, holding that the facility—as a non-governmental actor—was not subject to the Education for All Act's requirements. *Id*. The D.C. Circuit also found that the Rehabilitation Act failed to support the injunction because the record was devoid of any discrimination based on Lunceford's disabilities because the parties agreed and stipulated that the facility's "decision to discharge [plaintiff] rested on the staff's determination that 'he [was] no longer medically appropriate for hospitalization[.]" *Id.* at 1578-80 (finding that "the discharge of [Lunceford] to permit the admission of another sorely handicapped child rationally could not amount to disadvantageous treatment").

To establish disability-based discrimination under Title II and Section 504, courts have held that a plaintiff must prove that (1) she is a qualified individual with a disability; (2) she is being excluded from participation in, or is being denied benefits of, services, programs, or activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of her disability. *See Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 267 (D.D.C. 2015) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Accepting the District's argument would add an element to a discrimination claim—that the alleged discrimination be due to defendants' bad faith or gross misjudgment. And it would do so in only one specific context—claims concerning the education of children. *See B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35, 41 (D.D.C. 2007) (applying this requirement exclusively in the "context of children who receive benefits pursuant to the IDEA").

The District's arguments not only find no basis in the text of Title II and Section 504, they also ignore the Supreme Court's instructions on how courts are to interpret statutes. The Supreme

Court has specifically rejected an approach to statutory interpretation that leads to different meanings for the same language. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (noting that "to give [the] same words a different meaning for each [context] would be to invent a statute rather than interpret one"). Consequently, where courts have interpreted Title II and Section 504 to require proof of certain elements for claims outside of the school context, they must do the same with claims in the school context. The Supreme Court has further cautioned that courts "do not— [and] cannot—add provisions to a federal statute." *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010). So, again, courts are not empowered to rewrite a statute to require an element of bad faith or gross misjudgment that Congress did not impose. Tellingly, the District does not attempt to explain how the different treatment of students protected under Title II or Section 504 can be squared with those statutes, nor does it otherwise engage with the text of either statute. *See generally* Def.'s Br. Accordingly, this Court should decline to read the words "bad faith or gross misjudgment for education-related claims by children" into Title II and Section 504.

Notably, other courts have recently criticized *Monahan*'s rule—even in Circuits that have previously applied it. A panel of the Eighth Circuit recently lamented *Monahan*'s addition of a "judicial gloss" on Section 504 that lacked "any anchor in statutory text." *A.J.T. ex rel. A.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 96 F.4th 1058, 1061 n.2 (8th Cir. 2024) (concluding that it was nonetheless "constrained" by *Monahan*'s bar).[4] And the Sixth Circuit likewise criticized precedent adopting *Monahan*'s bad-faith-or-gross-misjudgment standard, calling *Monahan*'s test "an impossibly high bar" that is "hard to square" with "statutory protection[s] that," by their terms, "reach[] even the unintentional denial of services." *Knox County v. M.Q.*,

---

[4]    Plaintiffs in *A.J.T.* recently filed a petition for a writ of certiorari with the Supreme Court in September 2024, which remains pending.

62 F.4th 978, 1002 (6th Cir. 2023).  Moreover, as noted above, the Third and Ninth Circuits apply the same standards for violations of Title II and Section 504 for all litigants—including students with disabilities—and do not require bad faith or gross misjudgment under either statute. Accordingly, this Court should reject the bad-faith-or-gross-misjudgment requirement for discrimination claims.

## II.    Requiring Plaintiffs to Show Bad Faith or Gross Misjudgment Undermines the Purpose of the ADA and Rehabilitation Act.

Adhering to the statutory text of Title II and Section 504 is also consistent with the purpose of these statutes to address discrimination resulting not only from invidious animus, but also from mere thoughtlessness.  In *Alexander*, the Supreme Court considered whether Section 504 reaches only purposeful discrimination.  Specifically, the Court explained that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect."  469 U.S. at 295.  The Court further explained that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach" if Section 504 were "construed to proscribe only conduct fueled by a discriminatory intent."  *Id.* at 296-97; *accord Paulson*, 525 F.3d at 1260.  The same is true for the ADA.  *See Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) ("Because the ADA evolved from an attempt to remedy the effects of 'benign neglect' resulting from the 'invisibility' of the disabled, Congress could not have intended to limit the Act's protections and prohibitions to circumstances involving deliberate discrimination.").

Here, the Court should hold Plaintiffs' Title II and Section 504 discrimination claims to the same standard as any other claimants outside the education context.  That is, the Court must determine whether Plaintiffs' allegations plausibly show that they were excluded from, denied the benefit of, or subjected to discrimination based on their disabilities.  *Paulson*, 525 F.3d at 1266;

*Pierce*, 128 F. Supp. 3d at 267.  An additional showing of intent (in the form of mere deliberate indifference) would only be relevant if Plaintiffs were claiming entitlement to compensatory damages, which they are not.  *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ("In the ordinary course, proof of a Title II or § 504 violation entitles a plaintiff only to injunctive relief.  To get damages . . . a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" (internal citations omitted)); *see Pierce*, 128 F. Supp. 3d at 278 (noting that, although the D.C. Circuit has yet to address the question, most circuits require a showing of "deliberate indifference" to establish intentional discrimination under Title II and Section 504, as required for compensatory damages).

