UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CRYSTAL ROBERTSON, on behalf of            )
herself and her minor child D.R.;          )
                                           )
ELIZABETH DAGGETT, on behalf of            )
herself and her minor child H.D.;          )
                                           )
JOANN MCCRAY, on behalf of herself         )
and her minor child J.C.;                  )
                                           )
VERONICA GUERRERO, on behalf of            )
herself and her minor child A.F.;          )
                                           )      Civil Action No. 24-0656 (PLF)
MARCIA CANNON-CLARK AND                    )
DAVID CLARK, on behalf of themselves       )
and their minor child B.R.C.; and          )
                                           )
THE ARC OF THE UNITED STATES               )
                                           )
Plaintiffs,                                )
                                           )
          v.                               )
                                           )
DISTRICT OF COLUMBIA,                      )
                                           )
          Defendant.                       )

---

## OPINION

This matter is before the Court on defendant's Partial Motion to Dismiss

("Motion" or "MTD") [Dkt. No. 58].  Plaintiffs are parents and guardians of students with

disabilities in the District of Columbia, as well as The Arc of the United States ("The Arc"), a

non-profit organization dedicated to promoting the rights of people with disabilities.  Plaintiffs

filed a Class Action Complaint for Declaratory and Injunctive Relief ("Complaint") [Dkt. No. 1],

alleging that defendant District of Columbia ("D.C." or "the District") fails to provide safe and

adequate transportation to and from school for their children, which thereby denies the students

the free appropriate public education ("FAPE") to which they are entitled and blocks the

students' access to educational opportunities. See generally Complaint. Plaintiffs claim that

defendant's actions are in violation of the Individuals with Disabilities Education Act ("IDEA"),

the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act

("Section 504"), and the District of Columbia Human Rights Act ("DCHRA"). Id. The Court

heard argument on the defendant's motion to dismiss on November 7, 2024. After carefully

considering the parties' arguments and the relevant statutes and case law, the Court will grant the

motion in part and deny it in part.[1]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The named plaintiffs are the parents or guardians of five students with disabilities

whose individualized education programs ("IEPs") entitle them to transportation services from

the District of Columbia Office of the State Superintendent of Education ("OSSE"). Complaint

¶¶ 26-30. They bring claims on behalf of themselves and a putative class of parents of students

with disabilities "eligible for special education services under the IDEA and [who] are entitled to

transportation as a related service pursuant to their IEPs." Id. ¶ 222. The Arc, a non-profit

---

[1]    In addition to the complaint and motion to dismiss, referenced above, the Court
has reviewed the following filings in connection with the pending motion: Plaintiffs' Opposition
to Defendant's Partial Motion to Dismiss ("Pl. Opp.") [Dkt. No. 60]; Statement of Interest of the
United States of America ("U.S. Statement") [Dkt. No. 62]; Reply in Further Support of
Defendant's Partial Motion to Dismiss ("Reply") [Dkt. No. 63]; District of Columbia's Response
to Statement of Interest of the United States of America ("Def. Resp.") [Dkt. No. 70]; B.R.C.
Hearing Officer Determination ("B.R.C. HOD") [Dkt. 28]; H.D. Hearing Officer Determination
("H.D. HOD") [Dkt. 28-1]; A.F. Hearing Officer Determination ("A.F. HOD") [Dkt. 28-2]; J.C.
Hearing Officer Determination ("J.C. HOD") [Dkt. 28-3]; and D.R. Hearing Officer
Determination ("D.R. HOD") [Dkt. 28-4].

organization dedicated to promoting the rights of people with disabilities, is also a plaintiff. Id. ¶ 31.

Plaintiffs claim that OSSE's buses "regularly arrive hours late to pick up students or never arrive at all, often with no notice to families." Complaint ¶ 5. OSSE's current routing system, plaintiffs allege, is outdated, and often causes delays and sometimes results in a failure to deliver students to school at all. Id. ¶¶ 169-70. OSSE has attempted to improve and modernize its routing system, but a new system adopted in the 2022-2023 school year failed, and OSSE reverted to the old, deficient system. Id. ¶¶ 179-80. Parents and guardians are not provided with up-to-date information as to the schedule or the whereabouts of their children. Id. ¶ 9. The Parent Resource Center, the "primary communication link between families and schools about special education transportation services" is often delayed in responding to parent inquiries and is unable to provide timely and accurate updates. Id. ¶¶ 54, 74, 94, 114, 155, 201. As a result of OSSE's failure to provide an effective transportation system that gets them to school on time, plaintiffs claim, the students lose out on instructional time and participation in therapies or other school-provided services and are segregated from their peers. Id. ¶¶ 3-5. In addition, plaintiffs say that even when transportation is provided, the buses lack the necessary equipment and/or staff to safely transport students with disabilities to and from school. Id. ¶ 10. When OSSE is unable to effectively provide transportation, families must arrange transportation to school themselves or risk their children losing out on access to their education. Id. ¶ 60. Plaintiffs assert that each of these issues goes beyond their individual children; OSSE's failures affect all children with disabilities who rely on OSSE transportation. Plaintiffs therefore seek systemic relief, asserting that OSSE has failed to implement policies and practices that ensure compliance with the IDEA and the mandates of the anti-discrimination statutes. Id. ¶¶ 19-20.

The individual plaintiffs brought administrative due process complaints before OSSE hearing officers, challenging the denial of FAPE on both an individual and a systemic basis and alleging that OSSE's transportation failures have violated their rights under the ADA, Section 504, and the DCHRA.  Complaint ¶ 17.  In addition to the individualized relief they sought for their children, plaintiffs requested that the hearing officers issue orders requiring OSSE to "develop and implement adequate and effective policies and procedures to provide [their children] and other students with disabilities eligible for transportation services . . . with consistent, reliable, and safe transportation to and from school."  MTD at 12 (citing H.D. HOD at 15).  OSSE hearing officers dismissed the systemic and non-IDEA claims, "finding that such relief is unavailable in the administrative forum."  Complaint ¶ 17.  With respect to their individual claims, each of the plaintiffs was granted some form of relief, including compensatory education, reimbursement of personal travel expenses, and – in the cases of three of the students – a specific order that "OSSE shall provide consistent, reliable, and appropriate transportation" pursuant to the students' IEPs.  See B.R.C. HOD at 11-12 (granting student consistent, reliable, and appropriate transportation, reimbursement for transportation expenses, and compensatory education); H.D. HOD at 12 (granting student consistent, reliable, and appropriate transportation, compensatory education, and reimbursement for transportation expenses); D.R. HOD at 10 (granting student consistent, reliable, and appropriate transportation and compensatory education); A.F. HOD at 11 (granting student compensatory therapy services); J.C. HOD at 17-18 (granting student compensatory education and reimbursement for transportation expenses).  The Arc did not file a due process complaint before OSSE.  MTD at 5.

## II.  LEGAL FRAMEWORK

### A.  IDEA Claims

The IDEA requires that students with disabilities be provided with a FAPE, which includes both special education and related services "designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  To receive funding from the United States Department of Education, the state must submit a plan for compliance with the IDEA; the Department of Education then monitors the state's adherence to the mandates of the IDEA.  20 U.S.C. §§ 1412(a), 1416.  Each student with a qualifying disability is to be given an IEP to reflect their needs and the goals for their education, as well as the related services necessary to support them.  20 U.S.C. § 1414(d).  "Related services" includes transportation, as well as therapies and counseling.  20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(a).  Transportation includes travel to and from schools and between schools, as well as any specialized equipment necessary to provide transportation to a child with a disability.  34 C.F.R. § 300.34(c)(16).  Transportation for students with disabilities in the District of Columbia is provided through OSSE.  By contrast, OSSE does not provide transportation services to non-disabled students; instead, it provides free use of public transportation to all District residents who are enrolled in school and are between ages 5 and 21.  MTD at 3.

