# EXHIBIT D

## DECLARATION OF ELIZABETH MITCHELL

COMES NOW, Elizabeth Mitchell and pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1. My name is Elizabeth Mitchell, and I am over 18 years old. I have personal knowledge of the facts as stated herein.

2. I am a D.C. resident. My family and I are members of The Arc of the United States, and we benefit from the advocacy The Arc does related to special education and integration of students with disabilities.

3. I am the parent of J.M., who is a 10-year-old student at Ivymount School in Potomac, Maryland, which is a non-public school for students with learning disabilities run by the Ivymount Organization. J.M. has been diagnosed with autism spectrum disorder. J.M.'s disability substantially limits his major life activities including, but not limited to, learning.

4. J.M. has been identified as a student with disabilities and has an individualized education plan. This IEP classifies J.M. as a student with autism and entitles J.M. to special education transportation through the Office of the State Superintendent of Education's Division of Transportation (OSSE DOT). J.M. has been eligible for special education transportation through OSSE DOT in every IEP he has had since the autumn of 2022.

5. J.M. only used OSSE transportation during the 2024-25 school year from the first day of school on July 8, 2024 until mid-September 2024 because of the issues with J.M.'s transportation.

6. Initially, he was on route 935, but the route changed numerous times without notice. J.M.'s pick-up and drop-off times also changed three times without notice, and transportation never adhered to the set schedule, making it impossible to anticipate when J.M. would be picked up

or dropped off. In early September, J.M. arrived to school half an hour late twice, and twice he was dropped off at home in the afternoon about an hour late.

7. Twice in September 2024, when J.M. was about an hour late coming home from school. I called the Parent Resource Center to find out where the bus was, but they were unable to tell me this information. Once, I waited on hold only for the system to hang up on me. I had to call back and again was put on hold for about 10 minutes.

8. Based on the inconsistencies and delays with OSSE transportation, we began scheduling all of J.M.'s mental health and physical therapy appointments on Wednesdays, when he had half a day of school, and picking him up ourselves. We no longer felt comfortable scheduling appointments on regular school days, given the multiple appointments J.M. missed in previous school years.

9. Once in September 2024, Ivymount called me and asked for me to come pick up J.M. because his bus had not arrived at the school. I had to leave in the middle of my workday to go pick him up, which takes two hours roundtrip. I also had to arrange childcare for my other child. I learned from other parents on J.M.'s bus route that the bus eventually did show up at the school, an hour after J.M. should have been dropped off at home.

10. While J.M. was using the school bus during the 2024-25 school year, there were multiple issues with overcrowding and behavioral issues. At the start of the year, there were 12 – 13 children on the bus ranging from 6 – 20 years old. Four of the students already had previous behavioral problems with each other. OSSE refused to provide incident reports or information regarding any behavioral altercations on the bus and J.M. could not accurately report what happened; I could only rely on his behavioral changes as indicators that something upsetting to him was happening during transport.

11. After riding the bus at the start of the year, J.M. would return from school very upset and dysregulated. He began disliking school and one day refused to go entirely. J.M. is particularly sensitive to violence between other students, even if that violence is not directed towards him, because he was bullied on his previous bus route during the 2023-24 school year. I immediately alerted OSSE about this unsafe situation and that I would be requesting J.M.'s IEP be updated to require private transportation because I did not feel comfortable allowing J.M. to continue riding the bus under these circumstances.

12. Because of the bus's inconsistency and overcrowding, we began personally driving J.M. to school each day to ensure he has reliable transportation. The irregularity in the schedule and the fear of violence from other children made the bus commute traumatic for J.M. We felt we had no choice but to self-transport J.M. until private transportation through OSSE could be arranged.

13. After we started self-transporting, we saw a huge difference in J.M. He was excited to go to school in the morning and was calm when we picked him up in the afternoon. But self-transporting J.M. has significantly inhibited my ability to work; I had to take a job with significantly reduced pay and benefits to accommodate the nearly four hours I spent transporting J.M. to and from school each day.

14. In September 2024, I requested to add private transportation to J.M.'s IEP. It was added in October 2024, but it was not until July 2025, ten months after we initially requested to change J.M.'s IEP, that he began receiving private transportation. Because of this, my husband and I had to privately transport J.M. to and from school each day. We had multiple issues receiving reimbursement for our transportation costs for the times we had to self-transport J.M. We attempted to apply for reimbursement through OSSE's portal on

December 16, 2024. On December 24, 2024, we were told by OSSE that we needed to resubmit for reimbursement because we lacked a prior-approval form authorizing us to self-transport. This information conflicted with what we were previously told by Michael Riley, another OSSE employee, who gave us verbal authorization to transport. Additionally, because our decision to self-transport was based on OSSE's service failure, we should not have required prior approval according to OSSE's own guidelines.

15. Sometimes my parents assisted by transporting J.M., but OSSE's reimbursement form requires you to attest that the transportation was completed by a parent or paid transportation service, so we were not able to be reimbursed for the times my parents drove him.

16. On June 25, 2025, we were instructed to again submit all our documentation for reimbursement, this time to Stephanie Davis, the Chief Information Officer of OSSE.

17. It was not until July 22, 2025, nearly ten months after we started self-transporting, that we received notice from OSSE that we would be getting reimbursed for our transportation costs, which totaled over $4,000.

18. Although J.M. now is on private transportation, we continue to have issues with OSSE's communication. Despite multiple attempts, we have been unable to update my husband's contact information through OSSE, meaning he is regularly excluded from transportation and scheduling alerts. Further, the route identification system for private transit is unclear, so that I am unsure whether J.M. has a named route that I can communicate to OSSE if the need were to arise. I have been provided with the driver's name and the license plate, which I plan to use for identification purposes in case of emergency.

19. I remain on a text chain of families on J.M.'s former bus. The bus continues to experience significant delays that would have made placing J.M. on the bus untenable for me, had he not received private transit this summer, per his IEP.

20. J.M. has recently begun to verbally process the emotional strain he felt while riding the bus last year. J.M. has explained that anticipation of altercations caused him to enter a shut-down state. When altercations occurred, J.M. recalls holding himself as still and as quietly as possible to avoid causing additional disturbance to himself or others.

21. Due to the strain of that state, J.M. often returned home emotionally dysregulated, which impacted J.M.'s older sibling. Due to the stress caused by the OSSE busing failures, J.M.'s brother has also entered therapy.

22. J.M. requires safe, reliable, and appropriate transportation in order to receive a Free Appropriate Public Education (FAPE) and to have equal access to his education and to ensure he is not unnecessarily segregated from his peers.

23. I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated this 8th day of October, 2025 at Washington, District of Columbia.

Elizabeth C. Mitchell