Requiring bad faith or gross misjudgment to obtain even injunctive relief would unfairly close the courthouse doors to many students seeking relief from education-related discrimination. *See, e.g., Walker v. District of Columbia*, 157 F. Supp. 2d 11, 36 (D.D.C. 2001) (acknowledging the impact of the heightened standard on plaintiffs).  Indeed, the District admits that *Monahan*'s rule imposes a "high bar" on aggrieved school-age children.  Def.'s Br. at 19.  As established above, Congress did not provide for such a result, which enjoys no support in the text of either the ADA or Rehabilitation Act.

## III.    <u>Congress Rejected *Monahan*'s Premise Years Ago.</u>

Congressional action after *Monahan* further dooms its premise that a heightened standard was necessary to "harmonize" the IDEA (then the Education for All Act) with the Rehabilitation Act.  Two years after *Monahan*, the Supreme Court ventured beyond *Monahan* and held that the Education for All Act provided the "exclusive avenue" for children with disabilities to bring discrimination claims related to the adequacy of their education.  *Smith v. Robinson*, 468 U.S. 992, 1009 (1984); *see Fry v. Napoleon Comm. Schs.*, 580 U.S. 154, 160-61 (2017).  Like *Monahan*, the

Supreme Court in *Smith* sought to reconcile the IDEA and Section 504 by holding that a Section 504 claim could not proceed unless it alleged something more than the denial of a free appropriate public education. *Id.* at 1021 (holding that "a plaintiff may not circumvent or enlarge on the remedies available under the [Education for All Act] by resort to § 504").

Congress disagreed. It speedily abrogated *Smith* in 1986 by amending the Education for All Act to clarify that the statute should not be construed as the only statute to provide a remedy for children with disabilities. *See* Handicapped Children's Protection Act of 1986, Pub. L. No. 99-327, § 3, 100 Stat. 796, 797 (1986); *Walker v. District of Columbia*, 969 F. Supp. 794, 796 (D.D.C. 1997) (noting that the House Report made clear that "since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through [the IDEA], section 504 [of the Rehabilitation Act], and section 1983" (quoting H.R. Rep. No. 99-296, 99th Cong., 1st Sess. 4 (1985))). That amendment, which later added a reference to Title II of the ADA, states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

This provision is necessary to provide children with disabilities the full protection that Congress intended. *See Massey v. District of Columbia*, 437 F. Supp. 2d 13, 16 (D.D.C. 2006) (noting that § 1415(l) provided "no basis for construing the IDEA as an exclusive remedy" for a student with special education needs). Indeed, the Supreme Court has acknowledged that "the IDEA does not prevent a plaintiff from asserting claims under [the ADA or Rehabilitation Act] under such laws even if . . . those claims allege the denial of an appropriate public education (much

like an IDEA claim would)." *Fry*, 580 U.S. at 161 (holding that Section 1415(l)'s exhaustion requirement does not apply unless the plaintiff seeks relief for the denial of a free appropriate public education). Just as Section 1415(l) confirms the ability of children with disabilities to seek relief under Title II and Section 504, it also confirms that children with disabilities' remedies are not limited by those available only under the IDEA. *See Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 149-50 (2023) (holding that a suit premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides, such as compensatory damages under the ADA or Rehabilitation Act). Further, when this Court previously considered whether the IDEA precluded claims under the Equal Protection Clause, it found that when Congress enacted Section 1415(l)—then Section 1415(f)—it "intended to preserve *all alternative civil rights remedies*, including those available under Section 1983, to vindicate the rights created by the IDEA." *Walker*, 969 F. Supp. at 797 (emphasis added).

The District's motion avoids any mention of Section 1415(l) and instead argues that "neither *Fry* nor *Perez* addressed the precise question" of whether the bad-faith-or-gross-misjudgment standard applies here. Def.'s Br. at 22. True enough—both cases concerned the IDEA's exhaustion requirements, not the elements of a Title II or Section 504 claim. But the District fails to grapple with the Supreme Court's acknowledgment in *Fry* that the IDEA, on one hand, and Title II and Section 504, on the other, all protect the rights of children with disabilities in overlapping but different ways. The Court summarized it this way:

> [T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions. That is not to deny some overlap in coverage: The same conduct might violate all three statutes—which is why, as in *Smith*, a plaintiff might seek relief for the denial of a [free appropriate public education] under Title II and § 504 as well as the IDEA. But still, the statutory differences [] mean that a complaint brought under Title II and

> § 504 might instead seek relief for simple discrimination, irrespective of the
> IDEA's [free appropriate public education] obligation.

*Fry*, 580 U.S. at 170-71.  Thus, although Title II and Section 504 prohibit the many forms of

discrimination in all areas of public life, including education, the IDEA focuses more narrowly on

the provision of educational services to children with disabilities based on each child's particular

disability and individual educational needs.  That is, under the IDEA, "a school must offer an

[Individualized Education Program] reasonably calculated to enable a child to make progress

appropriate in light of the child's circumstances."  *Endrew F.*, 580 U.S. at 399.

Based on the foregoing, the bad-faith-or-gross-misjudgment standard is unnecessary to

harmonize the IDEA with Title II and Section 504 and is contradicted by 20 U.S.C. § 1415(l),

which specifies that the IDEA is not to be "construed to restrict or limit" rights available under

Title II and the Section 504.  Rather, as the Supreme Court has recognized, the statutes—as they

are written—are inherently distinct.

\*    \*    \*

**CONCLUSION**

For these reasons, the Court should decline to apply a bad-faith-or-gross-misjudgment standard to Plaintiffs' discrimination claims under Title II of the ADA and Section 504 of the Rehabilitation Act.

Dated: September 30, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ /s/ Christopher C. Hair _____
    CHRISTOPHER C. HAIR
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2543
    christopher.hair@usdoj.gov

*Attorneys for the United States of America*