Students and parents may file due process complaints with administrative hearing officers to challenge a denial of FAPE.  20 U.S.C. 1415(b)(6); 34 C.F.R. § 300.507.  These hearing officers have jurisdiction to adjudicate individual claims for denial of FAPE but, as will be discussed infra at 12, they lack authority to hear systemic claims or claims of other types of disability discrimination outside the ambit of the IDEA.  See, e.g., B.R.C. HOD at 2 (partial

motion to dismiss granted based on hearing officer's lack of subject matter jurisdiction over systemic violations).

When a party is aggrieved by the decision or finding of a hearing officer, they may seek relief by filing a civil action in state or federal court.  20 U.S.C. § 1415(i)(2).  To be aggrieved, a plaintiff must demonstrate that some relief available under the IDEA has been denied.  Diatta v. District of Columbia, 319 F. Supp. 2d 57, 63 (D.D.C. 2004); Solomon-Lane v. District of Columbia, 2005 WL 736533 at *2 (D.D.C. 2005).  "One who wins before a hearing officer is not 'aggrieved' by the hearing officer's decision."  B.D. v. District of Columbia, 817 F.3d 792, 801 (D.C. Cir. 2016) (cleaned up).  When a hearing officer grants only part of the relief requested, however, the plaintiff is not precluded from seeking additional relief from the court.  Diatta v. District of Columbia, 319 F. Supp. 2d at 65.

Plaintiffs seeking to challenge a hearing officer's determination on their IDEA claim, and "any claims for relief that are available under the IDEA, regardless of the statutory basis for such claims," typically must exhaust their administrative remedies before filing suit. Douglass v. District of Columbia, 750 F. Supp. 2d 54, 60 (D.D.C. 2010) (citing 20 U.S.C. § 1415(l)) ("potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).").  Any claim seeking relief for the denial of a FAPE, whether brought "under the ADA, the Rehabilitation Act, or similar laws," must satisfy the IDEA's exhaustion requirement.  Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 161, 169 (2017) (to determine whether the claim brought under a statute other than the IDEA seeks relief for denial of a FAPE, the court must consider the "gravamen" of the plaintiff's complaint).  The IDEA's statutory exhaustion

requirement "hinges on whether a lawsuit seeks relief for the denial of a FAPE," regardless of what statute the claim is brought under.  Id. at 168.  For lawsuits seeking remedies other than those the IDEA can provide, exhaustion is not required.  Luna Perez v. Sturgis Public Schools, 598 U.S. 142 (2023).

There are several circumstances in which the exhaustion requirement may be waived.  These include cases where: (1) resorting to the administrative process would be "futile"; (2) it is "improbable that adequate relief" could be obtained through administrative channels; or (3) the agency has adopted a policy or pursued a practice of "general applicability" that is contrary to the law.  Douglass v. District of Columbia, 750 F. Supp. 2d at 60-61 (quoting D.L. v. District of Columbia, 450 F. Supp. 2d 11, 17 (D.D.C. 2006)).

To demonstrate futility or inadequacy, plaintiffs bear the burden of proving exceptional or extraordinary circumstances.  Douglass v. District of Columbia, 750 F. Supp. 2d at 61 (citing Honig v. Doe, 484 U.S. 305, 326-27 (1988)).  This may include cases where the rationale of exhaustion is not served, and where plaintiffs can demonstrate that the administrative process has not been and will not be adequate.  Massey v. District of Columbia, 400 F. Supp. 2d 66, 71 (D.D.C. 2005) (citing Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 104 (D.C. Cir. 1986)).  As the District points out, this Circuit has not recognized a "systemic violation" exception to the IDEA's exhaustion requirement.  Douglass v. District of Columbia, 750 F. Supp. 2d at 61-62 (distinguishing the D.C. Circuit from others that have permitted such an exception, e.g., Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992)).  Instead, these types of claims of systemic violations may more appropriately be addressed under the exceptions for futility and inadequacy.  Id.

Resort to the administrative process is considered futile "if the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d at 107. The administrative process is inadequate when "the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong." Id. When determining whether the administrative procedures are inadequate, "courts do not inquire as to the enforcement capacity of the administrative process, but rather ask whether that process has the power to fashion relief that 'is proportional to the claimant's injury.'" A.U. v. District of Columbia, Civil Action No. 19-3512, 2020 WL 4754619, at *7 (D.D.C Jul. 13, 2020) (quoting Johnson v. District of Columbia, 368 F. Supp. 2d 30, 50 n.9 (D.D.C 2005)). "The focus . . . is on whether the claimant can receive an award from the administrative proceedings that address[es] the claimed wrong and not whether that award will ultimately be enforced." A.U. v. District of Columbia, 2020 WL 4754619, at *7.

## B. Discrimination Claims

In addition to their IDEA claims, plaintiffs raise claims under several other statutes, all grounded in the theory that the District of Columbia has previously and continues to engage in discrimination against plaintiffs because of their disability. The ADA and Section 504 of the Rehabilitation Act provide protections for individuals with disabilities, including a prohibition on excluding or segregating those individuals or denying them the benefits of public services. See 29 U.S.C. § 794(a); 42 U.S.C. § 12132. Both statutes require covered entities – including public school systems – to provide reasonable modifications to ensure students with disabilities an equal opportunity to benefit from public education. 28 C.F.R. § 35.130(b)(7); 34 C.F.R. §§ 104.34(a), 104.37(a)(1). The DCHRA prohibits an educational

institution from denying or abridging access to or use of its facilities or programs based on an individual's disability.  D.C. Code § 2-1402.41(1).  As discussed supra at 6, for remedies that are available under the IDEA, plaintiffs must first satisfy the IDEA's exhaustion requirement before bringing a claim in court, whether the case is brought under the IDEA, the ADA, Section 504 of the Rehabilitation Act, or a "similar statute," of which the DCHRA is one.  See Fry v. Napoleon Cmty. Sch., 580 U.S. at 161.

To succeed under the ADA, Section 504, or the DCHRA, plaintiffs must satisfy the same standard.  Plaintiffs must prove that (1) they are qualified individuals with disabilities, (2) defendant is subject to the mandates of the statutes, and (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity on the basis of their disability.  See Hunter on behalf of A.H. v. District of Columbia, 64 F. Supp. 3d 158, 166 (D.D.C. 2014); American Council of the Blind v. Paulson, 525 F.3d 1256, 1266 (D.C. Cir. 2008).  There is no dispute that plaintiffs satisfy the first two prongs in this case.  Each of the named plaintiffs is the parent of a child with a disability that "substantially limit[s] a major life activity" who relies on transportation from OSSE to attend school.  Complaint ¶ 233 (citing 42 U.S.C. § 12102).  These children and other members of the putative class participate in educational programs provided by the District.  Id.¶ 234 (citing 42 U.S.C. § 12131(2)).  The District generally, and OSSE specifically, are public entities subject to each of the statutes.  Id. ¶ 236.  The question therefore is whether the plaintiffs' children were excluded from, denied the benefit of, or subject to discrimination based on their disability.

## C.  Associational Standing

Defendants allege that The Arc may not proceed as a plaintiff in this action because it lacks standing to do so.  MTD at 37.  An organizational plaintiff can demonstrate

standing by either organizational standing, showing injury to itself, or associational

standing – that is, "a cognizable injury to one or more of its members."  Kingman v. Park Civic

Ass'n v. Bowser, 815 F.3d 36, 39 (D.C. Cir. 2016).  Associational standing requires the

organization to "have the 'indicia of a traditional membership association'" such as members

financing the organization, guiding its activities, or selecting its leadership.  Viasat, Inc., v. FCC,

47 F.4th 769, 781 (D.C. Cir. 2022) (quoting Sorenson Commc'ns v. FCC, 897 F.3d 214, 225

(D.C. Cir. 2018)).  Organizations must also fulfill the three prongs of the associational standing

test established in Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333 (1977).  See

Viasat, Inc. v. FCC, 47 F.4th at 781.  Under Hunt, an organization has associational standing if

(1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it

seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted

nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v.

Washington State Apple Advert. Comm'n, 432 U.S. at 343.

### III. MOTION TO DISMISS

Defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure.  MTD at 7-8.  Federal courts are courts of limited jurisdiction,

possessing only those powers authorized by the Constitution and an act of Congress.  See, e.g.,

Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the

Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  Lack of subject matter jurisdiction is fatal to a

court's authority to hear a case.  See FED. R. CIV. P. 12(h)(3).  The plaintiffs bear the burden of

establishing that the Court has jurisdiction.  See Khadr v. United States, 529 F.3d 1112, 1115

(D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).  In

determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in

plaintiffs' favor and treat all well-pleaded factual allegations as true.  See Attias v. CareFirst,

Inc., 865 F.3d 620, 627 (D.C. Cir. 2017).  Although the Court must grant plaintiffs the benefit of

all reasonable inferences, it "need not accept factual inferences drawn by plaintiffs if those

inferences are not supported by facts alleged in the complaint," and the Court need not accept

plaintiffs' legal conclusions.  Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012)

(quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  In determining

whether a plaintiff has established jurisdiction, the Court may consider materials beyond the

pleadings where appropriate.  See Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207

(D.D.C. 2018).

　　　　To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim

upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible when the plaintiff pleads facts that are more than "'merely consistent with' a

defendant's liability" and that "allow[ ] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id. at 570 (quoting Bell Atl. Corp. v.

Twombly, 500 U.S. at 557).  In assessing a motion under Rule 12(b)(6), the court "may

consider . . . the facts alleged in the complaint, any documents either attached to or incorporated

in the complaint, and matters of which the court may take judicial notice."  North American

Butterfly Association v. Wolf, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (cleaned up).  In assessing

the sufficiency of the proceedings, the court must "accept the plaintiff's factual allegations as

true and draw all reasonable inferences in the plaintiff's favor."  Sanchez v. Off. of the State

Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022).  The court, however, need not

accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set

out in the complaint."  Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016); see Ashcroft v.

Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations.").  A complaint may survive a motion to dismiss even

"if there are two alternative explanations, one advanced by the defendant and the other advanced

by the plaintiff, both of which are plausible."  Banneker Ventures, LLC v. Graham, 798 F.3d

1119, 1129 (D.C. Cir. 2015) (internal quotation marks omitted).

## IV. IDEA CLAIMS

Plaintiffs' claims under the IDEA allege that the District's failure to provide

adequate transportation denies them a FAPE.  They request both individual and systemic relief.

The District seeks to dismiss all of plaintiffs' systemic claims and to narrow the scope of the

individual claims of the two plaintiffs who did not receive full individual relief from the hearing

officer.  The District also argues that the class of putative plaintiffs must be dismissed for failure

to exhaust their administrative remedies.

### A. Plaintiffs Have Standing to Bring Systemic Claims and Have Properly Pled Them

All five of the named plaintiffs brough their IDEA claims before an

administrative hearing officer, following the process mandated in the statute to seek relief.

Complaint at ¶ 17.  Three of the individual plaintiffs, D.R., H.D., and B.R.C., had their

individual requests for relief granted through that process, including obtaining orders requiring

the District to comply with their IEPs and provide adequate transportation.  Complaint ¶¶ 78, 99;

B.R.C. HOD at 11-12.  The remaining two individual plaintiffs, J.C. and A.F., received

compensatory education and reimbursement for past transportation issues, but were not granted prospective relief.  Complaint ¶¶ 121, A.F. HOD at 11.  The hearing officers dismissed the systemic claims of all five plaintiffs on the ground that the hearing officer lacked jurisdiction to hear those claims.  Complaint ¶¶ 79, 100, 122; B.R.C. HOD at 11-12; A.F. HOD at 11.

The District asserts that D.R., H.D., and B.R.C. fail to state a claim for relief under the IDEA because they received all the relief they were entitled to and therefore they are not "aggrieved" within the meaning of the statute.  MTD at 8-9.  By contrast, "[t]he District concedes that Plaintiffs J.C. and A.F. may be aggrieved within the meaning of the IDEA, because they did not receive orders for prospective relief."  MTD at 1.  Plaintiffs counter that all five plaintiffs remain aggrieved because their systemic claims were denied by hearing officers. Pl. Opp. at 7.  Defendant contends that the orders that D.R., H.D., and B.R.C. received effectively satisfy their systemic claims:  "[p]lainly, if OSSE must get the individual [p]laintiffs to and from school on time, OSSE must have policies and procedures in place to do so; and if those policies and procedures succeed for the [p]laintiffs, they are adequate and effective under the IDEA" and can satisfy OSSE's obligations with respect to other students with disabilities as well.  MTD at 13 (citing Ass'n for Retarded Citizens of Alabama, Inc. v. Teague, 830 F.2d 158, 162 (11th Cir. 1987) (holding that individual adjudications may ultimately lead to "implementation of . . . remedies which are universally applicable.")).

Plaintiffs dispute defendant's characterization of their claims as merely seeking relief for others that matches the individual relief afforded to them, countering that in fact they seek "to remedy ongoing harms that could not be fully resolved through individualized means." Pl. Opp. at 8.  Plaintiffs maintain that "in the absence of meaningful change addressing the broken transportation system and deeply flawed policies and procedures, the violations" of their

rights, and those of others similarly situated, would persist.  Id. at 9.  According to plaintiffs, the remedial provision of the IDEA, giving the Court the authority to "grant such relief as [it] determines is appropriate", 20 U.S.C. § 1415(i)(2)(C)(iii), is sufficiently broad to "vest[ ] the [C]ourt with all the authority it needs" to order relief for systemic violations.  Pl. Opp. at 10 (quoting DL v. District of Columbia, 860 F.3d 713, 731 (D.C. Cir. 2017)).  Without the opportunity for judicial review "in cases where the hearing officer made some findings in favor of the plaintiffs that were rendered nullities by other improper findings or inaction," the remedy provided under the IDEA "would be a dead letter in cases where there was a continuing dispute over the provision of FAPE to a child in need."  Diatta v. District of Columbia, 319 F. Supp. 2d at 65.

Many IDEA cases are suited to individualized assessments and relief "tailored to meet the child's specific needs."  Branham v. District of Columbia, 427 F.3d at 12.  When a parent seeks to claim, for example, that their child's IEP itself is defective, individualized adjudication may be appropriate.  DL v. District of Columbia, 860 F.3d at 731 (citing Jamie S. v. Milwaukee Public Schools, 668 F.3d 481, 495 (7th Cir. 2012)).  But, as the D.C. Circuit has said, where the crux of the complaint lies instead in "systemic defects" that will harm all similarly situated students, it is consistent with the purpose of the IDEA for courts to provide structural relief that serves all children with disabilities.  Id. (collecting cases approving structural relief in the IDEA context, including Blackman v. District of Columbia, 2006 WL 2456413 (D.D.C. Aug. 24, 2006)).  The hearing officers in this case concluded that they had no jurisdiction to provide systemic relief.  B.R.C. HOD at 2; H.D. HOD at 1-2.  Where a hearing officer declines to grant relief because they conclude they have no power to do so under the IDEA, the parent or child is "aggrieved."  Diamond v. McKenzie, 602 F. Supp. 632, 635 (D.D.C. 1985).  "Given its

broad educational objectives and specific prescriptions, the IDEA should be liberally applied and construed in favor of meeting its goals of providing appropriate and effective education to children with disabilities."  <u>Diatta v. District of Columbia</u>, 319 F. Supp. 2d at 62.

In <u>Petties</u>, the undersigned ordered sweeping systemic relief under the IDEA, including transportation.  <u>See</u> <u>Petties v. District of Columbia</u>, Civil Action No. 95-0148.  The Court rejects defendant's arguments that such structural relief is foreclosed by the IDEA itself or relevant case law.  Plaintiffs have plausibly stated a claim of being aggrieved under the IDEA for denial of their systemic claims by alleging that the issues for which they seek a remedy are not being adequately addressed through the individual processes available to them, such that structural relief may be the only appropriate remedy.  Because they have adequately stated claims for systemic relief, defendants' motion to dismiss for failure to state a claim must be denied under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. *Communications and Reimbursement Procedures are Not Within the Scope of the IDEA*

Plaintiffs also allege various failures of communication from OSSE related to transportation services, including the inability to reach the Parent Resource Center and a lack of up-to-date information and tracking as to the location and estimated times of arrival for buses, both in the morning and in the afternoon.  <u>See</u> MTD at 5 (citing Complaint ¶¶ 74, 94, 114, 138, 155).  Several plaintiffs also claim that the process for seeking reimbursement of costs related to the self-transportation of their children to school is inadequate.  <u>See</u> <u>id</u>. at 17 (citing Complaint ¶¶ 157, 207).  Defendant moves to dismiss these claims, arguing that "[plaintiffs'] allegations concerning communications and reimbursement procedures do not describe IDEA violations."  <u>Id</u>. at 1.  The Court agrees.

The IDEA mandates that children with disabilities be provided with education and "related services," which includes transportation and "such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education . . ." 20 U.S.C. § 1401(26)(A). The statutory text does not explicitly contemplate auxiliary benefits like communication with parents or reimbursement procedures. The Court is not persuaded by plaintiffs' argument that Congress "intended transportation services to be comprehensive and dependent on the unique needs of a specific child" and therefore to include any benefit with an arguable connection to transportation. Pl. Opp. at 11 (quoting Pierre-Noel v. Bridges Public Charter School, 113 F.4th 970, 980 (D.C. Cir. 2024)). In Pierre-Noel, the D.C. Circuit recognized that for a student in a wheelchair whose apartment building lacked an elevator or other wheelchair accessibility, it was essential for the District to provide door-to-door assistance, including carrying the child to and from his apartment door, in order for him to attend school. Pierre-Noel v. Bridges Public Charter School, 113 F.4th at 978. While Pierre-Noel supports plaintiffs' argument that the District must do more than provide the bare minimum of transportation services, there is no basis for concluding that Pierre-Noel means that such obligation is limitless in scope or extends to services beyond those that are clearly essential to the provision of transportation.

The same is true with respect to plaintiffs' claims concerning reimbursement for the costs of self-transportation. The IDEA does not explicitly govern the procedures for reimbursing such costs. See MTD at 17 (emphasizing that reimbursement procedures are only prescribed in limited circumstances, citing 34 C.F.R. § 300.148 (noting that financial reimbursement is appropriate in the limited circumstances where FAPE must be provided by a private provider rather than in a public school); 34 C.F.R. § 300.151 (directing reimbursement

only where a state finds a denial of a FAPE in state complaint procedures)).  While timely and accessible reimbursement for parents transporting their children to school would be beneficial, the requirement to provide "transportation and related services" cannot be stretched to reach such auxiliary benefits merely on the grounds that they have some connection to the transportation of students with disabilities.  The Court will grant defendant's motion to dismiss these claims as not properly within the ambit of the IDEA.

### C.  Plaintiffs Lack Standing to Seek Compensatory Education for Ongoing or Future IDEA Violations

Defendant argues that the individual plaintiffs lack standing to seek compensatory education because they already have received compensatory education through the administrative process.  MTD at 40-41 (citing Doe 1 v. Apple, Inc., 96 F.4th 403, 408 (D.C. Cir. 2024)).  Plaintiffs counter that because OSSE's failure to provide adequate transportation is ongoing, they have accrued additional compensatory education claims since the time of the hearing officer determinations.  Pl. Opp. at 30.  They acknowledge that typically they would have to exhaust their administrative remedies before coming to court but argue that exhaustion would be futile or inadequate here.  Id.

The Court disagrees.  Plaintiffs did not claim that the compensatory education awards they received through the administrative process were inadequate to redress the violations accrued at the time of the award; and, since that process has worked in the past, there is no reason to believe that requiring plaintiffs to exhaust their administrative remedies in seeking additional compensatory education would be futile or inadequate.  Furthermore, awarding compensatory education requires an individualized assessment as to what each student requires to make up for the loss of educational opportunity.  See Reply at 22 (citing Reid v.

District of Columbia, 401 F.3d 516 (D.C. Cir. 2005) ("just as IEPs focus on disabled students'

individual needs, so must awards compensating past violations rely on individualized

assessments.")).  The administrative process is the appropriate channel for those claims.  As for

plaintiffs' argument that their claims are justiciable because they are capable of repetition but

evading review, Pl. Opp. at 30, the Court rejects this argument for the reasons just discussed with

respect to the individual claims for compensatory education.  There is no basis upon which it

would be appropriate for the Court to award compensatory education for IDEA violations

accruing after the issuing of the plaintiffs' original hearing officer determinations.  The Court

will grant defendant's motion to dismiss with respect to these claims.

### D.  Putative Class Members Need Not Exhaust Administrative Remedies

As discussed supra at 6-8, parties seeking relief from the court under the IDEA

must first exhaust their administrative remedies, unless an exception applies.  While the

individual named plaintiffs in this case have exhausted their administrative remedies, the

putative class members have not.  Defendant argues that the members of the putative class

cannot participate in this action because they have not exhausted their administrative remedies

and because no exception to the exhaustion requirement applies here.  MTD at 27.  The Court

disagrees and concludes that the putative class members need not exhaust administrative

remedies.  The named plaintiffs' exhaustion is sufficient under the doctrine of vicarious

exhaustion.  The Court therefore will not dismiss the putative class members for failure to

exhaust.[2]

---

[2]    Plaintiffs also argue that it would be futile and inadequate to require the putative class members to exhaust their administrative remedies.  Pl. Opp. at 32.  The Court need not reach this question with respect to the putative class, because it finds that exhaustion is excused for the putative class members on the grounds of vicarious exhaustion.

Plaintiffs assert that "only one named plaintiff is required to exhaust his or her administrative remedies in civil rights class actions" when plaintiffs present sufficiently similar claims; and they posit that the claims of the putative class members are "virtually identical" to those of the named plaintiffs.  Pl. Opp. at 15 (citing <u>DL v. District of Columbia</u>, 302 F.R.D. 1, 21 (D.D.C. 2013) (quoting <u>Hartman v. Duffey</u>, 88 F.3d 1232, 1235 (D.C. Cir. 1996)); <u>see also</u> <u>Pappas v. District of Columbia</u>, 513 F. Supp. 3d 64, 78 (D.D.C. 2021) (finding that "[v]icarious exhaustion is available only to parties whose claims are 'so similar to those asserted by the original plaintiff that no purpose would be served by requiring them to file independent charges.'" (quoting <u>Byrd v. District of Columbia</u>, 807 F. Supp. 2d 37, 63 (D.D.C. 2011)).  Because each of the putative class members' claims "stem from the same deficient policies and practices that plague the system," plaintiffs argue that they have satisfied this standard.  Pl. Opp. at 15.

"[T]he applicability of the vicarious exhaustion doctrine hinges on the functional, rather than formal, similarity of the parties' claims."  <u>Breen v. Chao</u>, Civil Action No. 05-0654 (PLF), 2018 WL 1509077, at *6–7 (D.D.C. Mar. 27, 2018) (citing <u>Brooks v. Dist. Hosp. Partners, L.P.</u>, 606 F.3d 800, 807 (D.C. Cir. 2010)).  The purposes of the exhaustion requirement under the IDEA often are not served by requiring all class members to exhaust.  In some cases, exhaustion by one class member may be sufficient to "properly frame the issues for judicial review."  <u>Ass'n for Cmty. Living in Colorado v. Romer</u>, 992 F.2d 1040, 1045 (10th Cir. 1993); <u>accord</u> <u>DL v. District of Columbia</u>, 302 F.R.D. at 21.  This is such a case.  The putative class members have alleged the same claims and suffered the same injury as have the named plaintiffs: the District of Columbia's failure to provide safe, reliable, and appropriate transportation to students with disabilities, resulting in the deprivation of FAPE.  <u>Borum v. Brentwood Vill., LLC</u>,

324 F.R.D. 1, 16 (D.D.C. 2018) ("if Ms. Borum's claim of disparate impact is proven, all class members will have suffered the same injury"). While the claims of each plaintiff likely will have some factual differences, class members "need not be identically situated", id., so long as there is "a uniform policy or practice that affects all class members." DL v. District of Columbia, 713 F.3d 120, 128 (D.C. Cir. 2013). Both the named plaintiffs and the putative plaintiffs have allegedly suffered the same injury, OSSE's failure to provide safe and reliable transportation. It would be inefficient and irrational to require each similarly situated parent to individually raise their claims administratively. This common claim serves to eliminate the utility of the exhaustion requirement, and the Court therefore finds that each individual plaintiff need not exhaust. Furthermore, as discussed supra at 3-4, plaintiffs are not just challenging individual determinations regarding their IEPs; they are challenging a system of faulty policies and practices that deprives them of safe, reliable, and appropriate transportation.

### E.  The Arc is Relieved from the Exhaustion Requirement and May Remain a Plaintiff in this Lawsuit

The District argues that The Arc's failure to exhaust its administrative remedies should disqualify it from participating in the suit. MTD at 18. Plaintiffs maintain that the exhaustion requirement does not apply to The Arc, because courts that have regularly found that advocacy organizations have associational standing to raise IDEA claims have not applied the requirement for exhaustion to their claims. Pl. Opp. at 13 (citing, along with several cases from outside this Circuit, Council of Parent Attorneys & Advocates, Inc. v. DeVos, 365 F. Supp. 3d 28, 47 (D.D.C. 2019)). In addition, plaintiffs argue that The Arc, as an organization, does not have an obligation to exhaust as it has no avenue to exhaust in its own name because it is not a student or a parent, but instead is acting on behalf of the interests of its members, some of whom

(the named plaintiffs) have exhausted.  Pl. Opp. at 14 n. 9.  They maintain that The Arc only

needs to have a member who has exhausted and has standing to sue on their own behalf.  Id.

at 14.

        The Court agrees with plaintiffs.  The Arc, as an organization, does not need to

exhaust the IDEA's administrative remedies because any attempt to do so would be futile and

inadequate.  See supra at 7-8.  The Arc is seeking systemic relief for its members by requesting

that the District revise its policies, practices, and procedures to ensure that transportation will be

provided in accordance with all students' IEPs.  Complaint ¶ 264.  Multiple parents have filed

due process complaints on behalf of their children and were not provided with the requested

systemic relief, even those who received individualized relief.  Pl. Opp. at 7.  Given the repeated

denials of systemic relief to remedy the transportation issues, The Arc's attempt to request

systemic relief through the administrative process is likely futile because "the agency will almost

certainly deny any relief."  Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d at 107.

        Furthermore, the administrative remedy is almost certainly inadequate to address

The Arc's systemic relief requests.  The Arc is requesting systemic change to ensure that

students receive a FAPE, but the administrative remedies provided by the IDEA only address

individual relief, which is "not sufficient to right the wrong" of systemic issues.  Randolph-

Sheppard Vendors of Am. v. Weinberger, 795 F.2d at 107.  The hearing officers do not have the

"power to fashion relief that is proportional" to The Arc's claimed injury of repeated harms to

students with disabilities due to systemic failures.  A.U. v. District of Columbia, 2020

WL 4754619, at *7 (internal quotation omitted).  That the administrative hearing officers lack

jurisdiction over The Arc's claims is further reason why exhaustion would be both futile and

inadequate.

The District of Columbia cites the First Circuit decision in Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d 13, 34 (1st Cir. 2019) (stating that organization members' failure to exhaust under the IDEA cuts against finding that they may bring a case because "[h]undreds of students cannot sue individually here without IDEA exhaustion . . . and there is no clear reason why the organizations should be able to essentially press those students' claims in the aggregate without that exhaustion.").  The Court does not find the First Circuit's analysis or conclusion in Parent/Pro. Advoc. League compelling because it undermines the very purpose of advocacy organizations like The Arc.  See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, 477 U.S. 274, 290 (1986) ("[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others.").  Adopting the First Circuit's reasoning would virtually bar all advocacy groups' attempts to bring cases under the IDEA unless every member of the organization exhausts.  As discussed supra at 7-8, allowing organizations to bring cases without exhausting administrative remedies is consistent with the requirements of the IDEA because requiring organizations to attempt to exhaust administrative remedies would be futile and inadequate.  See Douglass v. District of Columbia, 750 F. Supp. 2d at 60-61.   Furthermore, contrary to the reasoning of the First Circuit, to permit claims to be brought by organizations is not an "easy way to circumvent [exhaustion]," Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d at 34, because organizations will still be required to meet all three prongs of the test for associational standing established by the Supreme Court in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977), discussed in further detail infra at 28-37.

V. DISCRIMINATION CLAIMS

Plaintiffs assert claims under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA, alleging that OSSE's failure to provide adequate transportation services denies them an "educational opportunity that is equal to the opportunity afforded other children," creates "different or separate educational services," and "unnecessarily segregate[es]" them from their peers. Complaint ¶¶ 237, 238, 249, 258. Plaintiffs argue that what they challenge is not the transportation program itself, but rather, the failures of the transportation system to "prevent[ ] them from safely getting to school to access their education." Pl. Opp. at 18-19. Defendant counters that "it is immaterial whether the benefit or service at issue is defined as transportation to and from school or as an adequate public education." MTD at 19. The important point, it says, is that the District does not itself provide specialized transportation services directly to students <u>without</u> disabilities who are enrolled in school; rather transportation is provided through Metrobus and Metrorail. <u>Id</u>. As a result, the District argues, it cannot have denied plaintiffs an equal opportunity to access that service. <u>Id</u>. Alternatively, if the Court were to find that access to education itself is the appropriate metric, defendant asserts that plaintiffs must demonstrate that the District acted with bad faith or gross misjudgment, which it argues plaintiffs have failed to allege. <u>Id</u>.[3] Separately, defendant also challenges plaintiffs' claim that the District has subjected them to unjustified isolation. <u>Id</u>.

---

[3]    The United States has filed a statement of interest arguing that holding plaintiffs to that standard is "contrary to the text, structure, and purpose" of the discrimination statutes. Statement of Interest of the United States of America ("U.S. Statement") [Dkt. No. 62] at 1.

*A. Plaintiffs Have Stated a Claim of Discrimination in the Provision of Education*

Defendant argues that the Court should reject plaintiffs' argument that the service at issue in plaintiffs' discrimination claims is education writ large, rather than transportation specifically.  First, it asserts that plaintiffs in their complaint "do not allege differential treatment between themselves and non-disabled students" because the District provides transportation services only to students with disabilities.  MTD at 20-21.  Second, it argues that defining the service as education, rather than transportation, is a "high level of generality" not warranted under the anti-discrimination statutes.  Reply at 9.

As to the first, plaintiffs respond that the ADA "prohibits discrimination by public entities against people with disabilities by reason of their disabilities and does not delineate between public entity actions that only serve people with disabilities and those that serve the general public."  Pl. Opp. at 20 (citing 42 U.S.C. § 12132).  They assert that to prove disability discrimination, they need not show that a comparison class of similarly situated individuals received preferential treatment.  Id. at 20-21 (citing Olmstead v. L.C. ex rel Zimring, 527 U.S. 581, 598 (1999) and Henrietta D. v. Bloomberg, 331 F.3d 261, 291 (2d Cir. 2003)).  Defendant counters that "[a] program which provides services exclusively to the . . . disabled cannot discriminate against the . . . disabled within the meaning of the ADA and Rehabilitation Act."  MTD at 20 (quoting Greene v. City of New York, 725 F. Supp. 3d 400, 425 (S.D.N.Y. 2024) (emphasis added)).  The Court is not persuaded that the purpose of the anti-discrimination statutes is served by such a narrow reading.

In Greene, the court focused on the practice of police transporting individuals experiencing mental health emergencies to a hospital or treatment program.  Greene v. City of New York, 725 F. Supp. 3d at 424.  Plaintiffs alleged violations of anti-discrimination statutes

because police officers were not equipped to respond adequately to such crises, putting plaintiffs at greater risk of police violence or other injury.  Id. at 410, 424.  Because those allegations challenged the adequacy of the services provided – rather than the denial of services altogether based on the plaintiffs' disabilities – the court concluded that they did not state a claim for disability discrimination.  Id. at 424.

In the instant case, by contrast, the fundamental issue underlying the discrimination claim is not the transportation itself, but the allegation that failures in the transportation system deny students with disabilities access to education.  See Complaint ¶ 3. This case is all about education – the statutory right of children with disabilities to a free appropriate public education.  To assure access to FAPE, the statute requires the school system to provide "related services" as necessary, including transportation.  20 U.S.C. §§ 1414(d), 1401(26)(A); 300 C.F.R. §§ 300.34(a), 300.34(c)(16).  Transportation is the essential means by which students with disabilities get to school in order to receive an education.  And because they are students with disabilities, these plaintiffs face greater difficulty in obtaining access to their education than do non-disabled students who do not have to rely on OSSE to provide them with transportation to school.  As a result, plaintiffs allege, they lose out on "an educational opportunity that is equal to the opportunity afforded other children", including access to a full school day in person.  Complaint ¶¶ 237(a), 237(b).  Plaintiffs have thus plausibly alleged discrimination based on their disabilities sufficient to state a claim under the anti-discrimination statutes.

### B.  The Court Will Not Apply the Bad Faith or Gross Misjudgment Standard

Defendant argues that to prove a discrimination claim under the anti-discrimination statutes, plaintiffs must show more than just a denial of FAPE.  MTD at 21-22

(citing Lunceford v. District of Columbia, 745 F.2d 1577, 1580 (D.C. Cir. 1984)).  It maintains that plaintiffs have the added burden to show bad faith or gross misjudgment by the District of Columbia. Id. at 22.  This standard requires plaintiffs to demonstrate that "officials involved have exercised professional judgment[ ] in such a way as . . . to depart grossly from accepted standards among educational professionals." Walker v. District of Columbia, 969 F. Supp. 794, 797 (D.D.C. 1997). [4]  And, as Judge Nichols noted, "[o]nly in the rarest of cases will a plaintiff be able to prove that a school system's conduct is so persistent and egregious as to warrant . . . [a] remedy not provided for by the IDEA itself." Reid-Witt v. District of Columbia, 486 F. Supp. 3d 1, 9 (D.D.C. 2020) (quoting Walker v. District of Columbia, 157 F. Supp. 2d 11, 36 (D.D.C. 2001)).   The District argues that plaintiffs have not satisfied this requirement because they have not alleged that "the District's conduct departed substantially from accepted professional standards."  MTD at 24.

Plaintiffs respond that this heightened standard "is inconsistent with the language of [the ADA and Section 504], the language of the IDEA, [and] recent Supreme Court precedent."  Pl. Opp. at 23.  The United States concurs and adds that the standard is contrary to the purpose of each of those statutes.  See U.S. Statement at 10-14.  The Court agrees.

The bad faith or gross misjudgment standard originated over forty years ago with the Eighth Circuit's decision in Monahan v. Nebraska, 687 F.2d 1164, 1170-71 (8th Cir. 1982).  In that case, the court found that to "harmonize" the protections of Section 504 with the IDEA's predecessor, the Education for All Handicapped Children Act ("EHA"), plaintiffs seeking to demonstrate discrimination must be subjected to a heightened intent standard under Section 504.

---

[4]     As both parties have acknowledged, the D.C. Circuit has not yet addressed the use of this standard.

See U.S. Statement at 6-7.  In response, Congress amended the EHA, emphasizing that "[n]othing in [the EHA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution" or the ADA, Section 504, and similar statutes like the DCHRA, contemplating that individuals with disabilities might invoke various statutes when seeking relief.  See 20 U.S.C. § 1415(l).  Since Congress acted, the Supreme Court has emphasized the importance of the IDEA as a separate means for seeking relief, one that does not limit the availability of remedies under other statutes.  See Fry v. Napoleon Cmty. Sch., 580 U.S. at 160-61 (the ADA and Rehabilitation Act are "separate vehicles no less integral than the IDEA for ensuring the rights of handicapped children" (quotations omitted)); Luna Perez v. Sturgis Public Schools, 598 U.S. at 146 (reiterating that the IDEA does not restrict "the ability of individuals to seek remedies under the ADA.").

The language of the ADA and Section 504 require that a plaintiff prove discrimination "by reason" of their disability, 29 U.S.C. § 794(a); 42 U.S.C. § 12132, nothing more.  "It is . . . hard to square a standard requiring bad faith or gross misjudgment, in all cases involving students' educational rights, with statutory protection that reaches even the unintentional denial of services."  Knox Cnty. v. M.Q., 62 F.4th 978, 1002 (6th Cir. 2023).  The Court is persuaded by plaintiffs' and the United States' arguments against adopting the bad faith or gross misjudgment standard as inimical to the purpose and structure of the ADA and Section 504 of the Rehabilitation Act, as well as their relation to the IDEA.  The Court thus will not dismiss plaintiffs' claims on the grounds that plaintiffs have not satisfied the bad faith or gross misjudgment standard.

### C.  *Plaintiffs Do Not Make Out a Claim of Unjustified Isolation Under* <u>Olmstead</u>

Plaintiffs claim that the District's "failure to provide safe, reliable, and appropriate transportation . . . unnecessarily segregat[es] them" from their peers. Complaint ¶ 238; <u>see</u> <u>also</u> Pl. Opp. at 23 (this is a "straightforward case of unjustified segregation" under the ADA.  Plaintiffs rely on the Supreme Court's decision in <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581.  Defendant argues that plaintiffs' segregation claims must be dismissed because plaintiffs do not allege a deficiency with respect to the location in which services are provided, which is the typical pattern of an <u>Olmstead</u> claim, and because a segregation claim cannot be based on the adequacy of services provided.  MTD at 25-26 (citing <u>Cohon v. New Mexico Dep't of Health</u>, 646 F.3d 717, 729 (10th Cir. 2011) (<u>Olmstead</u> claims relate to "the location of services, not whether services will be provided"); <u>Alexander v. Choate</u>, 469 U.S. 287, 304 (1985) (holding that Section 504 does not "guarantee . . . equal results from the provision" of state services.))

The Court agrees with defendant.  "Unjustified segregation" or "isolation" was recognized in <u>Olmstead</u> as a form of discrimination based on a disability under the ADA. <u>Olmstead</u>, 527 U.S. at 597; <u>see</u> <u>also</u> <u>M.J. v. District of Columbia</u>, 401 F. Supp. 3d 1, 11-13 (D.D.C. 2019).  But <u>Olmstead</u> dealt <u>only</u> with "the problem of unjustified institutional segregation."  <u>Steimel v. Wernert</u>, 823 F.3d 902, 910 (7th Cir. 2016) (citing <u>Olmstead</u>, 527 U.S. at 600).  The "integration mandate" was premised on the concern about institutionalizing and confining disabled persons who did not require such treatment and were capable of living in the community.  <u>Id</u>. (citing <u>Olmstead</u>, 527 U.S. at 600-01).  The Supreme Court's decision in <u>Olmstead</u> has nothing to do with the facts and context of this case.  Accordingly, the Court finds that plaintiffs have failed to state a claim of unjustified isolation.

VI. ASSOCIATIONAL STANDING

An organization has associational standing if (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. at 343. An association must also have the "indicia of a traditional membership association" which the District asserts that The Arc lacks. MTD at 38-40 (quoting Viasat, Inc. v. FCC, 47 F.4th at 781). The District does not dispute that The Arc meets the first and second prong of the Hunt test. See MTD at 37-40. It argues that it does not have associational standing because it does not demonstrate the indicia of a traditional membership association and because it fails to meet the third prong of the Hunt test. Id. The Court finds that The Arc has associational standing and may proceed as a plaintiff in this action.

*A.  The Arc Has the Indicia of a Traditional Membership Organization*

To establish associational standing, an organization must have "the indicia of a traditional membership association" such as members financing the organization, guiding its activities, or selecting its leadership. Viasat, Inc. v. FCC, 47 F.4th at 781. Having "putative members simply . . . read a group's publications, subscribe to its e-mail list, or follow its Facebook page" is not sufficient to establish the indicia of a traditional membership association. Id. The D.C. Circuit has denied associational standing to various organizations for failing to demonstrate traditional membership. See, e.g., Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002) (holding that magazine readership is not the same as membership because the magazine has not shown the readers and subscribers "played a role in selecting its leadership, guiding its activities, or financing those activities"); see also Viasat, Inc. v. FCC, 47 F.4th

29

at 781-82 (holding that the organization lacked associational standing because it did not provide any insight into how it related with its members).

   Even if members of an organization do not entirely fund the organization or directly select its leadership, the organization may still be a traditional membership association. See, e.g., AARP v. United States Equal Emp. Opportunity Comm'n., 226 F. Supp. 3d 7, 17-18 (D.D.C. 2016).  In AARP, while not all members of the organization paid dues, the court held that individual members helped to finance the organization because membership dues accounted for 19% of the AARP's total revenue.  Id. at 17.  Individual members of the AARP guided the organization's activities by participating in various opinion polls and surveys, which included input on policy positions, and members participated in committees, which advised the Board of Directors.  Id.  Members of the organization selected its leadership because all members of the Board of Directors were required to be AARP members and were chosen by other members of the Board, even though the individual members did not directly elect the Board of Directors.  Id.

   Here, the District alleges that The Arc has not provided information about whether its members finance the organization, guide its activities, or select its leadership.  MTD at 39.  Further, the District claims that The Arc's website fails to provide indication of members' influence over activities and leadership, but does indicate members get access to newsletters, discounted registration to events, and special insurance coverage rates.  Id. at 40.  The website also suggests that much of the funding for The Arc comes from corporate and non-profit sponsors.  Id.

   The Complaint identifies The Arc as "a national non-profit organization located in Washington, D.C. with the mission of promoting and protecting the human rights of people with intellectual and developmental disabilities ('IDD') and actively supporting their full inclusion

and participation in the community throughout their lifetimes."  Complaint ¶ 31.  "The Arc has nearly 600 member chapters across the country, including The Arc of the District of Columbia." Id.  The Arc has over 1,400 members in Washington, D.C. and The Arc of the District of Columbia has approximately 1,000 members.  Id.

              In its opposition to the motion to dismiss, plaintiffs included additional information regarding the organization, membership, and the relationship between the organization and its members.  See Pl. Opp. at 32-35.  Member chapters are required to pay dues to The Arc and "are entitled to participate in the governance of the organization in exchange [for dues], including electing members of The Board of Directors, and voting on the Core Values, Guiding Principles, Position Statements, and Resolutions of the Arc."  Id. at 33.  Individual members are not required to pay dues but may contribute to The Arc through annual membership dues.  Id.  Each member of the Board of Directors must also be an individual member of the organization, and the Board of Directors appoints and works with the CEO to direct the organization.  Id. at 33-34.  Individual members also "decid[e] how chapter members should vote on Board membership, Core Values and Guiding principles, Position Statements, and Resolutions of The Arc."  Id. at 34.  "Chapter members also obtain more voting rights on these core governance areas for every additional 100 individual members it has enrolled."  Id.[5]

---

[5]      The District does not dispute the supplemental facts provided about The Arc in the plaintiffs' opposition but argues that the claims should still be dismissed because the supplemental information was not included in the Complaint.  Reply at 17 (citing Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d at 160 n.7).  When determining whether a plaintiff has established jurisdiction, courts may consider materials beyond the pleadings where appropriate.  See Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d at 207, see also Hunter v. District of Columbia, 384 F. Supp. 2d 257, 260 (D.D.C. 2005) ("where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

The facts provided by The Arc in the Complaint and in the opposition offer sufficient evidence to support that The Arc has "the indicia of a traditional membership association." Viasat, Inc. v. FCC, 47 F.4th at 781. Unlike the organization in Gettman, whose members were only readers and subscribers, the members of The Arc help to finance the organization, guide its activities, and select its leadership. See Gettman v. DEA, 290 F.3d at 435. Members of The Arc help to finance the organization because member chapters across the country are required to pay dues and individual members have the option to contribute. Pl. Opp. at 33. The District points out that The Arc's website suggests that a significant portion of funding for the organization comes from corporate and non-profit sponsors. MTD at 39. This is not necessarily dispositive in precluding the organization from qualifying for associational standing. See AARP v. United States Equal Emp. Opportunity Comm'n., 226 F. Supp. 3d at 17 (holding that AARP is a traditional membership association because members do finance the organization and amount for 19% of the total revenue even though not all members pay dues).

In addition to helping finance the organization, members of The Arc guide its activities and select its leadership. Similar to the organization members in AARP, who filled out polls and surveys regarding policy positions and participated in committees who guided the Board of Directors, the members of The Arc guide the organization by deciding how their chapter will vote on Core Values and Guiding principles, Position Statements, and Resolutions of The Arc. AARP v. United States Equal Emp. Opportunity Comm'n., 226 F. Supp. 3d at 17; Pl. Opp. at 33. Members of The Arc have even more involvement in guiding the organization than those in AARP, because Board Members, who are all individual members of The Arc, appoint the CEO and work with the CEO to direct the organization. Id. The Arc's members also have more involvement than those in AARP to select leadership. Like members in AARP, The

Arc's Board of Directors must all be individualized members of The Arc.  Id.  The Arc members

have even more power than members in AARP, however, because The Arc members decide how

their chapter will vote on Board membership.  Id. at 34.  The Arc therefore satisfies the indicia of

a traditional membership organization.

### B.  Neither The Arc's Claims Nor its Request for Relief Require Participation of Individual Arc Members

Defendant next argues that The Arc lacks standing because both the plaintiff's

claims and relief would require participation of individual members of the organization in

violation of the third prong of the Hunt test.  MTD at 38 (citing Hunt v. Washington State Apple

Advert. Comm'n, 432 U.S. at 343).  This prong focuses on "matters of administrative

convenience and efficiency, not on elements of a case or controversy within the meaning of the

Constitution."  United Food & Com. Workers Union Local 751 v. Brown Grp., 517 U.S. 544,

557 (1996).  The Court does not find that individual member participation is necessary, and so

finds that The Arc has established associational standing.

### 1.  The Arc's Claims

When determining whether an organization meets the third prong of the Hunt test,

courts must "examine the claims asserted to determine whether they require individual

participation."  Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 596 (2nd Cir. 1993).  A minimal

degree of individual participation by members does not violate the Hunt test.  See Cmty. Fin.

Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp., Civil Action No. 14-953, 2016

WL 7376847, at *6 (D.D.C. Dec. 19, 2016) (citing Hospital Council v. Pittsburgh, 949 F.2d 83,

89 (3rd Cir. 1991); Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584 (7th Cir. 1993);

Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd., 627 F.3d at 551-52

(5th Cir. 2010)).  Sampling a small number of members of an organization "is appropriate in a case where a 'discrete pattern of conduct . . . [is] alleged to have applied equally against a large number of association members,' such that 'once proved as to some, the violations would be proved as to all.'"  Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp., 2016 WL 7376847, at *6 (quoting Alliance for Open Soc'y Int'l v. U.S. Agency for Int'l Dev., 651 F.3d 218, 229 (2d Cir. 2011)).  Participation by members does not violate the Hunt test when used to evidence defendant's conduct, rather than the plaintiffs' injuries.  Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp., 2016 WL 7376847, at *6 (citing Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d 278, 286 (3d Cir. 2002); Alliance for Open Soc'y Intern., Inc. v. U.S. Agency for Intern. Dev., 651 F.3d at 229 ("it is the conduct of [d]efendants . . . that will be the primary subject of inquiry"); Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d at 602-03.

Another chapter of The Arc has satisfied associational standing where a school district "systematically failed to comply with the inclusion mandate of the IDEA," and plaintiffs requested that the court compel it to "include disabled children in general education classrooms with aids, services, and accommodations, to the maximum extent appropriate" – claims that were not "focus[ed] on individual injuries."  N.J. Prot. & Advoc., Inc v. N.J. Dep't of Educ., 563 F. Supp. 2d 474, 478-89, 483 (D.N.J. 2008) (where plaintiffs included, among other advocacy groups, The Arc of New Jersey).

Associational standing may be defeated in cases that "turn on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement" such that "successful judicial resolution of the claims would thus require participation and cooperation by numerous students and parents."  Parent/Pro. Advoc. League v.

34

City of Springfield, 934 F.3d at 35.  A failure by plaintiffs to identify a "particular driver – 'a uniform police or practice that affects all class members' – of [the] alleged harm" means that a court must engage in individual assessments. Id. at 30 (citing DL v. District of Columbia, 713 F.3d at 128).

  Here, plaintiffs allege that the District is "failing to implement students' special education transportation as mandated by their IEPs to such an extent that it is depriving them of a FAPE."  Complaint ¶ 3.  Plaintiffs allege that this is a systemic failure that violates the IDEA, ADA, Section 504, and the DCHRA.  Id. ¶ 161.  These claims do not require individual participation to an extent that would deprive The Arc of associational standing – they are rooted in the District's alleged failure to provide adequate transportation, a systemic issue not related to the specific requirements of each student's IEP.  Complaint ¶¶ 3, 161.  The Arc's claims "do not focus on individual injuries, but instead they allege that [d]efendant[] systemically failed to comply with . . . the IDEA and, in effect, [has] denied disabled children their right to an inclusive education."  N.J. Prot. & Advoc., Inc v. N.J. Dep't of Educ., 563 F. Supp. 2d at 483.

  Furthermore, the participation of any individual members of The Arc would not deprive The Arc of associational standing because individual participation would serve as evidence of the District's conduct of inadequate transportation services rather than evidence of the failure of implementing any individual IEP.  See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp., 2016 WL 7376847, at *6.  The Arc may be able to use a sample of students to demonstrate that the District is engaging in a "discrete pattern of conduct" which has been "applied equally against a large number of association members", creating a systemic violation. Alliance for Open Soc'y Int'l v. U.S. Agency for Int'l Dev., 651 F.3d at 229; see also Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d at 286-287.

2.   The Arc's Requested Relief

To satisfy the test for associational standing, the relief requested by the organization also cannot require individual participation.  Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. at 343.  Generally, individual member participation is not required when an organization seeks prospective or injunctive relief.  United Food & Com. Workers Union Local 751 v. Brown Grp., 517 U.S. at 546.  Monetary relief typically violates the third prong of Hunt, because "damages claims are not common to the entire membership, nor shared by all in equal degree, and consequently there is simply no way the extent of the harm to [an organization's] members can be determined without individualized proof."  Air Transp. Ass'n of Am. v. Reno, 80 F.3d 477, 483 (D.C. Cir. 1996) (internal quotations omitted).

Relief in the form of systemic changes does not involve individual participation for the purposes of assessing the Hunt factors.  See G.T. by Michelle T. v. Kanawha Cnty. Schs., Civil Action No. 20-0057, 2020 WL 4018285, at *7 (S.D.W. Va. July 16, 2020).  In G.T., The Arc of West Virginia alleged that students with disabilities were denied FAPE because they were subject to frequent disciplinary measures, such as suspension, and the overuse of segregated classrooms.  Id. at *1.  The plaintiffs sought declaratory and injunctive relief along with appointment of an independent monitor or ombudsman.  Id. at *3.  This did not require participation of individual members because the relief involved systemic, structural changes to policies, rather than regarding students with disabilities involving a behavior component, and that plaintiffs were not requesting the court to become involved in individual students' IEPs but rather to reform policies and procedures.  Id. at *7.

The Arc's requested relief in the instant case does not require participation by individual members.  It seeks injunctive relief including "safe, reliable, and appropriate

36

transportation services and [an order to] fully implement all students' IEP-mandated transportation services," Complaint ¶ 263; an order for The District "to revise its policies, practices, and procedures as necessary to provide students with disabilities with safe, reliable, and appropriate transportation," id. ¶ 264; and an injunction "appointing an independent monitor or Special Master whose duties shall include, but not be limited to, periodic monitoring and reporting to the Court and [p]laintiffs regarding [d]efendant's compliance with the Court's [o]rder . . ." id. ¶ 266. This relief mirrors that requested in G.T., and, as in that case, the Court here will not need to delve into individual students' IEPs to assess whether such relief is warranted. See G.T. by Michelle T. v. Kanawha Cnty. Schs., 2020 WL 4018285, at *7. The Court finds that The Arc, as an organization, has associational standing.

## V.  CONCLUSION

For the reasons set forth in this opinion, the Court will grant defendant's Partial Motion to Dismiss [Dkt. No. 58] in part and deny it in part. A separate order consistent with this opinion will issue this same day.

PAUL L. FRIEDMAN
United States District Judge

DATE:  1\16\25